Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| RS OLD MILL, LLC, | Case No. 17-22218 (RDD) |
| Debtor. | |

## DECLARATION OF YEHUDA SALAMON IN SUPPORT OF DEBTOR'S EMERGENCY MOTION TO ENFORCE THE AGREEMENT OF SALE AND TO COMPEL SPECIFIC PERFORMANCE BY NOVARTIS CORPORATION

YEHUDA SALAMON hereby declares as follows under penalties of perjury:

1. I am the sole member of RS Old Mill, LLC, the debtor and debtor-in-possession herein (the "**Debtor**"). Unless otherwise indicated below, I make this certification based on my personal knowledge and my review of the Debtor's business records. I have access to all of the Debtor's records, including computerized records indicating sums advanced, payments made, and communications with Bridgewater Capital Partners ("**Bridgewater**"), Novartis Corporation ("**Novartis**"), and other parties. The Debtor's records are maintained by the Debtor in the course of its regularly conducted business activities and are made at or near the time of the occurrence of the events which they reflect, by or from information transmitted by a person with knowledge. It is the regular practice of the Debtor to keep such records in the ordinary course of its regularly conducted business activity.

2. I respectfully submit this declaration in support of the Debtor's emergency motion (the "**Motion**") to enforce the Agreement of Sale (hereinafter defined) and to compel specific

performance thereof by Novartis so as to affect the Closing (hereinafter defined) on Tuesday, August 22, 2017 at 3:00 p.m.

3. The Court's familiarity with the facts and circumstances underlying this case is presumed. Briefly, on or about November 28, 2016, the Debtor, as purchaser, and Novartis, as seller, entered into a written Agreement of Sale (the "**Agreement of Sale**") pursuant to which the Debtor agreed to purchase certain real property located at 25 Old Mill Road, Suffern and Montebello, New York (the "**Property**"), for the sum of $18,000,000. The Property is a commercial warehouse/distribution facility. Ultimately, disputes between the Debtor and Novartis arose concerning the Debtor's request to conduct an invasive environmental investigation of the Property.

4. On February 13, 2017, and for the primary purpose of staying the termination of the Agreement of Sale, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code with this Court and an Order for Relief was entered.

5. On March 2, 2017, Novartis filed a motion seeking to compel the Debtor to either accept or reject the Agreement of Sale within thirty (30) days. The Debtor consented to that request, provided that the Debtor was afforded an opportunity, within that time period, to conduct certain limited invasive environmental sampling as described in a prior written notice. Deeming the issue of whether the Debtor should be afforded the opportunity to conduct said environmental sampling to be one of non-bankruptcy law, the Court modified the automatic stay for the limited purpose of permitting the Supreme Court of the State of New York, County of Rockland, to decide that one limited issue. The State Court subsequently ruled that the Debtor was not entitled to conduct the environmental sampling at issue.

6. On June 2, 2017, an Order was entered by this Court directing: (a) the Debtor to assume or reject the Agreement of Sale on or before June 26, 2017; (b) the Debtor to file a Notice of Intention to assume or reject the Agreement of Sale on or before said date; and (c) that if the Debtor decided to assume the Agreement of Sale, then to close on the purchase of the Property within (10) business days of this Court's approval of the Debtor's assumption of the Agreement of Sale. On June 26, 2017, the Debtor filed and served a Notice of Intention to assume the Agreement of Sale [ECF No. 41] (the "**Assumption Notice**"). Thereafter, and on July 13, 2017, an Order Authorizing Debtor's Assumption of Agreement of Sale [ECF No. 45] (the "**July 13, 2017 Order**") was entered directing the Debtor to "close on the Agreement of Sale on an agreed upon date between Novartis and the Debtor within ten (10) business days of the entry of [the July] Order."

