UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                              Chapter 11

RS OLD MILL, LLC                                    Case No: 17-22218-RDD

                    Debtor.
-------------------------------------------------------x

### DECLARATION OF MICHAEL LEVINE IN SUPPORT OF DEBTOR'S APPLICATION FOR AUTHORIZATION TO EMPLOY LEVINE & ASSOCIATES, P.C. AS SPECIAL LITIGATION COUNSEL

MICHAEL LEVINE declares the following under the penalties of perjury pursuant to 28 U.S.C. §1746:

1. I am the sole member of Levine & Associates, P.C., proposed special litigation counsel to the Debtor, with offices in Scarsdale, New York.

2. I submit this Declaration in support of my firm's retention as special litigation counsel pursuant to Section 327(a) of the Bankruptcy Code.

3. I believe that my firm is well qualified to serve as special litigation counsel and our retention would be in the best interests of the Debtor's estate.

4. My firm maintains an active litigation and trial practice and has decades of experience in handling commercial disputes and fraud claims. I have already conducted a thorough review of the events surrounding the dubious Novartis closing as set forth in detail in the proposed complaint, which I drafted in contemplation of any retention.

5. Based upon a review of my database, my firm does not represent any creditors or equity holders of the Debtor in connection with this matter and has no prior connection with the Novartis dispute, the Debtor, or the Debtor's principals except as follows.

6. I was retained, in or about February of 2017, as replacement counsel to represent Yehuda Salamon (a principal of the Debtor), his wife, and 4921 12th Avenue LLC (a company of which he was the sole member), in a matter that had been commenced by Beis Chasidei Gorlitz in New York State Supreme Court (Kings County). That action involved a claim by the plaintiff that sought to set aside and discharge a mortgage to Galster Funding LLC that had been given by 4921 12th Avenue LLC on real property located at 4917-4921 12th Avenue, Brooklyn, New York.

7. At the same time, I was also retained as replacement counsel to represent Mr., Salamon, his wife, 4921 12th Avenue LLC, and several other defendants in an action that had been commenced by Galster Funding, LLC. in New York State Supreme Court (Kings County), a mortgagee of the real property located at 4917-4921 12th Avenue, Brooklyn, New York. That action involved a claim by Galster Funding that, in the event that the claim asserted by Beis Chasidei Gorlitz in the action referred to above was proven, Galster Funding would be monetarily damaged, the recovery of which alleged damages were sought in that case.

8. At the same time, I was also retained as replacement counsel to represent 4921 12th Avenue LLC, Mr. Salamon, and Yidel's Fresh Food Station, LLC. in a related foreclosure action commenced by Galster Funding, LLC in New York State Supreme Court (Kings County). That action sought to foreclose the mortgage loan by Galster Funding, LLC on the real property located at 4917-4921 12th Avenue, Brooklyn, New York.

9. Each of the above-descried State Court actions are presently still pending.

10. In or about July of 2017, I was advised by the Debtor (who was then represented by Douglas Pick, Esq. in the within bankruptcy proceeding) that it wished to consult with another bankruptcy attorney in order to get a second opinion as to issues that had arisen with Novartis and, particularly, the prospects of obtaining an extension to close on the Novartis transaction. I was

asked by the Debtor to recommend a bankruptcy attorney from which it could obtain such a second opinion regarding those issues. I recommended to the Debtor that it consult with Kevin Nash, Esq., a bankruptcy attorney with whom I had been working (as special litigation counsel) in the Chapter 11 case of Congregation Birchos Yosef pending before this Court.

11. At that point, a meeting took place between Mr. Nash and the Debtor's consultant, Marty Stern, to discuss the prospects of obtaining such extension to close. My recollection is that I attended that meeting via telephone. After that meeting, the Debtor advised me that it had decided not to retain Mr. Nash as substitute counsel, but rather to continue to be represented in this matter by Mr. Pick.

12. On February 10, 2017, the Debtor (through its then-attorneys DelBello Donnellan Weingarten Wise & Wiedekehr, LLP) commenced an action in New York State Court (Rockland County) against Novartis Corporation seeking, *inter alia*, an order requiring Novartis to give access to the Debtor to the Novartis Property to perform environmental investigation and testing.

13. On February 13, 2017 the Debtor (through its attorney, Douglas Pick, Esq.) commenced the within bankruptcy proceeding [DE-1]. I thereafter consulted with Mr. Pick and gave input and comments on the issues, requests for relief, and documents presented to this Court, however I was not compensated by the Debtor for such participation.

14. On March 27, 2017, this Court issued an Order [DE-23] which partially vacated the § 362(d)(12) automatic stay "solely to permit the parties to promptly pursue entry of an Order in the action entitled: RS Old Mill, LLC, Plaintiff against Novartis Corporation, Defendant (Index No. 030713/2017) ... so as to either permit or deny RS Old Mill, LLC the ability to conduct" environmental testing on the Novartis Property.

