**HAHN & HESSEN LLP**
Gilbert Backenroth
Stephen J. Grable
Steven R. Aquino
488 Madison Avenue
New York, New York 10022
Telephone: 212-478-7200
Fax: 212-478-7400

*Attorneys for Suffern Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | : |
| | : Case No. 17-22218 (RDD) |
| RS OLD MILL, LLC, | : |
| | : Chapter 11 |
| Debtor. | : |
| | : |
| | : |
| RS OLD MILL, LLC, | : |
| | : |
| | : Adversary No. 19-8243 (RDD) |
| Plaintiff, | : |
| | : Hearing Date: May 24, 2019, 10:00 a.m. |
| - against - | : |
| | : |
| SUFFERN PARTNERS LLC, | : |
| BRIDGEWATER CAPITAL PARTNERS | : |
| LLC, ISAAC GENUTH, MARK YUNGER | : |
| a/k/a "MARK JUNGER," GOLDIE | : |
| REISMAN, MOSES REICHMAN, RS OLD | : |
| MILLS RD LLC., DAVID | : |
| FLEISCHMANN, THOMAS | : |
| LANDRIGAN, and CPIF LENDING, LLC, | : |
| | : |
| Defendants. | : |
| | : |

**EMERGENCY MOTION TO APPROVE SALE OF SUBSTANTIALLY ALL OF
DEBTOR'S ASSETS TO SUFFERN PARTNERS LLC, *NUNC PRO TUNC*, TO DISMISS
THE CHAPTER 11 CASE, AND FOR DISMISSAL AND/OR ABSTENTION AS TO ALL
CLAIMS IN DEBTOR'S PROPOSED ADVERSARY PROCEEDING COMPLAINT**

## TABLE OF CONTENTS

OVERVIEW ..................................................................................................................... 1

BACKGROUND .............................................................................................................. 3

   A. The Chapter 11 Case and Debtor's Assumption of the Novartis Sale
      Agreement ................................................................................................................. 3

   B. Suffern's Agreement to Finance Debtor and Purchase the Premises for
      $30 Million ................................................................................................................. 4

   C. Debtor's Request to Dismiss the Chapter 11 Case ..................................................... 6

   D. Novartis' Claims of Breach and Default on the Sale Agreement ................................ 7

   E. The Proposed Adversary Proceeding Complaint, and the Substantial and
      Irreversible Prejudice to Suffern ............................................................................... 8

JURISDICTION ............................................................................................................... 9

RELIEF REQUESTED ..................................................................................................... 9

BASIS FOR RELIEF REQUESTED ............................................................................... 10

I.    DEBTOR'S SALE OF THE PREMISES TO SUFFERN SECURED AND
      GENERATED SUBSTANTIAL VALUE FOR THE ESTATE AND ITS
      CREDITORS, AND SHOULD BE APPROVED *NUNC PRO TUNC* ..................... 10

II.   CAUSE EXISTS TO DISMISS THE CHAPTER 11 CASE BECAUSE
      DEBTOR'S SALE OF THE PREMISES OBVIATES ANY FURTHER
      NEED FOR BANKRUPTCY PROTECTION .......................................................... 14

III.  THE COURT SHOULD OTHERWISE DISMISS AND/OR ABSTAIN
      FROM ANY REMAINING CLAIMS IN DEBTOR'S PROPOSED
      ADVERSARY PROCEEDING COMPLAINT, AS THEY REFLECT A
      FIGHT OVER EQUITY THAT DOES NOT REQUIRE THE
      BANKRUPTCY COURT'S JURISDICTION ........................................................ 16

   A. Debtor's Avoidance Claims Are Moot And Should Be Dismissed ........................... 16

   B. Alternatively, the Court Should Abstain From Any Remaining Claims
      Raised in Debtor's  Proposed Adversary Proceeding Complaint .............................. 19

NO PRIOR REQUEST ................................................................................................... 22

NOTICE .......................................................................................................................... 22

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Albany Partners, Ltd.*,
    749 F.2d 670 (11th Cir. 1984) ...................................................................14

*In re AOG Entm't, Inc.*,
    No. 16-11090 (SMB), 2016 Bankr. LEXIS 4514 (Bankr. S.D.N.Y. Dec.
    30, 2016)...........................................................................................20

*In re Boston Generating, LLC*,
    440 B.R. 302 (Bankr. S.D.N.Y. 2010) .........................................................10

*Cadwalader Wickersham & Taft v. Spinale*,
    177 A.D.2d 315 (1st Dep't 1991) ...............................................................21

*Camreta v. Greene*,
    563 U.S. 692 (2011)...............................................................................16

*In re Cody, Inc.*,
    281 B.R. 182 (Bankr. S.D.N.Y. 2002) ................................................... 19, 20

*In re Del. & Hudson R. Co.*,
    124 B.R. 169 (D. Del. 1991) ........................................................ 10, 12, 18

*In re Fierro*,
    No 14-41439 (NHL), 2015 Bankr. LEXIS 1779 (Bankr. E.D.N.Y. May 29,
    2015) ................................................................................................20

*In re Just Plumbing & Heating Supply, Inc.*,
    No. 11-10151 (MG), 2011 Bankr. LEXIS 4021 (Bankr. S.D.N.Y. Oct. 18,
    2011) ............................................................................................ 14, 15

*In re Lionel Corp.*,
    722 F.2d 1063 (2d Cir. 1983) ............................................................. 10, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................ 16, 18

*Nation Magazine v. United States Dep't of Defense*,
    762 F. Supp. 1558 (S.D.N.Y. 1991) ................................................ 16, 17, 18

*In re Taberna Preferred Funding IV, Ltd.*,
    594 B.R. 576 (Bankr. S.D.N.Y. 2018) .......................................................14

