**HAHN & HESSEN LLP**
Gilbert Backenroth
Stephen J. Grable
Steven R. Aquino
488 Madison Avenue
New York, New York 10022
Telephone: 212-478-7200
Fax: 212-478-7400

*Attorneys for Suffern Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| In re: | : |
|  | : Case No. 17-22218 (RDD) |
| RS OLD MILL, LLC, | : |
|  | : Chapter 11 |
| Debtor. | : |
|  | : |
|  | : |

---

|  |  |
|---|---|
| RS OLD MILL, LLC, | : |
|  | : |
| Plaintiff, | : Adversary No. 19-8243 (RDD) |
|  | : |
| - against - | : Hearing Date: May 24, 2019, 10:00 a.m. |
|  | : |
| SUFFERN PARTNERS LLC, | : |
| BRIDGEWATER CAPITAL PARTNERS | : |
| LLC, ISAAC GENUTH, MARK YUNGER | : |
| a/k/a "MARK JUNGER," GOLDIE | : |
| REISMAN, MOSES REICHMAN, RS OLD | : |
| MILLS RD LLC., DAVID | : |
| FLEISCHMANN, THOMAS | : |
| LANDRIGAN, and CPIF LENDING, LLC, | : |
|  | : |
| Defendants. | : |
|  | : |

---

### SUFFERN PARTNERS LLC'S CONSOLIDATED OBJECTION TO DEBTOR'S APPLICATIONS TO RETAIN (A) LEVINE & ASSOCIATES, P.C. AS "SPECIAL LITIGATION COUNSEL" AND (B) GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP AS "SUBSTITUTE BANKRUPTCY COUNSEL"

# TABLE OF CONTENTS

OVERVIEW OF SUFFERN'S OBJECTIONS ................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

    A.     Debtor's Purchase and Immediate Sale of the Premises, and the
               Subsequent Request for Dismissal of the Chapter 11 Case ........................... 3

    B.     The Levine Firm's Retention Application ...................................................... 4

    C.     The GWFG Firm's Retention Application ...................................................... 7

    D.     Suffern's New Owner and the Sale Approval Motion .................................... 8

OBJECTIONS ............................................................................................................... 10

I.     THE ADVERSARY PROCEEDING SHOULD BE DISMISSED,
       OBVIATING ANY NEED FOR CONSIDERATION OF THE
       RETENTION APPLICATIONS ........................................................................... 10

II.    EVEN IF THE SALE APPROVAL MOTION IS NOT GRANTED, THE
       LEVINE FIRM IS MATERIALLY CONFLICTED AND ITS
       RETENTION SHOULD NOT BE AUTHORIZED ............................................. 12

III.   THE GWFG FIRM'S PROPOSED RETENTION IS UNSUPPORTED
       AND UNNECESSARY ........................................................................................ 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace, S.P.A.,*
 160 F. Supp. 2d 657 (S.D.N.Y. 2001) . Bankruptcy ....................................................12

*In re Adelphia Communications Corp.,*
 336 B.R. 669-70 (Bankr. S.D.N.Y. 2006)....................................................................11

*Adelphia Recovery Trust v. Goldman Sachs & Co.,*
 748 F.3d 110 (2d Cir. 2014) ........................................................................................15

*In re AroChem Corp.,*
 176 F.3d at 623 ............................................................................................................14

*Board of Educ. v. Nyquist,*
 590 F.2d 1241 (2d Cir. 1979) ...............................................................................12, 13

*In re Galerie Des Monnaies, Ltd.,*
 62 B.R. 224 (S.D.N.Y. 1986) ......................................................................................15

*Goodwine v. City of New York,*
 15-cv-2868, 2016 U.S. Dist. LEXIS 11149 (S.D.N.Y. Jan. 29, 2016) ......................13, 15

*Grabis v. Navient Sols., LLC (In re Grabis),*
 No. 13-10669, 2018 Bankr. LEXIS 3664 (Bankr. S.D.N.Y. Nov. 20, 2018) .................16

*In re Mercury,*
 280 B.R. 35 (Bankr. S.D.N.Y. 2002) ...................................................................12, 13

*In re Mushroom Transportation Co.,*
 382 F.3d 325 (3d Cir. 2004) ........................................................................................11

*Official Comm. of Unsecured Creditors of Maxwell Newspapers v. Macmillan, Inc. (In re Maxwell Newspapers),*
 189 B.R. 282 (Bankr. S.D.N.Y. 1995) ........................................................................15

*Selinger Enters., Inc. v. Cassuto,*
 50 A.D.3d 766 (2d Dep't 2008)...................................................................................16

*Smart World Technologies, LLC v. Juno Online Services Inc.,*
 423 F.3d 166 (2d Cir. 2005) ........................................................................................11