7. On July 27, 2017, the Court held a hearing (the "**Hearing**") on that certain motion filed by Bridgewater Capital Partners ("**Bridgewater**") [ECF No. 46] requesting that the Court modify the July 13, 2017 Order so as to extend the date by which the parties were required to close on the purchase of the Property (the "**Closing**"). The Debtor also objected to the Closing occurring as set forth in the July 13, 2017 Order, because it believed a new survey was needed for the Property. The Debtor partially withdraw its opposition to the July 13, 2017 Order based on a survey that Novartis provided to the Debtor that was acceptable to the title company handling the transaction.

8. At the Hearing, the Court directed that the Closing should occur on or before August 17, 2017. The Court further directed Novartis to cooperate with the Debtor and Bridgewater to obtain an environmental insurance policy and to grant the Debtor access to the

-3-

Property for necessary pre-Closing inspections. On August 14, 2017, the Court entered an order [ECF No. 53] directing the same.

9. Since the Hearing, the Debtor successfully obtained an environmental insurance policy. However, Novartis has not cooperated with the Debtor and Bridgewater to facilitate the Closing. In contrast, it has obstructed all efforts to timely close.[1]

10. By way of example only, on July 27, 2017, immediately following the Hearing, the Debtor's counsel requested access to the Property for third-party professionals, which request was immediately refused by Novartis. Four (4) days later, on July 31, 2017, and after repeated requests from Bridgewater and the Debtor's counsel, Novartis finally reconsidered its position and agreed to allow the professionals to have access to the Property. In the evening of August 1, 2017, the Debtor was informed that Novartis had cleared the third-party professionals for access to the Property at 11:00 a.m. the following day (*i.e.*, August 2, 2017). As a result, of Novartis' initial refusal to provide immediate and/or prompt access to the Property, the Debtor lost six (6) days that could have been utilized to prepare for the Closing. Moreover, due to the late and/or short notice from Novartis, many of the third-party professionals were unable to attend and thereby preventing them from completing their work for the Closing.

11. By way of further example, the Debtor again requested access to the Property on August 4, 2017, which Novartis again refused to allow unless and until the Debtor and Bridgewater consented to language that Novartis sought to have included in a proposed order to be submitted to the Court. On Monday, August 7, 2017 at 4:45 p.m., Novartis finally agreed to allow The Debtor to have access to the Property for the following day. Effectively, the Debtor lost another

---

[1] The multiple obstacles and issues encountered by the Debtor in its dealings with Novartis in furtherance of a timely Closing were set forth at length in a letter addressed to the Court by the Debtor's counsel dated August 16, 2017, a copy of which is attached hereto as **Exhibit "A"**. Rather than repeat them, the Debtor incorporates the matters discussed in its counsel's August 16, 2017 letter as if set forth at length herein.

-4-

four (4) days (*i.e.,* August 4th-8th) to prepare for the Closing. When Novartis finally agreed to allow access, it again provided the Debtor and Bridgewater with less than 24-hours' notice, which prevented some of the Debtor's third party professionals from attending due to scheduling conflicts.

12. As a result, Bridgewater and the Debtor were required by the title company to have a new survey of the Property prepared prior to Closing. In order to accelerate the preparation of a new survey, Bridgewater engaged PS&S, the surveyors who had previously prepared the previous survey for Novartis, because of its familiarity with the Property. Despite every effort being made to expedite the preparation of a new survey, on August 15, 2017, PS&S advised Bridgewater that it would need an additional five (5) days plus two (2) weeks to finalize a new survey of the Property.

13. Bridgewater and the Debtor worked with the title company to address its concerns with obtaining a new survey for the Property. As a result, the title company agreed to accept only an updated survey which provides: (1) the height of structures on the Property, (2) a count of the number of parking spaces, (3) a general description of right of ways and access to the Property, and (4) a description of what structures and areas are in flood zones. PS&S advised Bridgewater that it could meet the title company's demand for an updated survey in six (6) business days.[2]

14. Upon learning of this, and on August 17, 2017, the Debtor requested that Novartis consent to adjourn the Closing to August 24, 2017 and also, in good faith, offered to immediately release the entirety of the $2,500,000 down payment to Novartis if Novartis agreed to the short adjournment of the Closing requested. Novartis simply refused. Novartis not only refused to

---

[2] On August 17, 2017, real estate closing counsel for the Debtor raised the issue of arrangements for a physical closing to occur. Novartis admitted that it had not been able to procure a time and place for a physical closing to occur.