3

15. I was retained in April of 2017 as replacement counsel to represent the Debtor in that State Court action. I prepared and presented an Order to Show Cause in that case seeking an order permitting the environmental investigation and testing. On June 26, 2017, the State Court denied the request for such testing.

16. Thereafter, and in or about July of 2017, I was advised by the Debtor that its lender, Bridgewater Capital Partners, which was going to finance the acquisition by the Debtor of the Novartis Property, had retained Heidi J. Sorvino, Esq., for the purpose of presenting a motion by her client "(1) ... to provide sufficient time for Bridgewater to finalize necessary loan documents, (2) direct RS Old Mill, LLC ("Debtor") to acquire sufficient and necessary environmental insurance policies to avoid unnecessary risk of harm to Bridgewater, and (3) to direct Novartis Corporation ("Novartis") to cease all interference with the efforts of Debtor to obtain an environmental insurance policy." Ms. Sorvino filed that motion on July 21, 2017 [DE-46]. My recollection is that I saw a draft of that motion and gave my comments on behalf of the Debtor thereupon, in advance of its filing by Ms. Sorvino.

17. Thereafter, in August 2017, I was involved, as a consultant, in negotiations with a potential purchaser of the Novartis Property from the Debtor, however insofar as I am aware, no written agreement was ever executed in that regard. The closing of the purchase of the Novartis Property by the Debtor took place on September 6, 2017. I did not represent the Debtor, or any other entity, with respect to that closing, nor did I attend the same.

18. Subsequently, a dispute arose between the Debtor and other entities regarding the closing, the distribution of proceeds therefrom., and equity ownership in various entities. I was peripherally involved in resolution negotiations during the months of October 2017 and December 2017, however the Debtor was represented by other counsel with respect thereto, and I had no

4

further involvement that I can recall in those matters until I was asked, in 2019 to examine and draft the adversary proceeding complaint that is sought to be filed in this case at this point.

19.   I thereafter drafted the proposed adversary complaint which is sought to be filed herein.

20.   In December of 2018, I was asked by Yehuda Salamon, to prepare an emergency bankruptcy petition on behalf of 4921 12th Avenue LLC in the Eastern District of New York because that entity faced imminent foreclosure of the mortgage on the property located at 4917-4921 12th Avenue, Brooklyn, New York, as a result of the foreclosure action referred to above that had been commenced by Galster Funding, LLC. I was told that Mr. Salomon could not locate bankruptcy counsel in sufficient time to make that emergency filing, asked me to prepare and file that petition, and advise me that I would be replaced by bankruptcy counsel forthwith, who would correct any errors in the filing.

21.   I prepared that petition on December 20, 2018 and then realized that, although I am admitted in the Eastern District of New York, and have an ECF-filing registration number for filings in that Court, I did not have a separate e-filing registration number for the Bankruptcy Court in the Eastern District (as I do not practice there). I, therefore, asked Mr. Nash if his firm would file the petition for me as a courtesy, which his firm did [(Case No. 18-47296-CEC)]. The petition in that case was signed by Yehuda Salamon, who is also a principal of the Debtor. After the filing, the debtor retained local Brooklyn counsel. Both I and the Goldberg Weprin firm acted only for the filing of the petition and were then replaced by other bankruptcy counsel.

22.   My only other involvement in that case was that I was asked to prepare an Affidavit describing the events in the State Court Actions in connection with an application that bankruptcy counsel was going to make regarding the automatic stay of those proceedings. I prepared such an

5

Affirmation and gave the same to bankruptcy counsel. I have had no further involvement in that case, nor do I believe that I will have any further involvement.

23. My only other connection with the Novartis property was in July 2018, when I was retained by Lone Pine Associates to commence an action on behalf of Lone Pine Associates, LLC, an occupant of a portion of the Novartis Property, against ISSM Protective Services Inc., a guard company that was refusing Lone Pine access to the property. I brought that action on July 25, 2018 in New York State Court (Rockland County), obtained a temporary injunction prohibiting the guard company from denying Lone Pine access to the property on July 31, 2018, and settled and discontinued the case on September 28, 2018 (by way of a permanent injunction against any interference with Lone Pine's access to the premises).

24. I did not receive any payments from the Debtor for any of the above-referenced work, as all of our billing was directly to Mr. Salamon personally. I reference these matters in the interests of full disclosure, and do not believe that these limited connections create any impediment to my firm's proposed retention.

25. My firm has not received any retained. As is customary, my firm shall maintain, if our retention is approved by the Court, individual time records exclusively for this matter going forward to identify the particular services rendered on a daily basis, listing the attorney involved, and the task performed. My firm's current billing rates are $640.00 per hour for my time, and between $400 to $450 for associate time, which I occasionally use on a case-by-case basis.

7. My law firm has not received a retainer and will bill its services pursuant to Sections 330 and 331 of the Bankruptcy Code.

6

8. In view of the foregoing, I submit that my firm is qualified to serve as special counsel.

Dated: Scarsdale, New York
      March 29, 2019

_____
Michael Levine, Esq.