## Statutes

11 U.S.C. § 105 ................................................................................................1, 9, 10, 14

11 U.S.C. § 349 .............................................................................................. 1, 10, 16

11 U.S.C. § 363 ................................................................................................1, 9, 10, 14

11 U.S.C. § 547 ................................................................................................17

11 U.S.C. § 549 ................................................................................................17

11 U.S.C. § 550 ................................................................................................17

11 U.S.C. § 1112 .............................................................................................. 1, 10, 14, 15, 16

28 U.S.C. § 157 .............................................................................................. 9

28 U.S.C. § 1334 ................................................................................................1, 9, 10, 19

28 U.S.C. § 1408 .............................................................................................. 9

28 U.S.C. § 1409 .............................................................................................. 9

## Other Authorities

Fed. R. Bankr. P. 1017 ...................................................................................... 1, 10, 16

Fed. R. Bankr. P. 2002 ......................................................................................22

Fed. R. Bankr. P. 7012 ...................................................................................... 1, 10, 19

Fed. R. Civ. P. 12 ...................................................................................... 1, 10, 19

N.Y. CPLR § 4101 ......................................................................................21

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Suffern Partners LLC ("Suffern"), as an interested party in this Chapter 11 proceeding involving RS Old Mill, LLC ("Debtor") (the "Chapter 11 Case") and a defendant in Debtor's proposed adversary proceeding (the "Adversary Proceeding"), by its undersigned counsel, Hahn & Hessen LLP, respectfully submits this motion (the "Motion") for entry of an Order, pursuant to Sections 105(a), 349, 363, and 1112(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), 28 U.S.C. § 1334(c)(1), Rules 1017(a) and 7012(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Fed. R. Civ. P. 12(b)(1), and substantially in the form of the proposed Order submitted herewith: (a) approving the sale of substantially all of the assets of Debtor to Suffern, *nunc pro tunc*, to September 1, 2017, (b) dismissing the Chapter 11 Case, and (c) for dismissal and/or abstention as to all claims asserted in Debtor's proposed Adversary Proceeding Complaint.   In support of this Motion, Suffern relies upon the Declaration of Isaac Lefkowitz, Suffern's authorized representative (the "Lefkowitz Dec."), the Declaration of David Fleischmann (the "Fleischmann Dec."), and all exhibits respectively attached thereto, and represents as follows:

## **OVERVIEW**

1.     Debtor and its newly proposed counsel are not being forthright with this Court.  Debtor sought Chapter 11 relief to protect its right to purchase property located in Rockland County (as further described below, the "Premises") for $18 million, and more importantly, avoid forfeiture of its $2.5 million deposit paid in connection therewith.  This Court authorized Debtor to assume the contract and directed the purchase to close.  Debtor, unable to obtain financing for the balance due of $15.5 million and thus faced with the dire

risk of losing its $2.5 million deposit, identified, structured, implemented, and closed a series of transactions whereby it purchased and immediately resold the Premises, with the final buyer, Suffern, paying $30 million.  The transactions were done in a flurry and closed on an emergency basis in September 2017, without this Court's contemporaneous approval.

2.    The transactions saved Debtor's $2.5 million deposit from being forfeited and resulted in $12 million of additional value upon resale, permitting all creditors to be paid from the transactions' proceeds.  Accordingly, part and parcel to the transactions, Debtor and all creditors signed a proposed Order to dismiss the Chapter 11 Proceeding.

3.    Some 18 months after the transactions closed, and while Suffern was in the midst of its efforts to lease the Premises and make it an income-generating property, Debtor – by and through its newly proposed counsel – commenced this Adversary Proceeding that claims ***Debtor's own failure*** to obtain contemporaneous approval should void the very series of transactions that ***Debtor structured and implemented for its own benefit***. Debtor's proposed Adversary Proceeding is not brought in good faith, but rather, reflects a wasteful and improper effort to have this Court resolve a dispute among Debtor's equity holders.

4.    This Court is not the proper forum for a dispute among equity interests, and the proposed Adversary Proceeding has resulted in a cloud on title to the Premises that Suffern purchased and paid substantial value for in an arms-length deal.  The result is that Suffern is being substantially prejudiced – precluded from being able to lease the Premises to a qualified tenant while incurring ***$1 million a month*** to service the Premises' debt and maintenance costs, without any potential for recovery – all due to an unrelated battle between Debtor's equity holders.

5.      Ultimately, the transactions at issue benefitted Debtor's estate, permitted all valid creditors to be paid, and were designed to permit dismissal of the Chapter 11 Case. The only apparent misstep was a failure to secure this Court's contemporaneous approval of the transactions in the midst of an emergency situation.

6.      Accordingly, for the reasons detailed herein, Suffern now requests that the Court (1) approve the sale transaction and dismiss the Chapter 11 Case; and (2) dismiss and/or abstain from all claims in Debtor's proposed Adversary Proceeding Complaint, which reflect a fight over equity that does not belong in the Bankruptcy Court.

## BACKGROUND

### A.      The Chapter 11 Case and Debtor's Assumption of the Novartis Sale Agreement

7.      Debtor filed the Chapter 11 Case on February 13, 2017 as a debtor-in-possession, to protect its right under an agreement of sale (the "Sale Agreement") it entered into as of November 28, 2016 with the Novartis Corporation ("Novartis") to purchase approximately 162 acres of land and improvements thereon (the "Premises") located in Rockland County for $18 million. The Chapter 11 Case reflected, as the Court noted at a previous hearing, "a binary dispute between Novartis and Debtor" over whether Debtor would assume or reject the Sale Agreement. *See* Chapter 11 Case ECF No. 40, p. 14:2-3.