*Young v. Department of Justice,*
 882 F.2d 633 (2d Cir. 1989) ........................................................................................15

**Statutes**

11 U.S.C. § 327 .................................................................................................. 12

11 U.S.C. § 1107 ................................................................................................ 11

28 U.S.C. § 1334 ................................................................................................ 16

**Other Authorities**

N.Y. R. Prof. Conduct 1.9 ............................................................................ 13, 14

N.Y. R. Prof. Conduct 3.7 ............................................................................ 13, 15

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Suffern Partners LLC ("Suffern"), an interested party in the captioned Chapter 11 proceeding involving RS Old Mill, LLC ("Debtor") and a defendant in the proposed adversary proceeding, by its undersigned counsel, Hahn & Hessen LLP, respectfully submits this consolidated objection to Debtor's applications for authorization to retain (a) Levine & Associates, P.C. (the "Levine Firm") as "special litigation counsel" and (b) Goldberg Weprin Finkel Goldstein LLP (the "GWFG Firm") as "substitute bankruptcy counsel."[1]

## <u>OVERVIEW OF SUFFERN'S OBJECTIONS</u>

1.      Debtor's principal, Yehuda Salamon, and his "consultant" Marty Stern, are misusing RS Old Mill, LLC's status as a Debtor and the Bankruptcy Court's protections, processes, and resources to further their own personal interests.

2.      Suffern – under new owners since only March 25, 2019 – has pieced together the facts in an effort to discern why and how there is allegedly a cloud on title to the Premises that Suffern purchased from Debtor some 18 months ago.  Three very troubling facts are now clear.  First, Mr. Salamon and Mr. Stern orchestrated the allegedly "dubious transactions" and "unauthorized transfer of the Debtor's property" in 2017 that they now demand be unwound by the proposed Adversary Proceeding.  Second, the Levine Firm that is now requesting to be appointed as Debtor's "special litigation counsel" aided Mr. Salamon and Mr. Stern in their efforts, and fails to disclose its material and irreconcilable conflicts to this Court.   Third, the collective actions of Mr. Salamon,

---

[1]     Supporting documentation is submitted with the accompanying Declaration of Isaac Lefkowitz (the "Lefkowitz Dec.") and Suffern's pending Emergency Motion to Approve Sale of Substantially All of Debtor's Assets to Suffern, *Nunc Pro Tunc*, to Dismiss the Chapter 11 Case, and for Dismissal and/or Abstention as to All Claims in Debtor's Proposed Adversary Proceeding Complaint (*see* Chapter 11 Case, ECF Nos. 86, 86-1, 86-2. the "Sale Approval Motion").  Capitalized terms not defined herein shall have the meanings ascribed in the Sale Approval Motion.

1

Mr. Stern, and the Levine Firm concern a dispute over Suffern's equity that, regardless of its merits, is in no way beneficial to Debtor or its creditors and (a) thus constitutes a gross misuse of the Bankruptcy Court's protections, processes, and resources, and (b) which the Bankruptcy Court lacks subject matter jurisdiction to adjudicate.

3.      The record of contemporaneous documentation and correspondence is damning to Mr. Salamon, Mr. Stern, and the Levine Firm, and they should be estopped from prosecuting allegations that are contrary to their prior representations and actions. No reason is given why Debtor seeks to replace Pick & Zabicki LLP ("the Pick Firm") as counsel for Debtor or why the Pick Firm is not competent to bring the Adversary Proceeding if it were meritorious. The inescapable conclusion is that Debtor – controlled by Salamon *et al.* – seeks to replace the GWFG Firm as Debtor's counsel because the Pick Firm was unwilling to bring the Adversary Proceeding that lacks any merit.

4.      For the reasons set forth below and in Suffern's related Sale Approval Motion, the Court should deny Debtor's applications to retain the Levine Firm and the GWFG Firm, approve Debtor's sale of the Premises pursuant to Section 363 of the Code *nunc pro tunc*, and dismiss the Adversary Proceeding with prejudice.

<u>**FACTUAL BACKGROUND**</u>

5.      The facts and documentation related to Debtor's purchase and sale of the Premises in 2017 are detailed in Suffern's Sale Approval Motion, which is incorporated by reference. For the Court's convenience, certain critical facts are recounted here again and now buttressed by the contemporaneous email correspondence that Suffern's new owner has since obtained.