-5-

accept the good faith offer made to them, but also failed to provide the Debtor with a location and time for a physical closing as required by the Agreement of Sale. Essentially, Novartis had caused the Debtor to lose ten (10) of the twenty-one (21) days provided by the Court to prepare for Closing. The only reason provided by Novartis for refusing to cooperate with The Debtor for the Closing to occur was that the survey report did not list Bridgewater.

15. On August 15, 2017, Novartis provided incomplete closing documents to counsel for the Debtor. This issue was raised in the letter filed by real estate closing counsel for the Debtor, Thomas Landrigan, Esq., with the Court on August 16, 2017 (the "**Landrigan Letter**", a copy of which is attached hereto as **Exhibit "B"**). To date, Novartis has not provided complete and final closing documents.

16. Also, in a letter to its title company dated August 16, 2017, Novartis advised that it was providing closing documents to that title company, but that they could not be released to the Debtor until the Debtor paid additional "Survey Charges" of $75,035.21 in addition to the purchase price for the Property. There was no basis for Novartis to make this demand.

17. The Landrigan Letter also advised Novartis of additional issues, including the failure to resolve open building permits reflecting multiple violations at the property as well as a life estate held by Gertrude Conklin for a portion of the Property.

18. On August 17, 2017, Mr. Landrigan advised New York Land Services that the closing would be adjourned to 3:00 p.m. on August 22, 2017, which was quickly rejected by Novartis. Novartis further confirmed its demand that it would only provide for an "escrow closing by mail" rather than the physical closing as required by the Agreement of Sale.

-6-

19. To evidence its good faith efforts to close, and also on August 17, 2018, the Debtor's counsel made the following proposal to Novartis for its consent to a mere three (3) business day adjournment of the Closing to August 22, 2017, which proposal was refused by Novartis:

> I am advised that Novartis rejected the Debtor's latest proposal to: (i) wire transfer the sum of $18.0 million to the title company for Novartis pursuant to a mutually agreeable escrow agreement; (ii) execution and exchange of general releases if we do not close on Tuesday, August 22 at 3 pm…; (iii) forfeit $2.5 million good faith deposit if the Debtor does not close on or before Tuesday (sit-down closing); and (iv) voluntary dismiss the State Court litigation; all because of Novartis' concern that Bridgewater's name was not on the survey. As you may be aware, the only name on a survey is usually the buyer's name, RS Old Mill. Please explain this concern since it seems to make little sense to me. Also, as you know the contract provides that the contract is not assignable.

20. On August 18, 2017, counsel for Novartis reiterated their refusal to conduct the Closing on August 22, 2017 and declared the Debtor in default of the Agreement of Sale advising as follows:

> We are unmoved by your analysis of the agreement and threats of litigation and we will not accommodate a closing in our offices on August 22nd. Judge Drain's order specifically stated that your client was to close the transaction by Thursday August 17th, 2017. Your client did not close the transaction, and it does not have any legal right to unilaterally extend the closing date.
>
> Accordingly, your client is in default of the agreement of sale and Novartis will seek to enforce all of its rights and remedies at law and in equity. We will deliver written notice of default and demand for the deposit (without prejudice to the exercise of any other legal and equitable remedies) later today.
>
> It is regrettable that your client was unable to perform at three scheduled closings and could not comply with two orders from the bankruptcy court.

21. The continued and inexplicable refusal by Novartis to cooperate, in good faith, with the Debtor and/or with Bridgewater to achieve the Closing is mystifying. The Debtor and Bridgewater are continuing their efforts to close and are ready, willing and able to close on Tuesday, August 22, 2017 at 3:00 p.m.

22. I hereby declare, pursuant to 28 U.S.C. § 1746 and under penalties of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

Dated: New York, New York
August 18, 2017

_____
Yehuda Salamon