8.      On June 26, 2017, Debtor served notice of its intent to assume the Sale Agreement. *See* Chapter 11 Case ECF Nos. 41-42. In an Order dated July 13, 2017, the Court authorized the assumption, deemed the Sales Agreement assumed, and directed Debtor and Novartis to close within ten business days. *See* Chapter 11 Case ECF No. 45. That deadline, however, was extended by the Court until August 17, 2017, due to a dispute

between Debtor and Novartis regarding its alleged interference with Debtor's efforts to obtain an environmental insurance policy. *See* Chapter 11 Case ECF Nos. 46, 51, 53.

9.      Various additional complications then arose, including alleged title insurance issues and Novartis' alleged refusal to provide Debtor access to the Premises to conduct a survey.  Debtor's counsel notified the Court of these disputes in a letter dated August 16, 2017. *See* Chapter 11 Case ECF No. 57.

10.     Debtor failed to close on the Premises before the Court-ordered deadline, and Novartis deemed Debtor in default of its obligations under the Sale Agreement by letter dated August 18, 2017.  *See* Chapter 11 Case ECF No. 60-2.  The same day, Debtor made an emergency motion to enforce the Sale Agreement, which Novartis opposed and followed with its own motion for forfeiture of Debtor's $2.5 million down payment in favor of Novartis, to cover its expenses.  *See* Chapter 11 Case ECF Nos. 58-60.

**B.    Suffern's Agreement to Finance Debtor and Purchase the Premises for $30 Million**

11.     Separate and apart from the issues between Debtor and Novartis was Debtor's apparent inability to secure financing for the transaction in a timely manner.  By the time of the August 17 closing deadline, Debtor had not been able to secure financing for the balance due and owing to Novartis under the Sale Agreement, which totaled $15,940,324.51. *See* Fleischmann Dec., ¶ 8.

12.     Faced with both immediate forfeiture of its $2.5 million deposit and an inability to purchase the Premises – the very reason Debtor had filed the Chapter 11 Case – Debtor identified, structured, implemented, and closed on a series of transactions whereby it was able to purchase the Premises from Novartis, by financing it through an immediate resale at a substantial profit.  *See* Fleischmann Dec., ¶¶ 5-8.  Ultimately, Suffern paid

4

$30 million for the Premises, which it financed through CPIF Lending, LLC (CPIF). *See id.*, ¶ 7.

13.     Specifically, to ensure Debtor's purchase of the Premises, Debtor, Suffern, CPIF, and a third-party entity called RS Old Mills Rd, LLC ("Old Mills Rd"), agreed that Debtor would transfer the Premises to Old Mills Rd, which would then immediately transfer it to Suffern. *See* Fleischmann Dec., ¶ 6. Debtor, Suffern, and CPIF all understood and consented to the multi-transaction structure. *See id.*, ¶¶ 6-8.

14.     While Debtor, Old Mills Rd, and Suffern were unrelated entities, they were familiar with each other. Indeed, on November 29, 2016, the day after Debtor executed the Novartis Sale Agreement, it entered into an agreement with Old Mills Rd by which Debtor would assign its right to purchase the Premises from Novartis to Old Mills Rd for $25 million. *See* Lefkowitz Dec., Ex. A (Debtor-Old Mills Rd Assignment). Debtor had knowledge, designed, and readily executed this assignment for $25 million of consideration, by its managing member, Yehuda Salamon. *See id.* Then, on December 16, 2016, Old Mills Rd executed an agreement by which it agreed to sell the Premises to Suffern for $30 million. *See* Lefkowitz Dec., Ex. B (Purchase and Sale Agreement).

15.     In advance of the closings on the Novartis Sale Agreement and related transactions, Suffern secured a $33 million loan from CPIF. *See* Fleischmann Dec., ¶ 7; Exs. A (Amended, Restated, and Consolidated Promissory Note) and B (Amended, Restated, and Consolidated Mortgage). Suffern's arms-length loan was heavily documented and negotiated, with each side represented by counsel. *See id.*, ¶¶ 7-8; Ex. C (Correspondence Enclosing Loan Documents). Suffern and CPIF obtained title insurance for the transactions. *See id.*, ¶ 7.

16.    On or about September 1, 2017, CPIF, Suffern, and their escrow agent, Riverside Abstract, LLC ("Riverside"), executed an escrow agreement (the "Escrow Agreement") in which CPIF represented it had placed more than $30 million in escrow with Riverside to disburse upon closing.  *See* Fleischmann Dec., Ex. D (Escrow Agreement). Under the terms of the Escrow Agreement, Riverside was to distribute the balance due and owing under the Sale Agreement ($15,940,324.51) to Novartis through Novartis' escrow agent, Commonwealth Land Title Insurance Company, and $13,763,840.88 to Debtor as the "seller" through its real estate counsel, Cohen, LaBarbera & Landrigan, LLP, reflecting immediate and substantial value for the Debtor upon closing of the transactions.  *See id.*, ¶ 8; Exs. D and E (Closing Statement).

17.    With CPIF's financing of Suffern in place, on September 6, 2017, Debtor and Novartis closed on Debtor's purchase of the Premises under the Sale Agreement.  *See* Fleischmann Dec., ¶ 9; Chapter 11 Case ECF No. 71.  The same day, Novartis withdrew its demand for forfeiture of Debtor's $2.5 million security deposit, and deeded the Premises to Debtor.  *See* Fleischmann Dec., ¶¶ 9-10; Ex. F (Deed).  Debtor, by its managing member, then executed a deed conveying the Premises to Old Mills Rd, which then deeded the Premises to Suffern.  *See id.*, Exs. G and H (Deeds).  The $13,763,840.88 delivered in favor of Debtor was sufficient to pay all valid creditor claims.  *See id.*, ¶ 9.[1]

## C.    Debtor's Request to Dismiss the Chapter 11 Case

18.    On November 1, 2017, and part and parcel to the transactions, Debtor sought dismissal of the Chapter 11 Case by notice of presentment.  *See* Chapter 11 Case ECF

---

[1]    Debtor's most recent operating report listed $10,319,323 in unsecured claims.  *See* Chapter 11 Case ECF No. 70.