**A.  Debtor's Purchase and Immediate Sale of the Premises, and the
Subsequent Request for Dismissal of the Chapter 11 Case**

6.     Debtor commenced the Chapter 11 Case in February 2017 to protect its right under a Sale Agreement with Novartis to purchase the Premises for $18 million.  The Chapter 11 Case, in the Court's view, reflected "a binary dispute between Novartis and Debtor" over whether Debtor would assume or reject the Sale Agreement.  *See* Chapter 11 Case ECF No. 40, p. 14:2-3.  Ultimately, following certain related state court litigation, Debtor assumed the Sale Agreement and this Court authorized the assumption and directed the parties to close on Debtor's purchase of the Premises from Novartis.  *See* Chapter 11 Case ECF Nos. 41-42, 45.

7.     Debtor was unable to timely secure financing, and Novartis thus deemed Debtor in default under the Sale Agreement and sought forfeiture of Debtor's $2.5 million down payment.  *See* Sale Approval Motion, ¶ 10; Chapter 11 ECF Case No. 60-2; No. 86, ¶ 11.  To avoid that forfeiture and also a loss of the additional benefits of purchasing the Premises, Debtor implemented and closed on a series of transactions by which Suffern agreed to finance Debtor's purchase of the Premises and immediately acquire the property for $30 million, reflecting an instant $12 million premium for the benefit of Debtor and its creditors.  *See* Sale Approval Motion, ¶¶ 11-16.  The transactions ultimately closed in September 2017, with Debtor then achieving the sole remedy it sought by the Chapter 11 Case: assumption of and performance under the Sale Agreement.  *See* Sale Approval Motion, ¶¶ 16-17; Chapter 11 Case ECF No. 71.  Indeed, Debtor's sole managing member and 100% equity interest holder – Yehuda Salamon – executed the very deed that transferred the Premises from Debtor and ultimately was acquired by Suffern.  *See* Sale Approval Motion, ¶ 17.

8.     As a result of the transactions, $13,763,840.88 was distributed to Debtor's real estate attorney, permitting payment of all valid creditor claims. *See id.* Accordingly, Debtor sought dismissal of the Chapter 11 Case on November 1, 2017. *See* Chapter 11 Case ECF Nos. 67, 67-1. A dispute then emerged with Yehuda Salamon contesting certain equity interests in the Premises, then-owned by Suffern. *See, e.g.,* Lefkowitz Dec., Exs. 7-12. Yehuda Salamon has since stalled Debtor's request to dismiss the Chapter 11 Case, which has remained in limbo for the last 18 months.

**B.     The Levine Firm's Retention Application**

9.     On March 29, 2019, Debtor – by the Levine Firm and the GWFG Firm – filed the proposed Adversary Proceeding Complaint that seeks to unwind the transactions that Debtor's principals and counsel designed, structured, and implemented. In furtherance of the allegations, Debtor's principal purportedly terminated Debtor's retention of the Pick Firm and now requests approval to retain (a) the Levine Firm as "special litigation counsel" and (b) the GWFG Firm as "substitute" bankruptcy counsel to replace the Pick Firm. *See* Levine Application; GWFG Application.

10.     The Levine Firm claims it had no involvement in the sale transactions that Debtor now seeks to unwind, but contemporaneous documents and correspondence confirm otherwise. *See* Levine Dec., ¶ 5. The Levine Firm was extensively involved in structuring and implementing the sale transactions, having represented Debtor's managing member, Yehuda Salamon, and consultant Marty Stern (also known as "Martin Salamon"), in connection with such transactions and the subsequent dispute over equity. As such, the Levine Firm has material and non-waivable conflicts that prevent it from being able to serve

as Debtor's counsel. The following reflect only a sampling of the hundreds of emails the

Levine Firm wrote and received in conjunction with the matters now purportedly in dispute.

- In June 2017, before Debtor assumed the Sale Agreement, the Levine Firm developed a "specific game plan" with its clients Yehuda Salamon and Marty Stern for moving the Chapter 11 Case forward, and offered direction to the Pick Firm on Debtor's assumption of the Sale Agreement and closing on purchase of the Premises. The Levine Firm's plan included that "when Novartis closes we will likely withdraw the [bankruptcy] petition," which is precisely what Debtor would ultimately request and is now sought to be challenged by the proposed Adversary Proceeding. *See* Lefkowitz Dec., Ex. 2.

- In July 2017, the Levine Firm wrote to Novartis' counsel – purportedly on Debtor's behalf – in an effort to obtain documents "necessary to permit a closing (e.g. that will permit us to obtain an insurance policy, etc.)." The Levine Firm also represented to Novartis' counsel that "[a]ll is in place for a closing, and the client is very eager to close." The Levine Firm promised to provide "proof of funds," and immediately reached out to Yehuda Salamon and Marty Stern for same. The Levine Firm was thus intimately involved in the sale transactions and representing Yehuda Salamon's interests specifically. *See id.*, Ex. 3.