No. 67.  The proposed Order, which was consented to by *all* of Debtor's creditors and the Office of the United States Trustee, stated in no uncertain terms that:

> the potential loss of [Debtor's] rights under the Sale Agreement, which was the impetus for the Debtor's commencement of this case, is no longer a concern, [and, accordingly,] **the Debtor no longer requires the protections afforded under the Bankruptcy Code** and wishes to conduct its business and affairs in the ordinary course.

*See* Chapter 11 Case ECF No. 67-1 (emphasis added).  No party objected to the proposed Order or dismissal of the Chapter 11 Case before the noticed objection deadline. *See* Chapter 11 Case ECF No. 73.[2]

19.    The Chapter 11 Case docket indicates that no hearing has been held on Debtor's proposed Order to dismiss, nor was the proposed Order ever signed or entered. Nevertheless, as of December 13, 2017, the Chapter 11 Case – the "binary dispute" between Novartis and Debtor – had for all intents and purposes been fully resolved.

**D.    Novartis' Claims of Breach and Default on the Sale Agreement**

20.    Debtor's careful and intentional implementation of the multi-transaction structure generated tremendous benefit, all while under real and time-sensitive threat of Novartis' triggering a forfeiture of Debtor's $2.5 million deposit.  *See supra*, ¶ 17. Apparently, given the emergency situation, the parties failed to obtain the Court's contemporaneous approval of the transactions before closing.

21.    The transactions permitted Debtor to exercise its rights under the Sale Agreement (thus achieving its goal in initiating the Chapter 11 Case), pay Novartis in full

---

[2]    On December 14, 2017 – the day after the objection deadline – Romaro, LLC ("Romaro"), an unsecured creditor allegedly owed $115,000, filed an objection to dismissal of the Chapter 11 Case.  *See* Chapter 11 Case ECF No. 74.  The same day, Romaro purported to file a claim in the amount of $115,000.  *See* Chapter 11 Claim No. 6.  The bar date, however, was April 14, 2017.  *See* Chapter 11 Case ECF No. 8. Despite its late-filed objection and claim, Romaro had already consented to dismissal of the Chapter 11 Case.  *See* Chapter 11 Case ECF Nos. 67-1, 71-1.

for the Premises, and realize nearly instantaneous value to the complete satisfaction of its creditors.

22.    The transactions also alleviated Debtor from, and instead imposed upon Suffern, the tremendous costs and risks of maintaining and managing the Premises, a vast tract of real property consisting of 162 acres of land and a complex, 585,000-square-foot pharmaceutical manufacturing plant.  *See* Chapter 11 Case ECF No. 11-2, ¶ 3.  Indeed, carrying costs on the Premises, including taxes, utilities, and maintenance, had surpassed $500,000 a month in 2017.  *See id.*, ¶ 28.  However, Debtor's operating report for September 2017 showed it had only $300 in cash on hand.  *See* Chapter 11 Case ECF No. 69.

**E.    The Proposed Adversary Proceeding Complaint, and the**
**Substantial and Irreversible Prejudice to Suffern**

23.    Suffern has undertaken efforts to make the Premises an income-generating property by leasing it to a qualified tenant.  Those efforts have been derailed, however, by the proposed Adversary Proceeding through which Debtor seeks to unwind the very multi-transaction sale process that ***Debtor itself had structured and implemented for its own benefit***. *See* Adversary Proceeding ECF No. 1.

24.    Despite avoiding a loss of its $2.5 million deposit to Novartis, actually generating some $12 million in value, executing all transaction documents, and even stipulating to dismissal of the Chapter 11 Case, Debtor now claims – more than a year and a half later – that it was "fraudulently induced" into transferring the Premises.  *See* Complaint, ¶ 1.  Among other claims, Debtor purportedly seeks to totally unwind the transactions on the basis that ***Debtor itself*** failed to contemporaneously secure this Court's approval.  *See id.*,

¶¶ 67-151.  Debtor seemingly ignores that an unwinding of the transactions would not only return the Premises to Novartis, but result in an immediate $2.5 million loss of its deposit.

25.    Moreover, the Adversary Proceeding does not embody a good-faith dispute among Debtor, Suffern, and the other parties to the sale of the Premises.  Rather, the Adversary Proceeding apparently arises out of a fight among Debtor's principals over their equity interests.  *See* Lefkowitz Dec., ¶ 6.  This has nothing to do with Suffern.  *See id.*

26.    The proposed Adversary Proceeding Complaint has created a cloud on title to the Premises, making it impossible for Suffern to lease any portion thereof to a qualified tenant.  *See id.*, ¶ 7.  Without a tenant, Suffern is currently incurring approximately ***$1 million per month*** in debt service and maintenance costs that will never be recoverable.  *See id.*  Accordingly, Suffern seeks expedited relief from this Court for approval of Debtor's sale of the Premises *nunc pro tunc*, and dismissal of the Chapter 11 Case, just as the Debtor and all creditors stipulated and consented to more than 18 months ago.

## JURISDICTION

27.    This is a core proceeding pursuant to 28 U.S.C. § 157(b).  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  To the extent that Suffern's consent to the entry of any final order and judgment by this Court is necessary, Suffern consents to the entry of any such final order and judgment.