- In August 2017, given Debtor's inability to secure financing to close on the Premises, the Levine Firm sent to Debtor's real estate counsel, Thomas Landrigan, Esq. – as well as Marty Stern, Heidi Sorvino (counsel to Bridgewater), Mark Yunger (a Bridgewater principal), and the Pick Firm – a proposed email to Novartis that if it refused to extend the closing date, "litigation counsel [*i.e.,* the Levine Firm] will seek to amend the existing State Court complaint to assert claims for … specific performance [and] damages in excess of $12 million." Mr. Landrigan copied the Levine Firm's proposed email virtually word for word in sending it to Novartis. The Levine Firm's "Team" are the very same people against whom liability is now sought by the proposed Adversary Proceeding. *See id.*, Ex. 4.

- The next day, Novartis declared Debtor in default under the Sale Agreement (*see* Chapter 11 Case ECF No. 60-2). The Levine Firm sent another proposed email to the "Team" – Mr. Landrigan, Mr. Stern, Ms. Sorvino, Mr. Yunger, and the Pick Firm – suggesting they file a motion to compel Novartis to close on the Premises. Debtor filed such motion later that day. *See id.*, Ex. 5; Chapter 11 Case ECF No. 58.

- In September 2017, immediately after Debtor closed on the Premises – *i.e.,* after Yehuda Salamon on Debtor's behalf deeded the Premises to Old Mills Rd, which then deeded the Premises to Suffern to obtain Debtor's $30 million

sale price – the Levine Firm directed the Pick Firm to "prepare a motion on notice to all creditors to withdraw" the bankruptcy petition. Debtor subsequently filed the motion (which, again, the Levine Firm now seeks to challenge as "special litigation counsel" to Debtor). *See* Lefkowitz Dec., Ex. 6; Chapter 11 Case ECF Nos. 67, 67-1.

- Throughout September to December 2017, the Levine Firm represented Yehuda Salamon and his consultant Marty Stern in an alleged "contractual" dispute concerning a purported right to 65% of Suffern's equity, confirming that Yehuda Salamon knowingly and intentionally caused Debtor to transfer and sell the Premises. *See, e.g.,* Lefkowitz Dec., Exs. 8-12. Yehuda Salamon, Marty Stern, and the Levine Firm thus unquestionably knew more than 18 months ago – and tellingly did nothing – about the very transfers they now claim were "fraudulent," "dubious," and without consideration. *See* Levine Application, ¶¶ 2, 8-9.

- Notwithstanding the dispute over Yehuda Salamon's alleged equity interest, the parties continued to communicate as to wrapping up the Chapter 11 Case, and the Levine Firm, Yehuda Salamon, and Marty Stern were extensively involved in those communications. Yehuda Salamon even confirmed on October 11, 2017 that "*[a]ll creditors and closing expenses were paid*" except certain title-related fees (for which payment was being arranged). *See* Lefkowitz Dec., Ex. 7 (emphasis added).

- On November 15, 2017, and despite Yehuda Salamon having confirmed that all creditors and other expenses had been paid, the Levine Firm claimed it was owed $65,000 from Debtor's estate, and threatened that if it did "not receive the funds from [Mr. Landrigan's] escrow account prior to the termination of the bankruptcy case, [the Levine Firm] will have to file a Notice of Claim and object to the dismissal." *See id.*, Ex. 11. The Levine Firm now claims in its retention application that it has "no prior connection with … the Debtor" and never sought payment from Debtor. *See* Levine Dec., ¶¶ 5, 24.

- On December 4, 2017, the Levine Firm – on behalf of Yehuda Salamon and Marty Stern – threatened to cause Debtor to withdraw its motion for dismissal of the Chapter 11 Case unless Suffern capitulated to Yehuda Salamon's demands for an equity interest in Suffern. *See* Lefkowitz Dec., Ex. 12. Such actions are directly contrary to the interests of Debtor's estate.

- In July 2018, the Levine Firm caused papers to be publicly that confirm *Suffern is the "record owner" of the Premises*, further to his representation of an entity called Lone Pine Associates LLC ("Lone Pine"), which nonetheless claimed it was the "beneficial owner" of the Premises. *See id.*, ¶ 18, Ex. 13; Levine Dec., ¶ 23. The Levine Firm now proposes to prosecute claims

asserting that Debtor is the "record owner" and "beneficial owner" of the Premises.

11. These few representative emails, alone, demonstrate that the Levine Firm is simply not being candid in its retention application or the proposed Adversary Proceeding Complaint, which the Levine Firm drafted. *See* Levine Dec., ¶ 18. The Levine Firm's assertions that it is "disinterested in this matter," "did not represent Debtor, or any other entity, with respect to" Debtor's closing on the Premises, did not represent "equity holders of the Debtor in connection with this matter and has no prior connection with the Novartis dispute," and was only "peripherally involved in resolution negotiations" as to Yehuda Salamon's purported equity interest in Suffern are absolutely false and reflect material misrepresentations to this Court. *See id.*, ¶¶ 5, 10-12, 16-18.