## RELIEF REQUESTED

28.  By this Motion, Suffern seeks the entry of an Order:

> a.  Pursuant to Sections 105 and 363 of the Bankruptcy Code, approving the sale of the Premises to Suffern, *nunc pro tunc* to  September 1, 2017 – the date of Novartis' deed of the Premises to Debtor;

b.  Pursuant to Sections 349 and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017, dismissing the Chapter 11 Case; and

c.  Pursuant to Bankruptcy Rule 7012(b), Fed. R. Civ. P. 12(b)(1), and/or 28 U.S.C. § 1334(c)(1), dismissing and/or abstaining from all claims in Debtor's Adversary Proceeding Complaint.

<u>**BASIS FOR RELIEF REQUESTED**</u>

**I.**

**<u>DEBTOR'S SALE OF THE PREMISES TO SUFFERN SECURED
AND GENERATED SUBSTANTIAL VALUE FOR THE ESTATE AND
ITS CREDITORS, AND SHOULD BE APPROVED *NUNC PRO TUNC*</u>**

29.    Under the Bankruptcy Code, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Relatedly, the "Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

30.    A debtor should be authorized to sell assets out of the ordinary course of business under Section 363 and prior to obtaining a confirmed plan of reorganization if it demonstrates a "sound business purpose" for doing so.  *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *see also In re Del. & Hudson R. Co.*, 124 B.R. 169, 177 (D. Del. 1991) (sale of substantially all of debtor's assets outside of reorganization plan is appropriate when sound business reason justifies sale).  Additionally, courts will consider: (i) whether fair and reasonable consideration is provided; (ii) whether the transaction has been proposed and negotiated in good faith; and (iii) whether adequate and reasonable notice is provided.  *See Del. & Hudson R.*, 124 B.R. at 175-76 (adopting *Lionel* and listing other factors to consider in determining whether sound business purpose exists for sale).  Lastly, any party objecting to the sale "must produce[] evidence that would rebut the articulated business justification" for it.  *In re Boston Generating, LLC*, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010) (citing *Lionel*).

31.     Debtor's sale of the Premises easily meets the standard for approval.  First,
there was a sound business reason for the transactions.  *See Lionel*, 722 F.2d at 1070.  Debtor
stood to lose its $2.5 million deposit if it failed to close the transaction with Novartis.
Debtor's implementation of the multi-transaction structure to purchase and immediately sell
the Premises mitigated against any loss of that deposit, while simultaneously securing funds
to satisfy the balance due to Novartis and generating substantial additional value.  *See*
Fleischmann Dec., ¶¶ 6-8.  Because Debtor's investment in the Premises was limited to its
$2.5 million security deposit, the sale to Suffern generated a return of nearly four hundred
percent in less than a year.  Moreover, the sale relieved Debtor of the extraordinary cost and
burden of maintaining the Premises, whose carrying costs are now in excess of $1 million
per month.  *See* Lefkowitz Dec., ¶ 7; Chapter 11 Case ECF No. 11-2, ¶ 3.  While Debtor
filed the Chapter 11 Case merely to protect its rights under the Sale Agreement, Debtor
apparently never held more than $300 in cash at any time after the filing of its Petition.  *See*
Chapter 11 Case ECF Nos. 26, 32, 35, 39, 44, 54, 61, 68-70 (Debtor's Operating Reports).
As of the date of the closing of the Sale Agreement, it was thus unclear how, or whether,
Debtor would have the financial wherewithal to maintain the Premises.[3]  *See In re CPJFK,
LLC* (496 B.R. 290, 304-05 (Bankr. E.D.N.Y. 2001) (approving "prompt" sale of
substantially all of debtor's assets where debtor lacked "funding to operate" premises).
Additionally, in its October 2017 operating report, Debtor listed $10,319,323 in unsecured
claims.  *See* Chapter 11 Case ECF No. 70.  The transaction with Suffern gave Debtor
sufficient cash to pay off all valid creditors.  Further, Debtor was unable to secure financing

---

[3]     Suffern's purchase of the Premises also potentially avoided a more protracted Chapter 11 Case, or even a
successive bankruptcy filing by Debtor.  Given Debtor's weak cash position, it is difficult to see how
Debtor could have kept up with the substantial carrying costs on the Premises if it had not sold to Suffern.

to purchase the Premises and close in a timely manner, which led Novartis to declare Debtor in default under the Sale Agreement. *See* Chapter 11 Case ECF No. 60-2. Without Suffern having stepped in to finance the transaction, Debtor may have lost its right to purchase the Premises altogether.

32.   Second, and for the same reasons a sound business purpose existed for the sale, Suffern provided fair and reasonable consideration for the Premises. *See Del. & Hudson R.*, 124 B.R. at 175-76. Not only did Debtor receive an instantaneous and substantial premium over the amount it agreed to pay Novartis under the Sale Agreement, it received enough value to satisfy its creditors and was relieved of the Premises' extraordinary carrying costs. *See* Fleischmann Dec., ¶ 9. Debtor achieved an exceptional outcome for itself and its creditors in selling the Premises to Suffern.

33.   Third, the transaction was proposed and negotiated in good faith. *See Del. & Hudson R.*, 124 B.R. at 175-76. All parties were represented by competent counsel who agreed upon the deal structure in an arm's-length transaction that was heavily negotiated and documented. *See* Fleischmann Dec., ¶¶ 6-8; Exs. A-H. When Debtor was unable to secure financing for the Premises, Suffern – an unrelated entity not controlled by Debtor or any of its members – agreed to act, in essence, as Debtor's financier by obtaining a loan through CPIF, the proceeds of which would satisfy Novartis and yield excess cash for Debtor. *See* Fleischmann Dec., ¶¶ 6-8; Exs. A-B.