12. In sum, the Levine Firm confirmed in prior writings and publicly-filed documents that: (a) Debtor, by and through Yehuda Salamon, structured and effectuated the transactions whereby the Premises were transferred and sold to Suffern; (b) all creditors were paid from the sale proceeds; (c) the Chapter 11 Case is ripe for dismissal; and (d) Suffern is the "record owner" of the Premises. Consequently, the Levine Firm cannot now prosecute the proposed Adversary Proceeding Complaint that seeks to establish allegations directly to the contrary.

**C.   The GWFG Firm's Retention Application**

13. The GWFG Firm, in contrast, does not appear to have been contemporaneously involved, nor to have taken positions contrary to Debtor's proposed Adversary Proceeding allegations or to have represented Yehuda Salamon and Marty Stern in the alleged equity dispute. Nonetheless, the GWFG Firm does have an obligation to investigate the legitimacy and viability of the proposed Adversary Proceeding that it now

seeks to prosecute together with the Levine Firm. Given the documented record, the GWFG Firm's request to be appointed as "substitute" counsel for Debtor suggests that due diligence was not sufficiently done before the GWFG Firm co-signed the proposed Complaint drafted by the Levine Firm.

14. The Adversary Proceeding's allegations are demonstrably false and cannot be substantiated, and in the absence of any showing why the Pick Firm cannot continue to represent Debtor for the limited purpose of finalizing any outstanding ministerial issues arising from *nunc pro tunc* approval of the sale and closing of the Chapter 11 Case, there is no basis for the GWFG Firm to be approved as "substitute bankruptcy counsel" for Debtor at this juncture. The inescapable conclusion is that Debtor, controlled by Salamon *et al.*, seeks to replace the GWFG Firm as Debtor's counsel because the Pick Firm was unwilling to bring an Adversary Proceeding that lacks any merit.

### D. Suffern's New Owner and the Sale Approval Motion

15. On March 25, 2019, Suffern's membership interests were sold to an arm's-length buyer that had no contemporaneous involvement, connection, or knowledge concerning the alleged disputes over the Premises and Yehuda Salamon's subsequent claims to an equity interest in Suffern. *See* Lefkowitz Dec., ¶ 3. Suffern's new owner intended to immediately refinance, improve, and lease the Premises to a qualified tenant, so as to establish the Premises as an income-generating property. *See id.* Just four days later, however, the proposed Adversary Proceeding was filed as of record and has since served to cloud Suffern's title to the Premises. *See* Lefkowitz Dec., ¶¶ 4-5, Ex. 1.

16. Suffern's new owner has been unable to refinance or lease the Premises and is being forced to incur $1 million per month to service debt and maintenance costs without

any ability to ever recover those monies. *See* Lefkowitz Dec., ¶ 4. The financial burden imposed on Suffern's new owner is known to Yehuda Salamon, Marty Stern, and the Levine Firm. Indeed, they caused the proposed Adversary Proceeding complaint to be filed as of record only after Yehuda Salamon threatened Suffern's new owner that if it failed to pay Yehuda Salamon a ransom in the form of an equity interest in Suffern, then he would frustrate Suffern's ability to lease the Premises by manufacturing a cloud on title through filing the baseless Adversary Proceeding Complaint. *See id.*, ¶ 5. Suffern's new owner appropriately rejected Yehuda Salamon's demand. *See id.* Yehuda Salamon, Mr. Stern, and the Levine Firm not only proceeded with filing the proposed Adversary Proceeding Complaint before the retention applications were even approved, but also simultaneously contacted Suffern's lender to advise that there is an alleged cloud on title and triggering a default on Suffern's loan. *See id.*, ¶ 4, Ex. 1 (default letter advising the "Lender was contacted by attorneys purporting to represent RS Old Mill, LLC").

17. Yehuda Salamon and his consultant Marty Stern seek to misuse their control of Debtor to serve Mr. Salamon's personal interests. Indeed, as Suffern's new owner has recently learned, the Adversary Proceeding actually reflects a dispute over the equity interests of ***Suffern***, and not of Debtor. *See* Lefkowitz Dec., ¶ 6. Even if there is a legitimate dispute concerning Suffern's equity, this Bankruptcy Court and the Chapter 11 Case concerning ***Debtor*** is not the appropriate forum. Suffern's Sale Approval Motion obviates any need for this Bankruptcy Court to address a third-party contract dispute among equity interests of a non-debtor which in no way affects the Debtor or its creditors.