34.   Fourth, while the parties did not provide formal notice of the sale to Debtor's creditors, this did not impact the fairness of the transaction nor should it prevent the transaction's approval now. *See Del. & Hudson R.*, 124 B.R. at 175-76. To the contrary, all creditors readily knew of the sale and for that reason stipulated to dismissal of the Chapter

12

11 Case.  *See* Chapter 11 Case ECF Nos. 67, 71.  As explained above, while the Debtor was attempting to secure financing to close on the Premises, Novartis declared Debtor in default under the Sale Agreement and moved for the release of Debtor's $2.5 million security deposit.  *See* Chapter 11 Case ECF Nos. 58-60.  The potential loss of Debtor's rights under the Sale Agreement – the same risk that caused Debtor to initiate the Chapter 11 Case – created an exigency that, coupled with the time necessary to secure, negotiate, properly document, and implement a complicated structure to effectuate the deal with Novartis, prevented the parties from securing the Court's approval before it all closed. Nonetheless, by the time Debtor closed on the Premises and moved to dismiss the Chapter 11 Case without timely objection from any creditor, the "binary dispute" between Novartis and Debtor that was the Chapter 11 Case was, in essence, resolved.  *See* Chapter 11 ECF No. 40, p. 14:2-3.  Indeed, that is the reason Debtor moved to dismiss the Chapter 11 Case, upon consent of its creditors and the United States Trustee.  *See* Chapter 11 Case ECF Nos. 67, 71.  Lastly, Debtor's sale of the Premises generated more than enough cash for Debtor to satisfy all of its creditors.  *See supra*, ¶ 17.  Accordingly, Suffern submits that no creditor was prejudiced by virtue of the lack of formal notice of Debtor's sale of the Premises.

35.    It must also be noted that, without Court approval for Debtor's sale of the Premises, Suffern faces the loss of its substantial investment on the Premises, which, as noted, is in excess of $1 million per month.  *See supra*, ¶ 26.  The other parties who have been pulled into the Adversary Proceeding – particularly the lender and mortgagee, CPIF – likewise face the risk of a significant loss if the sale is not approved and Suffern continues to be unable to lease the Premises.

36.     For these reasons, and pursuant to the Court's broad equitable powers, the sale of the Premises to Suffern should be approved, *nunc pro tunc* to September 1, 2017 – the date Novartis conveyed the property to Debtor.  *See* 11 U.S.C. §§ 105, 363.

## II.

### CAUSE EXISTS TO DISMISS THE CHAPTER 11 CASE
### BECAUSE DEBTOR'S SALE OF THE PREMISES OBVIATES
### ANY FURTHER NEED FOR BANKRUPTCY PROTECTION

37.     Section 1112(b) of the Bankruptcy Code permits the court to dismiss a Chapter 11 case "for cause," stating:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate.

The determination of whether "cause" exists is made on a case-by-case basis, and the decision to dismiss a Chapter 11 case rests in the sound discretion of the bankruptcy court. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984); *In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 600 (Bankr. S.D.N.Y. 2018) (Section 1112(b) "grants the bankruptcy court broad equitable discretion to grant relief based upon the facts and circumstances of a particular case").  In deciding whether cause exists to dismiss a case under Chapter 11, the Court may consider, *inter alia*, "whether any remaining issues would be better resolved outside the bankruptcy forum" and whether "any property remains in the estate to be administered." *In re Just Plumbing & Heating Supply, Inc.*, No. 11-10151 (MG), 2011 Bankr. LEXIS 4021, at *7 (Bankr. S.D.N.Y. Oct. 18, 2011).  *See also* 11 U.S.C. § 1112(b) (listing non-exhaustive grounds to dismiss Chapter 11 matter).  Once the court finds cause for dismissing a Chapter 11 proceeding, the court must then evaluate whether dismissal is in the best interests of creditors and the estate.  *See* 11 U.S.C. § 1112(b).

14

38.    Here, good cause exists to dismiss the Chapter 11 Case.   As the Court observed early on, the Chapter 11 Case was essentially a two-party dispute between Novartis and Debtor that, as Debtor noted in its proposed Order to dismiss, it initiated in order to prevent the loss of its right to purchase the Premises under the Sale Agreement.   *See* Chapter 11 Case ECF Nos. 40, p. 14:2-3; 67-1.   Once Novartis' sale of the Premises to Debtor closed, there was no more property requiring Court administration, and Debtor no longer needed the protection of Chapter 11.   *See In re Just Plumbing*, 2011 Bankr. LEXIS 4021, at *7.   Indeed, Debtor moved to dismiss the Chapter 11 Case on this basis.   *See* Chapter 11 ECF Case No. 67-1.   Since Debtor sought that relief, without timely objection from any creditor, nearly a year and a half has passed, and Debtor has not withdrawn its motion, proposed a plan, or even filed an updated operating report.   In fact, it appears Debtor's request for dismissal remains open.   Additionally, given that Debtor earned some $12 million from sale of the Premises, Debtor was able to satisfy its creditors.   Finally, Suffern took control of the Premises and has made substantial investments in it.   *See id.*; Lefkowitz Dec., ¶, 7.   As explained further below, to the extent that Debtor has any claim against Suffern and the other parties involved in its sale of the Premises, those issues can and should be resolved "outside of the bankruptcy forum."   *See In re Just Plumbing*, 2011 Bankr. LEXIS 4021, at *7.   Accordingly, good cause exists to dismiss the Chapter 11 Case.

39.    Moreover, dismissal will be in the best interests of the estate and its creditors. *See* 11 U.S.C. § 1112(b).   Eliminating the costs associated with Chapter 11 oversight will benefit Debtor and its creditors, and allow for a more streamlined settlement of any of dispute among Debtors' equity holders.   Further, as Debtor represented to the Court in its

request for dismissal, it wished "to conduct its business and affairs in the ordinary course." *See* Chapter 11 Case ECF No. 67-1. The Court, respectfully, should allow Debtor to do so.