## OBJECTIONS

## I. THE ADVERSARY PROCEEDING SHOULD BE DISMISSED, OBVIATING ANY NEED FOR CONSIDERATION OF THE RETENTION APPLICATIONS

18.     Debtor's proposed Adversary Proceeding seeks to avoid its sale of the Premises to Suffern, a transaction that allowed Debtor to avoid forfeiture of its $2.5 million deposit and generated $12 million in value for Debtor and its creditors. The linchpin of Debtor's proposed Adversary Proceeding is that Debtor ***itself failed to obtain this Court's approval for the sale***, and it somehow was "fraudulently induced" into selling the Premises by virtue a promise that Yehuda Salamon would obtain an equity interest in Suffern. *See* Complaint, ¶¶ 48-50. Thus, Debtor readily admits that the proposed Adversary Proceeding reflects nothing more than a fight over equity interests that arose ***after*** Debtor intentionally transferred and sold the Premises. This is further confirmed by Debtor having waited some ***18 months*** before filing the proposed Adversary Proceeding complaint.

19.     The Bankruptcy Court's protections, processes, and resources are not properly used to further an equity holder's personal interests, which is precisely what Yehuda Salamon, his consultant Marty Stern, and the Levine Firm are now attempting. Indeed, Debtor commenced the Chapter 11 Case solely to protect its rights under the Sale Agreement and force Novartis to perform thereunder. This "binary dispute" between Novartis and Debtor was thus resolved in September 2017, when Debtor – through Suffern's financing – closed on the Premises. *See* Chapter 11 Case ECF Nos. 40, p. 14:2-3; 71.

20.     Mr. Salamon, Mr. Stern, and the Levine Firm should not be allowed to misuse the bankruptcy process to resolve a contractual dispute that concerns only equity interests. To the contrary, given no trustee is appointed in the Chapter 11 Case, Yehuda Salamon's fiduciary obligations as sole managing member and 100% equity interest holder

of Debtor run to the benefit of ***its creditors***. *See* 11 U.S.C. § 1107(a); *Smart World Technologies, LLC v. Juno Online Services Inc.*, 423 F.3d 166, 175 (2d Cir. 2005) ("As a fiduciary, the debtor bears the burden of maximizing the value of the estate.") (internal quotation and citing reference omitted); *In re Mushroom Transportation Co.*, 382 F.3d 325, 339 (3d Cir. 2004) ("The debtor-in-possession's fiduciary duty to maximize includes the duty to protect and conserve property in its possession for the benefit of creditors.") (internal quotation and citing reference omitted).

21.     Yehuda Salamon's efforts to now unwind the sale transactions that resulted in maximization of Debtor's estate runs counter to his duties of loyalty to the estate. *See, e.g., In re Adelphia Communications Corp.*, 336 B.R. 669-70 (Bankr. S.D.N.Y. 2006) (stating that a debtor-in-possession's officers have duties that include "an obligation to refrain from self-dealing, to avoid conflicts of interests and the appearance of impropriety, … and to maximize the value of the estate") (internal quotations and citing reference omitted).

22.     In fact, all of Debtor's valid creditors were paid as even Yehuda Salamon expressly confirmed in writing. *See* Lefkowitz Dec., Ex. 7.  Accordingly, Suffern has moved this Court for *nunc pro tunc* approval of Debtor's sale and transfer of the Premises, which will foreclose Debtor's purported claims in the proposed Adversary Proceeding and permit dismissal of the Chapter 11 Case.  *See* Sale Approval Motion, ¶¶ 41-47.  Pending consideration of the Sale Approval Motion, Debtor's proposed Adversary Proceeding will be rendered moot.  *See id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (a party invoking the jurisdiction of the federal courts must demonstrate, *inter alia*, an "injury in fact – an invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical")). For these same reasons, Debtor's applications to retain new counsel will also be rendered moot.

## II. EVEN IF THE SALE APPROVAL MOTION IS NOT GRANTED, THE LEVINE FIRM IS MATERIALLY CONFLICTED AND ITS RETENTION SHOULD NOT BE AUTHORIZED

23. Applications seeking approval to retain a professional "must be based upon careful review and full disclosure by the prospective professionals, and … the prospective professionals must be free of any personal interests or connections that are at odds with the interests of the entities they intend to represent." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (citation and quotations omitted). Indeed, attorneys hired by a debtor-in-possession must be "disinterested persons" and cannot "hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a); 11 U.S.C. § 327(e) (outlining same standard for counsel retained for a "specified special purpose").