40.      For these reasons, the Chapter 11 Case should be dismissed. *See* Bankruptcy Code sections 349 and 1112(b); Bankruptcy Rule 1017.

### III.

### THE COURT SHOULD OTHERWISE DISMISS AND/OR ABSTAIN FROM ANY REMAINING CLAIMS IN DEBTOR'S PROPOSED ADVERSARY PROCEEDING COMPLAINT, AS THEY REFLECT A FIGHT OVER EQUITY THAT DOES NOT REQUIRE THE BANKRUPTCY COURT'S JURISDICTION

**A.      Debtor's Avoidance Claims Are Moot And Should Be Dismissed**

41.      The thrust of Debtor's proposed Adversary Proceeding Complaint is that its sale of the Premises to Suffern was allegedly "fraudulent" and avoidable because it took place without the Court's approval and "without consideration." *See* Complaint, ¶¶ 76, 83, 93. But substantial consideration was paid and, if this Court approves the sale *nunc pro tunc*, Debtor's avoidance and related damages claims are moot and must be dismissed.[4]

42.      "To ensure a case remains fit for federal-court adjudication, the parties must have the necessary [personal] stake not only at the outset of litigation, but throughout its course." *Camreta v. Greene*, 563 U.S. 692, 701 (2011); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (a party invoking the jurisdiction of the federal courts must demonstrate, *inter alia*, an "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical") (citations and quotations omitted). Thus, "a case becomes moot when the issues 'presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Nation*

---

[4]      The facts presented above undercut and call into question the propriety of the proposed Adversary Proceeding Complaint as a whole. Suffern reserves its right to seek any and all available relief at the appropriate time.

*Magazine v. United States Dep't of Defense*, 762 F. Supp. 1558, 1568 (S.D.N.Y. 1991) (quoting

*Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).   "To determine whether mootness exists, a court

must examine each issue in the case separately."   *Nation Magazine*, 762 F. Supp. at 1568.

43.   With the proposed Adversary Proceeding Complaint, Debtor asserts seven

claims against Suffern.   The first two such claims seek avoidance of Debtor's sale of the

Premises under Bankruptcy Code Sections 549(a) and 550(a) on the basis that the sale was

unauthorized by the Court.   *See* Complaint, ¶¶ 67-90.   Debtor also seeks recovery of the

value of the Premises – *i.e.,* $12 million – from Suffern under Bankruptcy Code section 547.

*See id.*, ¶¶ 106-111.   Lastly, Debtor asserts several New York State law claims against

Suffern, including a fraudulent conveyance claim under N.Y. Debtor & Creditor L. § 273,

on the basis that Debtor's transfer of the Premises was "without fair consideration," a claim

for the alleged fraudulent inducement of the conveyance from Debtor to Suffern, and claims

for conversion, "civil conspiracy to convert property," and "conspiracy to defraud [the]

Bankruptcy Court and [Debtor's] creditors."   Complaint, ¶¶ 91-96, 112-138.

44.   None of these claims can survive this Court's *nunc pro tunc* approval of the

sale.   As an initial matter, and as noted above, the sale allowed Debtor to avoid forfeiture of

its $2.5 million deposit, pay the balance due to Novartis under the Sale Agreement, and

immediately generate substantial additional value for itself and its creditors.   *See supra*, ¶¶

12-22.   Both Debtor and Suffern – an entity not controlled by any insider of Debtor – were

represented by counsel in connection with the sale, which was fully documented and

negotiated in good faith.   *See supra*, ¶¶ 13-16.

45.   As further noted above, in order to approve the sale to Suffern, the Court

must consider and determine, among other things, whether Debtor obtained fair

consideration for the sale and whether the transaction was conducted in good faith.  *See Del. & Hudson R.*, 124 B.R. at 175-76.  Suffern submits that the answer to both questions is plainly yes.  Yet the proposed Adversary Proceeding Complaint alleges exactly the opposite – that Debtor's sale of the Premises to Suffern is avoidable and "fraudulent" because it was conducted without this Court's approval and because Debtor allegedly obtained nothing in exchange for conveying the property out of the estate.  *See* Complaint, ¶¶ 48, 50, 85, 67-151.  The documents plainly establish otherwise.

46.    Given that Debtor obtained $12 million from its sale of the Premises in September 2017, an amount sufficient to pay off its creditors, Debtor arguably never had standing even to maintain its Bankruptcy Code and New York State law-based avoidance and damages claims because it suffered no actual "injury in fact" as a result of the sale, thus depriving this Court of jurisdiction over the matter.  *See Lujan*, 504 U.S. at 560.  In any case, to the extent the Court agrees that Debtor obtained adequate consideration in the sale it structured, the issues raised by Debtor's proposed Adversary Proceeding Complaint "are no longer live," leaving no justiciable controversy for the Court.  *Nation Magazine*, 762 F. Supp. at 1568 (citation and quotations omitted).  Indeed, Debtor's Bankruptcy Code claims are predicated exclusively on an allegation that the sale took place without this Court's approval.  Debtor's New York State law claims are also predicated on that allegation.  *See* Complaint, ¶¶ 91-96, 112-138.  This Court's *nunc pro tunc* approval of Debtor's sale of the Premises forecloses the other claims.[5]

---

[5]    Debtor also asserts a claim against CPIF for avoidance of its mortgage on the Premises, a claim against Bridgewater Capital Partners LLC for breach of contract for its alleged failure to procure financing for Debtor's purchase of the Premises, and a legal malpractice claim against David Fleischmann premised upon the Debtor's failure to secure Court approval for sale of the Premises.  *See* Complaint, ¶¶ 97-105, 139-151.  These claims, too, would fail upon *nunc pro tunc* approval of the sale.