24. Given the myriad interests and potential conflicts that can exist, courts have "broad discretion to disqualify attorneys." *A.V. by Versace, Inc. v. Gianni Versace, S.P.A.*, 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001) (citations and quotations omitted). Bankruptcy Courts typically decline to approve retention applications in three distinct scenarios: (1) where the Court's confidence in the attorney is undermined by a conflict that deprives the attorney of exercising independent judgment on the debtor's behalf; (2) where the attorney has access to privileged information that may present an unfair advantage; or (3) where the attorney may be a material witness in the dispute. *See, e.g.,* 11 U.S.C. § 327 (requiring professionals to be "disinterested persons," and noting Court may deny retention for other reasons including prior representation of a creditor, actual conflicts of interest, and personal interests adverse to the debtor); *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246

(2d Cir. 1979) (discussing bases to disqualify an attorney); *Goodwine v. City of New York*, 15-cv-2868, 2016 U.S. Dist. LEXIS 11149, at *12 (S.D.N.Y. Jan. 29, 2016) (recognizing advocate-witness rule compels disqualification of counsel where "the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client") (citations and quotations omitted).[2]

25.     The Levine Firm's representation of Yehuda Salamon and his consultant Marty Stern in connection with the alleged equity interest in Suffern – which includes the levying of threats directly contrary to the interests of Debtor's estate – compels denial of the retention application.

26.     First, the contemporaneous email correspondence makes clear that the Levine Firm has not been forthright with this Court concerning the extent of its involvement in the purportedly contested issues.  The Levine Firm's retention application therefore fails to meet the basic standard of disclosure required for the Court to consider whether such firm is "free of any personal interests or connections that are at odds with the [Debtor's] interests." *In re Mercury*, 280 B.R. at 54 (citation and quotations omitted).  The Levine Firm cannot exercise "independent judgment" given it has previously represented Debtor's managing member, Yehuda Salamon, in connection with the very transaction that Mr. Salamon effectuated and Debtor now seeks to challenge.  *See, e.g., Nyquist*, 590 F.2d at 1246  n. 6 (recognizing that a lawyer must be able to "exercise independent judgment on behalf of a client" and "should avoid even the appearance of professional impropriety").    The proposed Adversary

---

[2]     In deciding whether an attorney should be disqualified, the court may also consider the disciplinary rules of the American Bar Association and New York State.  *See Goodwine*, 2016 U.S. Dist. LEXIS 11149, at *4.  For example, New York Professional Conduct Rule 1.9 provides that a lawyer "who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent in writing."  Rule 3.7 provides that a lawyer "shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."

Proceeding Complaint does not seek to maximize Debtor's estate for the benefit of its creditors, but rather, to maximize Yehuda Salamon's own personal interests. As Mr. Salamon's personal counsel, the Levine Firm is conflicted in these matters.

27. Second, the Levine Firm previously represented Lone Pine, an entity that claimed it – and *not* Debtor – owns the Premises. *See* Levine Dec., ¶ 23; Lefkowitz Dec., ¶ 18, Ex. 13 n. 1. The Levine Firm's prior representation of Lone Pine results in a direct conflict that prevents it from now representing Debtor in a proposed Adversary Proceeding by which Debtor claims to own the same Premises. *See, e.g., In re AroChem Corp.*, 176 F.3d at 623 (attorney's representation of a "rival claimant" reflects a conflict) (citation omitted); N.Y. R. Prof. Conduct 1.9 (lawyer may not represent a person in matters that are "materially adverse to the interest of [a] former client").

28. Third, the Levine Firm has previously threatened to file a creditor claim against the estate for outstanding legal fees arising from its representation of Debtor (notwithstanding that the Levine Firm's retention application asserts that the firm has *never* sought payment from Debtor). *Compare* Lefkowitz Dec., Ex. 11, *with* Levine Dec., ¶ 24. Such conduct further requires denial of the Levine Firm's retention application. *See, e.g., In re AroChem Corp.*, 176 F.3d at 623 (attorney has "interest adverse to the estate" if he "possess[es] or assert[s] any economic interest that would tend to lessen the value of the bankruptcy estate").

29. Fourth, the Levine Firm's principal, Michael Levine, Esq., will be a material witness should this matter proceed to a contested hearing or trial. Mr. Levine's contemporaneous email correspondence is "sufficiently adverse to the factual assertions or account of events" that Debtor seeks to prove in the proposed Adversary Complaint, such

that Debtor will need to discredit Mr. Levine's testimony. *See Goodwine*, 2016 U.S. Dist. LEXIS 11149, at *12 (citations and quotations omitted). Indeed, the Levine Firm's own contemporaneous email communications are diametrically opposed to the allegations in the proposed Adversary Proceeding Complaint. *See id*; N.Y. R. Prof. Conduct 3.7 (lawyer "shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact").