47.    In sum, if the Court approves Debtor's sale of the Premises *nunc pro tunc*, the proposed Adversary Proceeding Complaint must be dismissed as the Debtor will then lack standing and all such claims will be rendered moot.  *See* Bankruptcy Rule 7012(b); Fed. R. Civ. P. 12(b)(1).[6]

**B.    Alternatively, the Court Should Abstain From Any Remaining Claims Raised in Debtor's  Proposed Adversary Proceeding Complaint**

48.    As an alternative form of relief from the claims Debtor asserts in the proposed Adversary Proceeding complaint, Suffern respectfully requests that this Court abstain.

49.    Under section 1334(c)(1), bankruptcy courts have discretion to abstain from hearing cases "in the interest of justice, or in the interest of comity with State courts or respect for State law."  *See also In re Cody, Inc.*, 281 B.R. 182, 190 (Bankr. S.D.N.Y. 2002) ("courts have broad discretion to abstain from hearing claims arising under Title 11, or arising in or related to a case under Title 11, whenever appropriate 'in the interest of justice'") (quoting 28 U.S.C. § 1334(c)(1)).  In determining whether to abstain as a matter of discretion, courts generally consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves

---

[6]    Should the Court deny *nunc pro tunc* approval of the sale, Suffern hereby reserves its right to seek dismissal of the Adversary Proceeding Complaint pursuant to any further ground provided by Fed. R. Civ. P. 12(b) and applicable law.

forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re Cody*, 281 B.R. at 190-91.

50.    In order to abstain, the court does not need to consider or find that all of these factors weigh in favor of abstention.  Rather, "a court may utilize any number of factors to determine whether it should abstain." *In re Fierro*, No 14-41439 (NHL), 2015 Bankr. LEXIS 1779, at *8 (Bankr. E.D.N.Y. May 29, 2015).  *See also id.* (court exercised its discretion to abstain where four factors weighed in favor of abstention); *In re AOG Entm't, Inc.*, No. 16-11090 (SMB), 2016 Bankr. LEXIS 4514, at *26-33 (Bankr. S.D.N.Y. Dec. 30, 2016) (same).  Here, at least seven of the *Cody* factors favor abstention.

51.    First, abstention will have no effect on the administration of the estate (factor 1).  The Chapter 11 Case was a two-party dispute concerning Debtor's right to buy the Premises under the Sale Agreement – a right the Debtor successfully protected and exercised.  For all intents and purposes, the estate was fully administered and ripe for closing once Debtor obtained title to the Premises.  The resolution of Debtor's state law claims will not alter this.

52.    Second, state law predominates over bankruptcy issues (factor 2).  The proposed Adversary Proceeding Complaint, fundamentally, sounds in and turns upon New York law.  *See* Complaint, ¶¶ 91-96, 112-138.  Indeed, Debtor's only basis for its federal causes of action is Debtor's ***own failure*** to secure this Court's approval to sell the Premises.

53.    Third, while the proposed Adversary Proceeding is, in form, a "core" proceeding, in substance, it is an action for damages and avoidance of transfers that took

place *after* Debtor closed on the Premises and resolved the two-party dispute that led to the Chapter 11 Case (factor 7). Moreover, as noted above, resolution of the remaining claims in the proposed Adversary Proceeding Complaint will not provide Debtor with any greater relief than it originally sought in initiating the Chapter 11 Case.

54.    Fourth, and for largely the same reason, Debtor's state law claims can easily be severed because the administration of Debtor's rights under the Sale Agreement has already taken place and will not be affected by Debtor's state law claims (factor 8).

55.    Fifth, abstention will significantly reduce the burden on this Court's docket (factor 9). Indeed, Debtor's state law claims, particularly those sounding in fraud, are fact-intensive and, absent dismissal at the pleading stage, would likely require extensive and lengthy discovery.

56.    Sixth, the Debtor will have the right to a jury trial on its state law claims (factor 11), which seek monetary damages along with equitable relief. *See* N.Y. CPLR § 4101(a); *Cadwalader Wickersham & Taft v. Spinale*, 177 A.D.2d 315, 316 (1st Dep't 1991) ("Where … money damages alone afford a full and complete remedy, the action sounds in law and may be tried by a jury" even if plaintiff also joins equitable claims).

57.    Seventh, all other parties to the proposed Adversary Proceeding are non-debtors (factor 12). None of the proposed Adversary Proceeding defendants even appeared in the Chapter 11 Case as creditors. *See* Chapter 11 Case Claim Nos. 1-6.

58.    For these reasons, this Court should abstain to the extent any claims survive *nunc pro tunc* approval of the sale.

## NO PRIOR REQUEST

59.     No previous motion for the relief sought in this Motion has been made to this or to any other court.

## NOTICE

60.     Suffern intends to provide notice of this Motion to: (i) the Office of the United States Trustee; (ii) counsel to Debtor in the Chapter 11 Case and the Adversary Proceeding; (iii) counsel to all defendants in the Adversary Proceeding; (iv) all creditors who have filed claims in the Chapter 11 Case; and (v) all other parties who have timely filed requests for notice under Bankruptcy Rule 2002.

## CONCLUSION

**WHEREFORE**, Suffern respectfully requests that this Court enter an Order, substantially in the form submitted herewith, granting the relief requested herein, and grant Suffern such other and further relief as the Court deems just and proper.

Dated: New York, New York
         April 19, 2019

**HAHN & HESSEN LLP**

By:     _s/ Stephen J. Grable_
        Gilbert Backenroth
        Stephen J. Grable
        Steven R. Aquino

488 Madison Avenue
New York, New York 10022
Tel.: (212) 478-7200
Fax: (212) 478-7400
gbackenroth@hahnhessen.com
sgrable@hahnhessen.com
saquino@hahnhessen.com

*Attorneys for Suffern Partners LLC*

22