30.     Fifth, the contemporaneous documents and email correspondence also confirm that Debtor, its managing member Yehuda Salamon, consultant Marty Stern, and the Levine Firm know full well that Suffern's title to the Premises did not result from a fraud perpetrated upon the unwitting Debtor, but a legitimate, arm's-length transaction in which Debtor knowingly agreed to transfer and sell the Premises to enable full payment of all valid creditor claims. *See generally* Sale Approval Motion. The Levine Firm and its clients – Yehuda Salamon and Marty Stern – should be estopped from now seeking to establish otherwise. *See Official Comm. of Unsecured Creditors of Maxwell Newspapers v. Macmillan, Inc. (In re Maxwell Newspapers)*, 189 B.R. 282, 289 (Bankr. S.D.N.Y. 1995) ("Judicial estoppel prevents a party who benefits from the assertion of a certain position from subsequently adopting a contrary one."); *see also Adelphia Recovery Trust v. Goldman Sachs & Co.*, 748 F.3d 110, 113 (2d Cir. 2014) (affirming dismissal of fraudulent conveyance claim as judicially estopped, given the conveyance was "consummated with the agreement" of debtor); *Young v. Department of Justice,* 882 F.2d 633, 639 (2d Cir. 1989) (stating that judicial estoppel "protect[s] judicial integrity by preventing litigants from playing 'fast and loose' with courts, thereby avoiding unfair results"); *In re Galerie Des Monnaies, Ltd.*, 62 B.R. 224, 225 (S.D.N.Y. 1986) (affirming dismissal of debtor's attempt to void transfers under

doctrine of judicial estoppel, given "debtor had previously told creditors … that it knew of no such transfers" and delayed in bringing an adversary proceeding).

31.     Lastly, that Yehuda Salamon subsequently claims to have an equity interest in Suffern does not reflect a fraud, but rather, a third-party contract dispute between non-debtor parties that in no way impacts the estate and over which the Bankruptcy Court should decline subject matter jurisdiction.  *See, e.g.,* 28 U.S.C. § 1334 (providing that state law causes of action need not be heard by the Bankruptcy Court); *Grabis v. Navient Sols., LLC (In re Grabis)*, No. 13-10669, 2018 Bankr. LEXIS 3664, at *4-5 (Bankr. S.D.N.Y. Nov. 20, 2018) (dismissing fraud claim for lack of subject matter jurisdiction as neither a "core" claim arising under or arising in the Bankruptcy Code, nor a claim within the Court's "related-to" jurisdiction because the resolution of such claim would have no impact on the debtor's estate); *Selinger Enters., Inc. v. Cassuto*, 50 A.D.3d 766, 768 (2d Dep't 2008) ("[a] fraud claim does not lie where the only fraud alleged arises from the breach of a contract").

32.     For the foregoing reasons, Debtor's application for retention of the Levine Firm should be denied.

**III.    THE GWFG FIRM'S PROPOSED RETENTION IS UNSUPPORTED AND UNNECESSARY**

33.     This Court approved the Pick Firm as counsel to Debtor, and it appropriately represented Debtor's interests throughout the sale transactions that maximized Debtor's estate, enabled payment of all valid creditor claims, and permits dismissal of the Chapter 11 Case.   Debtor fails to address why the Pick Firm is no longer capable of representing Debtor's interests, or why the GWFG Firm is needed as "substitute" counsel.   It appears that Debtor's principal, Yehuda Salamon, has "terminated" retention of the Pick Firm solely to perpetrate his alleged claim to Suffern's equity as detailed above, as the Pick Firm

has acknowledged it was and remains unwilling to prosecute allegations that it knows to be unsustainable and demonstrably false. The GWFG Firm is tainted by Yehuda Salamon's misconduct and effort to misuse the Bankruptcy Court and his position of control over Debtor to pursue his personal interests.

34.     As the Chapter 11 Case should be dismissed, there is no reason for the Pick Firm to be terminated or the GWFG Firm to be retained.

## **CONCLUSION**

**WHEREFORE**, Suffern objects to Debtor's proposed retention of the Levine Firm and the GWFG Firm, and respectfully requests that the Court deny the applications and grant Suffern any such further and greater relief as it deems just and proper.

Dated: New York, New York
      May 9, 2019

**HAHN & HESSEN LLP**

By:    _s/ Stephen J. Grable_
       Gilbert Backenroth
       Stephen J. Grable
       Steven R. Aquino

       488 Madison Avenue
       New York, New York 10022
       Tel.: (212) 478-7200
       Fax: (212) 478-7400
       gbackenroth@hahnhessen.com
       sgrable@hahnhessen.com
       saquino@hahnhessen.com

       *Attorneys for Suffern Partners LLC*