**HAHN & HESSEN LLP**
Gilbert Backenroth
Stephen J. Grable
Steven R. Aquino
488 Madison Avenue
New York, New York 10022
Telephone: 212-478-7200
Fax: 212-478-7400

*Attorneys for Suffern Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | : |
|  | : Case No. 17-22218 (RDD) |
| RS OLD MILL, LLC, | : |
|  | : Chapter 11 |
| Debtor. | : |
|  | : |

|  |  |
|---|---|
| RS OLD MILL, LLC, | : |
|  | : Adversary No. 19-8243 (RDD) |
| Plaintiff, | : |
|  | : |
| - against - | : |
|  | : |
| SUFFERN PARTNERS LLC, | : |
| BRIDGEWATER CAPITAL PARTNERS | : |
| LLC, ISAAC GENUTH, MARK YUNGER | : |
| a/k/a "MARK JUNGER," GOLDIE | : |
| REISMAN, MOSES REICHMAN, RS OLD | : |
| MILLS RD LLC., DAVID | : |
| FLEISCHMANN, THOMAS | : |
| LANDRIGAN, and CPIF LENDING, LLC, | : |
|  | : |
| Defendants. | : |

### DECLARATION OF ISAAC LEFKOWITZ IN SUPPORT OF SUFFERN PARTNERS LLC'S CONSOLIDATED OBJECTION TO DEBTOR'S APPLICATIONS TO RETAIN (A) LEVINE & ASSOCIATES, P.C. AS "SPECIAL LITIGATION COUNSEL" AND (B) GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP AS "SUBSTITUTE BANKRUPTCY COUNSEL"

**ISAAC LEFKOWITZ**, pursuant to 28 U.S.C. § 1746, hereby declares that the following is true and correct:

1.     I am the CEO of Suffern Partners LLC ("Suffern"), a party-in-interest in the above Chapter 11 proceeding involving RS Old Mill, LLC ("Debtor") (the "Chapter 11 Case") and a defendant in the Debtor's proposed adversary proceeding (the "Adversary Proceeding"). As such, I am fully familiar with the facts set forth below, which are true to the best of my personal knowledge or based upon the documents I have reviewed in connection with this matter. I am authorized by Suffern to provide this Declaration.

2.     I respectfully submit this Declaration in support of Suffern's consolidated objection to Debtor's applications for authorization to retain (a) Levine & Associates, P.C. (the "Levine Firm") as "special litigation counsel" and (b) Goldberg Weprin Finkel Goldstein LLP (the "GWFG Firm") as "substitute bankruptcy counsel."

3.     On March 25, 2019, on behalf of an entity called GoldmanRX, Inc. ("Goldman"), I entered into an agreement with Suffern's members to purchase 100% of Suffern's membership interests.   Suffern's primary asset is a large piece of property, consisting of approximately 162 acres of land and several hundred thousand square feet of improvements thereon, located in Rockland County, New York (the "Premises"). Prior to Goldman's purchase of Suffern, neither Goldman nor its principals had any business affiliation with Suffern or its principals. The purchase of Suffern's membership interest was a negotiated, arms-length transaction for significant consideration. At the time, we had no knowledge of the circumstances of Debtor's purchase and sale of the Premises in late 2017, including those alleged in the Adversary Proceeding Complaint.

2

4.      After Goldman's acquisition of Suffern, I sought to lease the Premises and refinance the loan thereon on Suffern's behalf. However, on March 29, 2019, Debtor – by the Levine Firm and the GWFG Firm as Debtor's proposed counsel but before such retentions were approved – filed the proposed Adversary Proceeding Complaint against Suffern and a number of other defendants in an effort to avoid Debtor's transfer and sale of the Premises that closed more than 18 months ago. The mere filing of the unauthorized Adversary Proceeding Complaint has caused, and is continuing to cause, tremendous damage to Suffern by frustrating any ability to refinance or lease the Premises while still incurring carrying costs that exceed $1 million per month.

5.      Before Debtor filed the proposed Adversary Proceeding Complaint, Yehuda Salamon, Debtor's managing member and 100% equity interest holder, threatened that if Suffern did not pay Mr. Salamon in the form of an equity interest in Suffern, Mr. Salamon, his "consultant" and business associate Marty Stern (also known as "Martin Salamon"), and their attorney, Michael Levine, Esq., would file the unauthorized Adversary Proceeding solely to stymie all efforts to refinance and lease the Premises. We rejected the demand. I understand these individuals then contacted Suffern's lender to inform them of an alleged cloud on title to the Premises – i.e., Debtor's claim to own the Premises it previously transferred and sold – which triggered the calling of a default on Suffern's loan. A copy of the lender's default notice to Suffern is annexed hereto as Exhibit 1.

6.      Over the last month, I have been investigating the available documentation and facts underlying the proposed Adversary Proceeding Complaint. In the course of those efforts, I learned that Yehuda Salamon and Marty Stern are attempting to resolve a dispute

3

concerning their alleged right to equity in Suffern that arose after Debtor purchased, and then immediately transferred and sold, the Premises. To that end, I have obtained hundreds of contemporaneous emails, including the samples attached hereto, written by and sent to Mr. Levine, Debtor's proposed "special litigation counsel," during the course of the Chapter 11 Case and after Debtor's purchase and sale of the Premises in September 2017.

7.    Attached hereto as Exhibit 2 is a true and correct copy of an email chain dated June 28, 2017, involving Michael Levine, Douglas Pick (Debtor's bankruptcy counsel), Yehuda Salamon, Marty Stern/"Martin Salamon," and Mark Yunger (a principal of Bridgewater Capital Partners LLC ("Bridgewater") and a defendant, along with Bridgewater, in the proposed Adversary Proceeding).[1]

8.    Attached hereto as Exhibit 3 is a true and correct copy of an email chain dated July 11, 2017, involving Michael Levine, Yehuda Salamon, Marty Stern, Scott Matthews and Leslie Barr (counsel to Novartis Corporation, which sold the Premises to Debtor), and Douglas Pick.

9.    Attached hereto as Exhibit 4 is a true and correct copy of an email chain dated August 17, 2017, involving Michael Levine, Thomas Landrigan (Debtor's real estate counsel), Douglas Pick, Marty Stern/"Martin Salamon," Mark Yunger, Heidi Sorvino (Bridgewater's counsel), and Yehuda Salamon.

---

[1]    Michael Levine, Esq.'s email address is: ml@levlaw.com
Yehuda Salamon's email address is: yidel11219@gmail.com
Marty Stern's email addresses are: duvis110@gmail.com and martys19993@gmail.com
Douglas Pick, Esq.'s email address is: dpick@picklaw.net
Thomas Landrigan, Esq.'s email address is: tlandrigan@cll-law.com
David Fleischmann, Esq.'s email address is: david@fleischmann.com
Mark Yunger's email address is: mark@bridgewatercp.com
Isaac Genuth's email address is: igenuth@bridgewatercp.com

10.      Attached hereto as Exhibit 5 is a true and correct copy of an email dated
August 18, 2017, from Michael Levine to Thomas Landrigan, Heidi Sorvino, Douglas Pick,
Marty Stern, and Mark Yunger.

11.      Attached hereto as Exhibit 6 is a true and correct copy of an email chain
dated September 6, 2017, involving among Michael Levine, Thomas Landrigan, Marty
Stern/"Martin Salamon," Yehuda Salamon, Douglas Pick, Heidi Sorvino, Isaac Genuth
(a Bridgewater principal and defendant in the Adversary Proceeding), and Mark Yunger.

12.      Attached hereto as Exhibit 7 is a true and correct copy of an email chain
dated October 11, 2017, involving Yehuda Salamon, Thomas Landrigan, Douglas Pick,
Michael Levine, Heidi Sorvino, Marty Stern/"Martin Salamon," David Salamon (Yehuda
Salamon's son), Isaac Genuth, and Mark Yunger.

13.      Attached hereto as Exhibit 8 is a true and correct copy of an email dated
October 2, 2017, from Michael Levine to David Fleischmann (Suffern's real estate counsel),
Azi Mindick (a representative of Debtor's escrow agent), Isaac Genuth, Mark Yunger, and
others.

14.      Attached hereto as Exhibit 9 is a true and correct copy of an email chain
dated October 3-4, 2017, between Michael Levine and David Fleischmann.

15.      Attached hereto as Exhibit 10 is a true and correct copy of an email chain
dated November 13-20, 2017, involving Michael Levine, Marty Stern/"Martin Salamon,"
Yehuda Salamon, David Fleischmann, Heidi Sorvino, Thomas Landrigan, Isaac Genuth,
and others.

5

16.    Attached hereto as Exhibit 11 is a true and correct copy of an email chain dated November 15-17, 2017, involving Michael Levine, Thomas Landrigan, Marty Stern/"Martin Salamon," and Isaac Genuth.

17.    Attached hereto as Exhibit 12 is a true and correct copy of an email chain dated November 13-December 5, 2017, involving Michael Levine, David Fleischmann, Isaac Genuth, and Mark Yunger.

18.    Attached hereto as Exhibit 13 is a true and correct copy of an Affirmation retrieved from the docket in *Lone Pine Associates, LLC v. ISSM Protective Services Inc.*, Rockland County Supreme Court Index No. 034447/2018, wherein Mr. Levine acknowledges he served as counsel to Plaintiff, which admitted that Suffern is the "record owner" of the Premises.

19.    I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge, information, and belief.

DATED:    New York, New York
          May 7, 2019

_____
          ISAAC LEFKOWITZ

6

# **<u>EXHIBIT 1</u>**



Michael J. Barrie
39 Broadway, 25th Floor
New York, New York 10006-3039
Direct Dial: 302.442.7068
Fax: 302.442.7012
mbarrie@beneschlaw.com

April 9, 2019

**VIA FEDEX**

Suffern Partners LLC
202 Grandview Avenue
Monsey, New York 10950
Attention: Goldie Reisman

North 14th Street Realty Associates LLC
202 Grandview Avenue
Monsey, New York 10950
Attention: Goldie Reisman

Goldie Reisman
202 Grandview Avenue
Monsey, New York 10950

Re:    **Borrower**: Suffern Partners LLC ("**Rockland County Borrower**") and North 14th Street Realty Associates LLC ("**Kings County Borrower**" and, collectively, with Rockland County Borrower ("**Borrower**"))
**Guarantor**: Goldie Reisman ("**Guarantor**")
**Lender**: CPIF Lending, LLC ("**Lender**")
**Mortgaged Property**: 25 Old Mill Road, Suffern, New York 10901, 19 Hemion Road, Montebello, New York 10901 and Route 59, Suffern, New York 10901 (collectively, the "**Rockland County Property**" and 200 North 14th Street, Brooklyn, New York 11249 and 4-6 Berry Street, Brooklyn, New York 11249 (collectively, the "**Kings County Property**" and together with the Rockland County Property (the "**Property**"))
**Loan Description**: Loan in the original principal amount of $33,000,000 (the "**Loan**"), as evidenced by that certain Loan Agreement and Promissory Note dated as of September 6, 2017 (together with any and all documents evidencing, securing, guarantying, and/or related to the Loan, the "**Loan Documents**")

Ladies and Gentlemen:

We represent the above-referenced Lender, the owner and holder of the above-referenced Loan Documents. All future correspondence or notices under the Loan Documents should be addressed to the undersigned in accordance with Section 7.4 of that certain Loan Agreement. Unless otherwise defined herein, all capitalized terms shall have the same meanings ascribed to them in the Loan Documents.

Recently, the Lender was contacted by attorneys purporting to represent RS Old Mill, LLC, a debtor in a chapter 11 case filed in February 2017 (the "**Debtor**"), which remains pending in the Southern District of New York. The attorneys stated that the Debtor held the exclusive right to purchase the Novartis Suffern property and that any transfer of that right to the Rockland County

Suffern Partners LLC
North 14th Street Realty Associates LLC
Goldie Reisman
April 9, 2019
Page 2

Borrower on September 6, 2017, was unauthorized by the Bankruptcy Court and only occurred as a result of inadequate representation by Debtor's prior counsel coupled with misrepresentations by the Rockland County Borrower. The Debtor has in fact filed an adversary proceeding to undo the transfer of the Novartis Suffern property. A courtesy copy of the complaint is enclosed herewith (the "**Complaint**").

The Lender denies all allegations in the Complaint relating to the conduct of itself or its attorneys. Should the remaining allegations contained in the Complaint prove true, however, the foregoing situation would constitute an event of default under the Loan Documents. Moreover, given the statements made by Isaac Genuth in his call with the Lender on March 22, 2019, it is clear that the September 6, 2017 transaction involved material facts, several intermediate transfers, and side deals that were not fully documented and/or disclosed. As such, one can only conclude that material misrepresentations and/or omissions occurred in connection with the September 6, 2017 transaction in order for it to close.

Accordingly, please take **NOTICE** that Borrower is in **DEFAULT** under the Loan Documents for breaches of various provisions, including without limitation the following

1.  Loan Agreement

    a.  Section 3.7: Representation and warranty as to the enforceability of Loan Documents, including Mortgage and other Security Documents.

    b.  Section 3.10: Representation and warranty as to good title, including that Properties are owned free and clear of any claims and rights of actions in any bankruptcy proceedings or otherwise, and the Properties will not be affected in any way by any ongoing or continuing bankruptcy proceedings.

    c.  Section 3.21: Representation and warranty that there is no default under any Loan Documents.

    d.  Section 5.1.1: Event of default for non-compliance with Loan Documents.

    e.  Section 5.1.2: Event of default for false or misleading statements, including whether or not that representation is expressly set forth in the Loan Documents.

    f.  Section 5.1.3: Event of default for any materially adverse change with respect to the Borrowers or the Properties.

2.  Amended, Restated and Consolidated Promissory Note

Suffern Partners LLC
North 14th Street Realty Associates LLC
Goldie Reisman
April 9, 2019
Page 3

    a.    Section 6.3: Event of default for false or misleading statements, including whether or not that representation is expressly set forth in the Loan Documents.

    b.    Section 6.9: Event of default for title defects.

3.    Amended, Restated and Consolidated Mortgage

    a.    Section 1.1: Warranty of title such that Borrowers are lawfully seized of estate conveyed, free of charges of any kind.

4.    Security Agreement

    a.    Section 6.9: Event of default for impairment of Collateral.

Furthermore, all Loan Document are fully cross-defaulted pursuant their terms.

Such breaches and failures constitute Events of Default (as defined in the Loan Documents). Moreover, these Events of Default are not Specified Defaults (as that term is defined in that certain Forbearance Agreement dated January 4, 2019, between the Lender and the Loan Parties (the "**Forbearance Agreement**")). Accordingly, please take **FURTHER NOTICE** that the Borrower is in **DEFAULT** under the Forbearance Agreement pursuant to Section 5(B) thereof because the foregoing Events of Default are not Specified Defaults (at that term is defined in the Forbearance Agreement).

As a consequence of the foregoing defaults, interest at the Default Rate has automatically begun to accrue.

Please be advised that Borrower is obligated under the Loan Documents to reimburse Lender for all fees (including, but not limited to, attorneys' fees and costs) and expenses incurred by Lender, whether already incurred or to be incurred in the future in connection with, among other things, Lender's enforcement of its rights and remedies and Borrower's obligations under the Loan Documents and the Forbearance Agreement.

Lender reserves all of its rights and remedies under the Loan Documents and Forbearance Agreement and as permitted at law or in equity, including, but not limited to, accelerate the indebtedness due under the Note, invoke its rights relating to the assignment of rents pursuant to Section 14 of the Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, seek appointment of a receiver, commence foreclosure proceedings, and exercise any and all remedies available under any guaranty, all without further notice, as Lender may so elect.

No forbearance, delay, or inaction by Lender in the exercise of its rights and remedies, and no continuing performance by Lender or you under the Loan Documents or Forbearance

Suffern Partners LLC
North 14th Street Realty Associates LLC
Goldie Reisman
April 9, 2019
Page 4

Agreement (including, without limitation, any payments received and accepted by Lender):  (a) shall constitute:  (i) a modification or an alteration of the terms, conditions, or covenants of the Loan Documents or Forbearance Agreement or any related documents, instruments, and agreements, all of which remain in full force and effect; or (ii) a waiver, release, or limitation upon Lender's exercise of any of its rights and remedies thereunder, all of which are hereby expressly reserved; or (b) release you in any way from any of your respective duties, obligations, covenants, or agreements under the Loan Documents or Forbearance Agreement or from any consequences of an Event of Default under the Loan Documents or Forbearance Agreement.

Please contact Kevin Quinn with the Lender or have your client contact the undersigned to discuss the notice.

Very truly yours,

BENESCH, FRIEDLANDER,
COPLAN & ARONOFF, LLP

Michael J. Barrie

cc:    David Fleishman, Esq. (via email and overnight mail)

Encl.

# EXHIBIT 2



**Mark Yunger <mark@bridgewatercp.com>**

---

# Fwd: RS Old mill
1 message

---

**duvis 110** <duvis110@gmail.com>
To: Mark Yunger <mark@bridgewatercp.com>

Wed, Jun 28, 2017 at 7:04 PM

Sent from my iPhone

Begin forwarded message:

> **From:** Michael Levine <ml@levlaw.org>
> **Date:** June 28, 2017 at 6:55:07 PM EDT
> **To:** Doug Pick <dpick@picklaw.net>, 'YS' <yidel11219@gmail.com>, 'duvis 110'
> <duvis110@gmail.com>
> **Subject:** RE: RS Old mill
>
> The goal is to eventually dismiss the petition.  The issue is that, now that the state
> court has ruled that no Phase II is permitted, obtaining the environmental insurance
> takes slightly longer than ten days, and the lender (who is acquiring an equity position
> in the deal) will not close without that.  So, playing out the time line, you filed the
> notice of intention to assume the contract on Monday (6/28).  That gives interested
> parties until 7/8 to object, but 7/8 is a Saturday, so that is extended to 7/10 by statute.
> If no objection is made, you will circulate the proposed order to Novartis's attorneys on
> 7/11 and, assuming they accept it, Judge Drain will likely sign it by 7/12.  Once signed,
> we will have to close by 7/22 (which is a Saturday also, so really we will have to close
> by 7/24).
>
>
> But the problem is that we may not have the insurance necessary to permit the lender
> to close by then.  So, the ultimate goal is to schedule a closing date for August 15th.
> The first attempt will be to simply speak to Novartis's attorneys and ask if they would
> be willing to schedule an 8/15 closing date.  The offer will be that we will name them
> as an additional insured on the policy (which is something that they want) if they pay
> for half of the policy (WHICH THEY HAVE OFFERED IN THE PAST).  If they refuse,
> then I believe that the lender (an equity participant in the deal) intends to either move
> for modification of the existing order to extend the time for closing, or to object to the
> notice of intention because the ten-day closing period is undoable under the
> circumstances.
>
>
> But before we do anything, let's discuss this further.

4/29/2019        17-22218-rdd    Doc 91-1    Filed 05/09/19  Mail - Entered 05/09/19 15:11:49    Exhibit
Declaration of Isaac Lefkowitz with Exhibits 1-13    Pg 14 of 66

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY 10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

---

**From:** Doug Pick [mailto:dpick@picklaw.net]
**Sent:** Wednesday, June 28, 2017 6:41 PM
**To:** Michael Levine <ml@levlaw.org>; 'YS' <yidel11219@gmail.com>; 'duvis 110'
<duvis110@gmail.com>
**Subject:** RE: RS Old mill

Should I get a court order authorizing his retention or simply
not do it because the goal is eventually to dismiss the case.

Douglas J. Pick, Esq

Pick & Zabicki LLP

369 Lexington Avenue, 12th Floor

New York, New York 10017

*dpick@picklaw.net*

212 695 6000 (ext 223)

**From:** Michael Levine [mailto:ml@levlaw.org]
**Sent:** Wednesday, June 28, 2017 6:01 PM
**To:** Doug Pick <dpick@picklaw.net>; YS <yidel11219@gmail.com>; duvis 110 <duvis110@gmail.com>
**Subject:** RE: RS Old mill


Doug: I met with the client today and we have a specific game plan in mind.  Please do not circulate the order until we speak.


We will be using Richard Serajian for the closing.  No plan of Reorg yet; when Novartis closes we will likely withdraw the petition.


Mike Levine


## LEVINE & ASSOCIATES, P.C.

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**


---

**From:** Doug Pick [mailto:dpick@picklaw.net]
**Sent:** Wednesday, June 28, 2017 5:42 PM
**To:** Michael Levine <ml@levlaw.org>; YS <yidel11219@gmail.com>; duvis 110 <duvis110@gmail.com>
**Subject:** RE: RS Old mill


Any thought son the Order?  Any thoughts n having a strategy meeting so as to plan how we ae gong to proceed? Any thoughts on real estate counsel? Should I file a plan of reorganization and a disclosure  statement.

Douglas J. Pick, Esq

Pick & Zabicki LLP

369 Lexington Avenue, 12th Floor

New York, New York 10017

*dpick@picklaw.net*

212 695 6000 (ext 223)

---

**From:** Doug Pick [mailto:dpick@picklaw.net]
**Sent:** Tuesday, June 27, 2017 5:39 PM
**To:** 'Michael Levine' <ml@levlaw.org>; YS <yidel11219@gmail.com>; duvis 110 <duvis110@gmail.com>
**Subject:** RS Old mill

I drafted a vanilla proposed Order authorizing the assumption of the lease and directing us to close within 10 days thereafter. I left out the State Court determination denying the preliminary injunction because I believe that it is outside of the relief being sought.  I am sure that Novartis will want it in by way of unnecessary background     Let me have your thoughts.  Doug

Douglas J. Pick, Esq

Pick & Zabicki LLP

369 Lexington Avenue, 12th Floor

New York, New York 10017

*dpick@picklaw.net*

212 695 6000 (ext 223)

# **EXHIBIT 3**

**G**Mail
by Google

**Mark Yunger <mark@bridgewatercp.com>**

---

## Fwd: RS Old Mill
1 message

---

**duvis 110** <duvis110@gmail.com>
To: Mark Yunger <mark@bridgewatercp.com>

Tue, Jul 11, 2017 at 5:06 PM

Sent from my iPhone

Begin forwarded message:

> **From:** Michael Levine <ml@levlaw.org>
> **Date:** July 11, 2017 at 11:29:36 AM MDT
> **To:** Duvis <duvis110@gmail.com>, YS <yidel11219@gmail.com>
> **Cc:** "Doug Pick (dpick@picklaw.net)" <dpick@picklaw.net>
> **Subject: FW: RS Old Mill**

FYI, see below.  Mary, you were supposed to provide proof of funds last night.  Please get that to me ASAP.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

---

**From:** Michael Levine
**Sent:** Tuesday, July 11, 2017 1:27 PM
**To:** 'Matthews, Scott' <smatthews@windelsmarx.com>; 'Doug Pick' <dpick@picklaw.net>; Barr, Leslie <lbarr@windelsmarx.com>
**Subject:** RE: RS Old Mill

Matthew:

I am not sure what you mean by "rights greater than that provided by contract."  All that is being asked is that the Debtor be able to obtain documents (which Novartis has previously provide access to) necessary for the closing. All is in place for the closing, and the client is very eager to close.  There is no ulterior motive here.  We can enter into whatever confidentiality covenant you wish.  We are simply trying to get the documents necessary to permit a closing (e.g., that will permit us to obtain an insurance policy, etc.), not hamper it.  If there is really a dispute as to granting access to those necessary documents, then let's submit that limited issue to Judge Drain.

I will get you proof of funds ASAP.  But, please, let's try to cooperatively and reasonably close this transaction so that all sides are protected from future litigation.  I know that there has been some degree of frustration with delays in the past, but that was before my involvement.  This transaction WILL close expeditiously, all we need to do is all be reasonable to make that happen.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

---

**From:** Matthews, Scott [mailto:smatthews@windelsmarx.com]
**Sent:** Tuesday, July 11, 2017 1:13 PM
**To:** 'Doug Pick' <dpick@picklaw.net>; Barr, Leslie <lbarr@windelsmarx.com>
**Cc:** Michael Levine <ml@levlaw.org>
**Subject:** RE: RS Old Mill

Doug-

I appreciate and share your concern about bothering Judge Drain with disputes after the main issues have been resolved. The debtor's continued requests for rights greater than that provided by the contract, however, are troubling. For example, the debtor had access to the VDR for at least 45 days and used the content of the E1 and other documents as a basis for a lawsuit and motion practice – at significant cost to Novartis. We also do not believe that the notice process you have suggested is appropriate. In these circumstances, we feel more comfortable addressing these issues to the Court.

Michael – You mentioned providing proof of funds to close. That would be welcome.

-Scott

---

**From:** Doug Pick [mailto:dpick@picklaw.net]
**Sent:** Tuesday, July 11, 2017 12:22 PM
**To:** Barr, Leslie; Matthews, Scott
**Cc:** 'Michael Levine'
**Subject:** RE: RS Old Mill

# **EXHIBIT 4**



**Mark Yunger <mark@bridgewatercp.com>**

---

## RE: Novartis/Suffern - Escrow Closing
1 message

---

**Michael Levine** <ml@levlaw.org>                                    Thu, Aug 17, 2017 at 4:06 PM
To: "Thomas C. Landrigan" <tlandrigan@cll-law.com>, Doug Pick <dpick@picklaw.net>, Marty S
<martys19993@gmail.com>, Mark Yunger <mark@bridgewatercp.com>, "Sorvino, Heidi"
<sorvinoh@whiteandwilliams.com>

Tom:

I would respond thusly:

1. The closing date in *not* today; it has been adjourned to August 22nd.  We will be there (the location mandated by the parties' agreement) to close on this transaction at the time indicated in my prior communication.  You can attend or not attend as you like, at your peril.
2. There is no provision in the parties' agreement for an "escrow closing."  The agreement unambiguously requires a physical closing.  Your failure to timely schedule the same (among other things) warrants an adjournment of this non-time-of-the-essence closing.
3. Your analysis of the purchaser's right (or rather, purported lack of right) to assert title issues is dead wrong, both legally and contractually.  That will be established in the inevitable litigation if you fail to attend the closing on Tuesday.  So we are clear on that, should you refuse to close on Tuesday, litigation counsel will seek to amend the existing State Court complaint to assert claims for, among other things, specific performance, damages in excess of $12 million; punitive damages for fraud; and ancillary relief.  It is quite clear to us that, given Novartis's repeated unreasonable and unwarranted positions, it has an ulterior motive *not* to close on this transaction (despite its protestations to the contrary).  Judge Drain has already eluded to that during the last oral argument before him and we fully intend to explore the actual reasons for that in the ensuing litigation.
4. The fact that documents "could readily have been provided to you by prior closing counsel or your co-counsel" is irrelevant for two reasons.  First, *you* did not provide them until the last minute.  Secondly, they are not, contrary to your assertion, "substantially in the form approved in February."
5. The coordination of the turnover of security and physical plant operations will be coordinated through Ron Grossmann once we close on Tuesday.

Tom, please do not send any reply until Heid finishes her resolution negotiations with Novartis's attorneys, which she is in the midst of now.  I (or she) will keep you advised as to that.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

Scarsdale, NY 10583

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

---

**From:** Thomas C. Landrigan [mailto:tlandrigan@cll-law.com]
**Sent:** Thursday, August 17, 2017 3:45 PM
**To:** 'Doug Pick' <dpick@picklaw.net>; 'Marty S' <martys19993@gmail.com>; 'Mark Yunger'
<mark@bridgewatercp.com>; 'Sorvino, Heidi' <sorvinoh@whiteandwilliams.com>; Michael Levine
<ml@levlaw.org>
**Cc:** tlandrigan@cll-law.com
**Subject:** FW: Novartis/Suffern - Escrow Closing

---

**From:** Piirimae, Karl [mailto:kpiirimae@windelsmarx.com]
**Sent:** Thursday, August 17, 2017 3:22 PM
**To:** tlandrigan@cll-law.com
**Cc:** Matthews, Scott <smatthews@windelsmarx.com>; Barr, Leslie <lbarr@windelsmarx.com>; OMeara, James
<james.omeara@novartis.com>; Grossmann, Ron <ron.grossmann@novartis.com>; Rosen, Jared
<jrosen@windelsmarx.com>; Goetz-Graham, Mary (Mary.Goetz-Graham@fnf.com) <Mary.Goetz-
Graham@fnf.com>
**Subject:** Novartis/Suffern - Escrow Closing

Tom:

Thank you for your letter that I received by email about an hour ago at 2:00 p.m. today.  Given the urgency and
the press of time required for your client to complete funding today, please pardon the informality of an email
response.  There appear to be a few fundamental misunderstandings:

1. The closing date is today, per order of the court. Your client does not have any right to extend  the closing
   date.  Accordingly, there will be no arrangements made for a closing in our office on Tuesday August 22nd,
   2017 because your client will have no right to close after today.

2. As your co-counsel has solely engaged in discussions relating to extensions of the closing date, we have
   been unable to procure a time and place for a physical closing. Accordingly, left with no other alternative to
   achieve the objective to close by not later than today as provided in Judge Drain's order, we have arranged
   for an escrow closing by mail with the title company designated in the Agreement of Sale assumed by your
   client in its bankruptcy.  You have already been provided with the closing instruction letter and copies of the
   closing documents.  All that remains is for your client to fund the balance of the purchase price.

3. For many  reasons, your client has no further right to assert the objections to title, survey and the forms of closing documents, including, without limitation, the fact that prior closing counsel already approved title, survey and the forms of documents and the time under the agreement of sale to raise title objections is long past. (We should also note that the  forms of most of the documents were approved at the time the agreement of sale was executed and delivered.)  Presumably your client evaluated title and the related matters to which you now object at the time they assumed the contract, and then elected to go forward based on their satisfaction with those matters.

4. Your various complaints about timing are unwarranted. The closing documents that were delivered into escrow today are substantially in the form approved in February, and accordingly have been available for months. These documents could readily have been provided to you by prior closing counsel or your co-counsel.

5. As noted in the closing instruction letter, the coordination of the turnover of security and physical plant operations can be coordinated through Ron Grossmann.

We remain hopeful that we can achieve our common objective of conveying title to the property in accordance with the agreement of sale assumed by your client in its bankruptcy proceedings and Judge Drain's order.

KP

---

Karl Piirimae
Windels Marx Lane & Mittendorf, LLP
120 Albany Street Plaza, New Brunswick, NJ 08901
156 West 56th Street, New York, New York 10019
Direct Dial: 732.448.2552 | General Fax: 732.846.8877
kpiirimae@windelsmarx.com | www.windelsmarx.com

---

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, regardless of whether you are a named recipient, please notify the sender by reply e-mail and delete the message and any attachments.

Virus-free. www.avg.com



**Mark Yunger <mark@bridgewatercp.com>**

---

## FW: Novartis/Suffern - Escrow Closing
1 message

---

**Thomas C. Landrigan** <tlandrigan@cll-law.com>                Thu, Aug 17, 2017 at 8:52 PM
To: Doug Pick <dpick@picklaw.net>, "Sorvino, Heidi" <sorvinoh@whiteandwilliams.com>, Michael Levine
<ml@levlaw.org>, tlandrigan@cll-law.com, Marty S <martys19993@gmail.com>, Mark Yunger
<mark@bridgewatercp.com>

---

**From:** Thomas C. Landrigan [mailto:tlandrigan@cll-law.com]
**Sent:** Thursday, August 17, 2017 8:52 PM
**To:** 'Piirimae, Karl' <kpiirimae@windelsmarx.com>
**Cc:** 'Matthews, Scott' <smatthews@windelsmarx.com>; 'Barr, Leslie' <lbarr@windelsmarx.com>; 'OMeara,
James' <james.omeara@novartis.com>; 'Grossmann, Ron' <ron.grossmann@novartis.com>; 'Rosen, Jared'
<jrosen@windelsmarx.com>; 'Goetz-Graham, Mary (Mary.Goetz-Graham@fnf.com)' <Mary.Goetz-
Graham@fnf.com>
**Subject:** RE: Novartis/Suffern - Escrow Closing


Karl:


I respond as follows:


1. The closing date in *not* today; it has been adjourned to August 22nd. We will be there (the location
   mandated by the parties' agreement) to close on this transaction at the time indicated in my prior
   communication. You can attend or not attend as you like, at your peril.
2. There is no provision in the parties' agreement for an "escrow closing." The agreement unambiguously
   requires a physical closing. Your failure to timely schedule the same (among other things) warrants an
   adjournment of this non-time-of-the-essence closing.
3. Your analysis of the purchaser's right (or rather, purported lack of right) to assert title issues is dead wrong,
   both legally and contractually. That will be established in the inevitable litigation if you fail to attend the
   closing on Tuesday. So we are clear on that, should you refuse to close on Tuesday, litigation counsel will
   seek to amend the existing State Court complaint to assert claims for, among other things, specific
   performance, damages in excess of $12 million; punitive damages for fraud; and ancillary relief. It is quite
   clear to us that, given Novartis's repeated unreasonable and unwarranted positions, it has an ulterior
   motive *not* to close on this transaction (despite its protestations to the contrary). Judge Drain has already
   eluded to that during the last oral argument before him and we fully intend to explore the actual reasons for
   that in the ensuing litigation.
4. The fact that documents "could readily have been provided to you by prior closing counsel or your co-
   counsel" is irrelevant for two reasons. First, *you* did not provide them until the last minute. Secondly, they
   are not, contrary to your assertion, "substantially in the form approved in February."
5. The coordination of the turnover of security and physical plant operations will be coordinated through Ron
   Grossmann once we close on Tuesday.

Thomas C. Landrigan, Partner

Cohen, LaBarbera & Landrigan, LLP

40 Matthews Street, Suite 203

Goshen, New York 10924

845-291-1900

Fax 845-291-8601

Cell:  845-270-3895

Email tlandrigan@cll-law.com


Mail transmission and any accompanying documents contain information belonging to the sender which are confidential and legally privileged.  This information is intended only for the use of the individual or entity to whom this transmission was sent as indicated above.  If you are not the intended recipient, any disclosure, copying or use of same is strictly prohibited.  If you have received this transmission in error, please reply to the sender at (845) 291-1900 or tlandrigan@cll-law.com and delete this message and all attachments from your electronic storage files.  Federal Tax Disclosure and Confidentiality Notice: In accordance with IRS requirements, we inform you that any Federal tax advice contained in this communication is not intended or written to be used, and cannot be used, for thepurpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.


**From:** Piirimae, Karl [mailto:kpiirimae@windelsmarx.com]
**Sent:** Thursday, August 17, 2017 3:22 PM
**To:** tlandrigan@cll-law.com
**Cc:** Matthews, Scott <smatthews@windelsmarx.com>; Barr, Leslie <lbarr@windelsmarx.com>; OMeara, James <james.omeara@novartis.com>; Grossmann, Ron <ron.grossmann@novartis.com>; Rosen, Jared <jrosen@windelsmarx.com>; Goetz-Graham, Mary (Mary.Goetz-Graham@fnf.com) <Mary.Goetz-Graham@fnf.com>
**Subject:** Novartis/Suffern - Escrow Closing


Tom:


Thank you for your letter that I received by email about an hour ago at 2:00 p.m. today.  Given the urgency and the press of time required for your client to complete funding today, please pardon the informality of an email response.  There appear to be a few fundamental misunderstandings:

# **EXHIBIT 5**



**Mark Yunger <mark@bridgewatercp.com>**

---

# Next move

1 message

---

**Michael Levine** <ml@levlaw.org>                                    Fri, Aug 18, 2017 at 8:55 AM
To: "Thomas C. Landrigan" <tlandrigan@cll-law.com>, "Sorvino, Heidi"
<sorvinoh@whiteandwilliams.com>, Doug Pick <dpick@picklaw.net>, Marty S
<martys19993@gmail.com>, Mark Yunger <mark@bridgewatercp.com>

Team:

I gave a lot of thought last night to how to proceed from this point. Initially, I was debating in my mind whether we needed to commence an adversary proceeding for specific performance/damages in the Bankruptcy Court, or make a motion to lift the stay to allow us to amend the complaint in the existing state court action and litigate the issues there. The more I thought about that the more I realized how long, expensive and time-consuming that litigation would be, regardless of the forum. It occurred to me, however, that we have one more path that we can try to walk down before World War III starts, and that is this. What if we make a motion to Judge Drain on shortened notice (i.e., returnable Tuesday morning) to compel Novartis to attend a closing on Tuesday afternoon as noticed by Tom? We lay out what has happened, including up to last night when we got the survey report at 10:30 PM (still not sure if that survey report is now acceptable; waiting to hear from Marry or Mr. Yunger on that), and ask Judge Drain to modify his Order *nunc pro tunc* and direct that the closing take place that afternoon as noticed. We point out how unreasonable Novartis has been, establish that there is no prejudice to Novartis as a result of this three business-day delay, and argue that Novartis is attempting to use this as, in judge Drain's words, "a profit center." Finally, we point out the catastrophic consequences if it does not close in terms of potential monetary loss, waste of the Court's time in what will undoubtedly be drawn out litigation, etc. In other words, the balancing of the equities mandates granting the motion to close on Tuesday. I think if Judge Drain hears that Novartis refused to agree to a three-day delay of the closing in return for what we offered (release of down payment, release of title issues, release of any post-closing date claims, etc.) he will go nuts on Novartis's counsel.

The only downside is that, if Judge Drain grants the request, we **HAVE** to close Tuesday afternoon. Marty, give me your thoughts as to whether we place all of our legal capital (probably the last we have) on that premise. In other words, are we certain we can close Tuesday afternoon?

Counsel, please give me your thoughts on this strategy. If we are going to employ it, we will need to file the motion as early as possible today. Unfortunately, I have appointments with two specialists today so I cannot draft it. One of you would have to do that.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

# **EXHIBIT 6**



**Mark Yunger <mark@bridgewatercp.com>**

---

## Fwd: 25 Old Mill
1 message

---

**duvis 110** <duvis110@gmail.com>
To: igenuth@bridgewatercp.com, mark@bridgewatercp.com

Wed, Sep 6, 2017 at 1:31 PM

> Begin forwarded message:
>
> > **From:** Michael Levine <ml@levlaw.org>
> > **Date:** September 6, 2017 at 1:29:23 PM EDT
> > **To:** "Thomas C. Landrigan" <tlandrigan@cll-law.com>, 'Marty S' <martys19993@gmail.com>, 'duvis 110' <duvis110@gmail.com>, 'YS' <yidel11219@gmail.com>
> > **Cc:** 'Doug Pick' <dpick@picklaw.net>, "'Sorvino, Heidi'" <Sorvinoh@whiteandwilliams.com>
> > **Subject:** RE: 25 Old Mill
> >
> > They have agreed (in an email from Leslie Barr to me) to withdraw their motion to Judge Drain to enforce the "default" under the sale agreement. I expect they will do that via letter to the Court. We have no motion pending, the Court having already granted our motion to extend the closing date.
> >
> > As soon as this aspect is over today, Doug should prepare a motion on notice to all creditors to withdraw the Bankruptcy Petition.
> >
> > Mike Levine
> >
> >
> > **LEVINE & ASSOCIATES, P.C.**
> >
> > *Attorneys-at-Law*
> >
> > **15 Barclay Road**
> >
> > **Scarsdale, NY 10583**
> >
> > Telephone (914) 600-4288
> >
> > Fax (914) 725-4778
> >
> > Cell (917) 855-6453
> >
> > ---
> >
> > **From:** Thomas C. Landrigan [mailto:tlandrigan@cll-law.com]
> > **Sent:** Wednesday, September 06, 2017 12:47 PM
> > **To:** 'Marty S' <martys19993@gmail.com>; 'duvis 110' <duvis110@gmail.com>; 'YS' <yidel11219@gmail.com>
> > **Cc:** tlandrigan@cll-law.com; Michael Levine <ml@levlaw.org>; 'Doug Pick' <dpick@picklaw.net>; 'Sorvino, Heidi' <Sorvinoh@whiteandwilliams.com>
> > **Subject:** FW: 25 Old Mill
> >
> >
> > Please see below. Please make arrangements for handover at 1:30 per a separate e-mail. Please make sure David Salamon has photo idea with him.

Counsel:  Please arrange with Scott Mathews Les Bar and company to dispense with any hearing.  Its possible I suppose they raise issues here, but frankly isn't this our motion?  Can we just withdraw it?

---

**From:** Thomas C. Landrigan [mailto:tlandrigan@cll-law.com]
**Sent:** Wednesday, September 6, 2017 12:44 PM
**To:** 'Piirimae, Karl' <kpiirimae@windelsmarx.com>; 'Goetz-Graham, Mary' <Mary.Goetz-Graham@fnf.com>; 'Matthews, Scott' <smatthews@windelsmarx.com>; 'Michael Levine' <ml@levlaw.org>; 'Doug Pick' <dpick@picklaw.net>; 'Sorvino, Heidi' <Sorvinoh@whiteandwilliams.com>
**Cc:** 'Barr, Leslie' <lbarr@windelsmarx.com>; 'Della Salla, Arthur' <Art.DellaSalla@fnf.com>; 'tlandrigan@cll-law.com' <tlandrigan@cll-law.com>; 'GBROSNAN@CLL-LAW.COM' <GBROSNAN@CLL-LAW.COM>
**Subject:** RE: 25 Old Mill

1. The closing figures have not changed from the Settlement Statement executed on Friday September 1st per buyer.
2. We agree with Novartis and will authorize  payment of the Purchase Price in accordance with the Closing Statement executed on Friday September 1st
3. Commonwealth is authorized to disburse funds in accordance with the Closing Statement dated Friday September 1st as referenced in the email below.

4.    We require Seller confirmation that they approve release to Commonwealth and seller as applicable of all closing documents held in escrow for immediate recording as applicable (e.g. Deed and transfer documents), with materials to be provided to us as applicable and a copy of scanned title policy with overnighting of original to us. (Karl:  Please confirm, it is implicit in your e-mail but obviously under the context we wish comfort....*Mary, please also confirm title policy is being issued and scan. Thank you*).

Subject to the above item 4 which I think is no issue for everyone we are ready to proceed with orderly transition at 1:30.

THANKS TO ALL FOR THEIR EFFORTS!!!!!!!!!!!!!!!!!!!

_____

Thomas C. Landrigan, Partner

Cohen, LaBarbera & Landrigan, LLP

40 Matthews Street, Suite 203

Goshen, New York 10924

845-291-1900

Fax 845-291-8601

Cell:  845-270-3895

Email tlandrigan@cll-law.com

# **<u>EXHIBIT 7</u>**



**Mark Yunger <mark@bridgewatercp.com>**

---

## Fwd: RS Old Mill, LLC- RANY 27660
1 message

---

**duvis 110** <duvis110@gmail.com>                                    Wed, Oct 11, 2017 at 1:33 PM
To: igenuth@bridgewatercp.com, Mark Yunger <mark@bridgewatercp.com>

Sent from my iPhone

Begin forwarded message:

> **From:** YEHUDA SALAMON <yidel11219@gmail.com>
> **Date:** October 11, 2017 at 1:32:30 PM EDT
> **To:** tom landrigan law <tlandrigan@cll-law.com>, Doug Pick <dpick@picklaw.net>,
> Michael Levine <ml@levlaw.org>, "Sorvino, Heidi" <Sorvinoh@whiteandwilliams.com
> >
> **Cc:** Marty S <martys19993@gmail.com>, d salamon <salamonduvid@gmail.com>
> **Subject: Re: FW: RS Old Mill, LLC- RANY 27660**
>
> Doug,
> The 608K in expenses is to a 3rd party which includes 60K for surveyor and over
> 100K to title to effectuate the closing. Instead of Riverside releasing it directly like all
> other funds it was sent to Tom to make sure right amounts are disbursed to the 3rd
> party. Four people not related to the BK entity made Tom an escrow agent. All
> creditors and closing expenses were paid minus this one that Tom was holding. Either
> Tom is holding it for a 3rd party or this is the only creditor owed money. Why did we
> pay Mintz Levin and AKRF? They will go ahead and put in a claim in the next day or
> two. They should get paid immediately before this becomes a new headache and
> liability for the debtor.
>
>
> | thanks
>
> YEHUDA

# EXHIBIT 8

# G**mail**
by Google

**Mark Yunger <mark@bridgewatercp.com>**

---

## RE: 25 Old Mill Road
1 message

---

**Michael Levine** <ml@levlaw.org>                                   Mon, Oct 2, 2017 at 6:38 PM
To: David Fleischmann <david@dfleischmann.com>
Cc: "AMindick@rsabstract.com" <AMindick@rsabstract.com>, Stephen Friedman
<sfriedman@reisssheppe.com>, "igenuth@bridgewatercp.com" <igenuth@bridgewatercp.com>, mark
<mark@bridgewatercp.com>, "ahuva@dfleischmann.com" <ahuva@dfleischmann.com>


David:


1. I disagree with your conclusion, both factually and as a matter of law, that "Stephen
   Friedman as counsel authorized funding based off the statement."  If any statement
   purported to contain the signature of, or which was represented to be sent with the
   authorization of, an authorized representative of my client, that would have been a
   misrepresentation.
2. The only "nonsense" that I see is your client's refusal to comply with its contractual obligation
   to convey the 65% membership interest to my client or its designees.
3. I do not send e-mails for no reason, or to simply sabre rattle.  If it were up to me, we would
   already be in litigation and let the chips fall where they may.  I have carefully assessed the
   situation from a litigation perspective and I feel quite confident as to my client's likelihood of
   success.


Notwithstanding all of that, I am under specific instruction from my client to tone down rhetoric to
attempt to civilly resolve this today (and pave the road for their cooperative and successful business
going forward).  That is why I called you this morning advising that the clients had (I was told)
reached an agreement that you would receive all of the necessary documents in escrow and
mandatorily release them when you have them all.  I have prepared the escrow agreement that we
discussed (consistent with the agreement as described to me) and attach the same (with the
necessary schedules) herewith for your review.  If this draft is acceptable, I believe that the parties
are in a position to execute the agreement and the ancillary documents this evening.  Please advise
me if that is your understanding as well.


Mike Levine


LEVINE & ASSOCIATES, P.C.

*Attorneys-at-Law*

**15 Barclay Road**

# EXHIBIT 9

On Wed, Oct 4, 2017 at 2:47 PM,
Michael Levine <ml@levlaw.org> wrote:

David:

Your proposed changes are
unacceptable and contrary to what I
was advised was the parties'
agreement.  Specifically, *inter alia* (i)
the delivery of the LLC Member
assignment documents must be
directly to my client and NOT to any
third party (Rabbi Rottenberg or
otherwise), nor will the delivery of the
same be delayed until the "receipt of
all collateral described in the
agreement between the parties has
been secured;" and (ii) your client will
NOT retain the ability to change the
board of RSOM and, thereby, divest
my client of control of that entity.
Those requests are contrary to the
agreement among the parties, make
no business or common sense, and, to
coin a phrase, are "utter nonsense."
The escrow agreement was simply
that my client would sign off on the
requested closing statement and your
client would deliver the LLC Member
assignment documents and a waiver
of modification of the board of RSOM.
We will no longer tolerate this
gamesmanship.

You have gotten your wish.  We will
litigate at this point.

Mike Levine

LEVINE & ASSOCIATES, P.C.

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

**Telephone** (914) 600-4288

**Fax** (914) 725-4778

**Cell** (917) 855-6453

**From:** David Fleischmann
[mailto:david@dfleischmann.com]
**Sent:** Tuesday, October 03, 2017 2:45
PM
**To:** Michael Levine <ml@levlaw.org>
**Subject:** Fwd: Escrow Agreement with
Schedules

Subject to client review and
approval, attached for review.

David Fleischmann, Esq.
Law Offices of David Fleischmann P.C.
2233 Nostrand Avenue, 3rd Floor
Brooklyn, New York 11210
Phone: (718) 650-6090
Fax:     (718) 504-7835
david@dfleischmann.com

The information contained in this
message is privileged and confidential as
attorney-client communication and
protected from disclosure. If the reader of
this message is not the intended recipient,
you are hereby notified that any
dissemination, distribution or copying of
this communication is strictly prohibited.
If you have received this communication
in error, please notify the sender
immediately by replying to the message
and deleting it from your computer.

<Escrow Agreement with Schedules - Comments as to requested modifications.docx>

<Escrow Agreement with Schedules - Certain modifications accepted (clean copy).docx>

# **EXHIBIT 10**



**Mark Yunger <mark@bridgewatercp.com>**

---

# FW: Escrow Agreement
1 message

---

**igenuth@bridgewatercp.com** <igenuth@bridgewatercp.com>       Mon, Nov 20, 2017 at 8:48 PM
To: mark@bridgewatercp.com

---

**From:** Michael Levine [mailto:ml@levlaw.org]
**Sent:** Monday, November 20, 2017 7:08 PM
**To:** igenuth@bridgewatercp.com
**Cc:** 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'duvis 110' <duvis110@gmail.com>;
david@dfleischmann.com; 'Yehuda Salamon' <yidel11219@gmail.com>; 'Sorvino, Heidi'
<Sorvinoh@whiteandwilliams.com>; 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'Thomas
C. Landrigan' <tlandrigan@cll-law.com>; 'David Fleischmann' <david@dfleischmann.com>
**Subject:** RE: Escrow Agreement


Mr. Genuth:


This has nothing to do with any fees owed to me.  This has to do with (i) your refusal to procure the
execution of the documents necessary to evidence my client's 65% ownership in Suffern, and (ii)
your *ex parte* dissipation of Suffern assets to entities under your control.


Mike Levine



**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY 10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

**From:** igenuth@bridgewatercp.com [mailto:igenuth@bridgewatercp.com]
**Sent:** Monday, November 20, 2017 5:44 PM
**To:** Michael Levine <ml@levlaw.org>
**Cc:** 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'duvis 110' <duvis110@gmail.com>; david@dfleischmann.com; 'Yehuda Salamon' <yidel11219@gmail.com>; 'Sorvino, Heidi' <Sorvinoh@whiteandwilliams.com>; 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'Thomas C. Landrigan' <tlandrigan@cll-law.com>; 'David Fleischmann' <david@dfleischmann.com>
**Subject:** RE: Escrow Agreement


on the contrary I don't want war and I would like to finish all our agreements and put this behind us. I understand that you are looking for funds that your client agreed to pay you. I don't recall in any of our discussions or agreements ever undertaking to pay your bills.

Please explain why you think I want a war with you ???


**ISAAC GENUTH**



**54 W. 47th STREET Suite # 5FE | New York City, NY 10036**

**Tel:  212 244-1099**

**Cell: 917 750-9665**

**Web:** www.bridgewatercp.com

**Email:** igenuth@bridgewatercp.com

CONFIDENTIALITY NOTICE: THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND DELETE THIS MESSAGE PERMANENTLY FROM YOUR FILES.

**From:** Michael Levine [mailto:ml@levlaw.org]
**Sent:** Monday, November 20, 2017 5:34 PM
**To:** igenuth@bridgewatercp.com
**Cc:** 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'duvis 110' <duvis110@gmail.com>; david@dfleischmann.com; 'Yehuda Salamon' <yidel11219@gmail.com>; 'Sorvino, Heidi' <Sorvinoh@whiteandwilliams.com>; 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'Thomas C. Landrigan' <tlandrigan@cll-law.com>; 'David Fleischmann' <david@dfleischmann.com>
**Subject:** RE: Escrow Agreement


Mr. Genuth:


I have been in meetings all day and just saw your e-mail. Thank you for confirming what I have been attempting to persuade my client for quite some time … that there has never been any intention to comply with contractual obligations. It is war that you have declared; and it is war that you will get. We will see who is standing at the end.


Mike Levine


**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY 10583**

Telephone (914) 600-4288

Fax (914) 725-4778

Cell (917) 855-6453

---

**From:** igenuth@bridgewatercp.com [mailto:igenuth@bridgewatercp.com]
**Sent:** Monday, November 20, 2017 2:15 PM
**To:** Michael Levine <ml@levlaw.org>
**Cc:** 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'duvis 110' <duvis110@gmail.com>; david@dfleischmann.com; 'Yehuda Salamon' <yidel11219@gmail.com>; 'Sorvino, Heidi' <Sorvinoh@whiteandwilliams.com>; 'Stephen Friedman' <sfriedman@reisssheppe.com>; 'Thomas C. Landrigan' <tlandrigan@cll-law.com>; 'David Fleischmann' <david@dfleischmann.com>
**Subject:** RE: Escrow Agreement

Please see below in red and thank you for your understanding.

You are welcome to call me with any questions.

I'm looking to make this work but please don't throw my way items that your client is responsible for, since it's his responsibility to make all capital calls.

As soon as all monies are paid by your client which were laid out so far by Suffern Partners we will be able to move forward to completing our agreements.

We have no objection for your client to pay you since we have already given  all the left over money from the deal $738,000.00 so that your client can pay your fees and all third party fees.

Looking forward to getting everything completed.


**ISAAC GENUTH**



**54 W. 47th STREET Suite # 5FE | New York City, NY 10036**

**Tel:  212 244-1099**

**Cell: 917 750-9665**

**Web: www.bridgewatercp.com**

**Email: igenuth@bridgewatercp.com**


CONFIDENTIALITY NOTICE: THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AND DELETE THIS MESSAGE PERMANENTLY FROM YOUR FILES.

**From:** Michael Levine [mailto:ml@levlaw.org]
**Sent:** Sunday, November 19, 2017 11:27 AM
**To:** David Fleischmann <david@dfleischmann.com>
**Cc:** igenuth@bridgewatercp.com
**Subject:** RE: Escrow Agreement


David:


I can only meet tomorrow; then I am gone until the 28th.  If we cannot meet tomorrow, I will ask bankruptcy counsel to move to adjourn the hearing on the motion to dismiss the bankruptcy case, so that we can file, *inter alia*, a motion to set aside the transaction in which Suffern Partners LLC ("Suffern") purportedly obtained an interest in the Property purchased from Novartis by RS Old Mill. If that adjournment is not possible, I will have no choice but to file an objection to the bankruptcy discharge tomorrow.  <span style="color:red">I think That should work for us as well since there are 2 vendors which were promised monies and never received which will be contesting as well. Therefore I would suggest we don't complete anymore signing of documents till the bankruptcy is over. There is no reason to sit for hours when a few days later this whole deal will unfold anyway</span>  I simply cannot allow the bankruptcy case to be dismissed unless and until (i) the escrow agreement is finalized and all necessary documents exchanged, and (ii) funds in payment of our accumulated legal fees are released from escrow.


On another front, I am advised that your client has issued checks from the Key Bank account of Suffern to various entities and individuals for what my client was told was "charity."  As you know, my client is (through its designees) the 65% owner of the shares of Suffern.  He did not, and does not, authorize any purported "charitable" gifts by Suffern at this point in time.  The dissipation of Suffern assets in such manner is neither authorized nor appropriate.  As such, your client is hereby directed to immediately cease and desist from writing ANY check from the Suffern account without the prior approval of my client (which can be obtained through me).  Additionally, your client is hereby directed to account for all disbursements from the Suffern account from the date of the Novartis closing to date. <span style="color:red">FYI the only reason there are monies in Suffern Partners is because your client wrongfully instructed Suffern Partners to take a loan on something that the bank made full payment for 1 year minimum insurance earned. Our lawyer advised us that this is a mistake and therefore we returned the balance of the money to the insurance company.  At this point we still owe the insurance company approximately $54,00.00 plus interest and fees. Since your client has to pay all capital calls and fees, please have him give me a check ASAP so that the insurance company can be reimbursed. The only REASON he had to take the loan is because your client which is supposed to pay for ALL capital calls has failed to do so and is at this point in default under our agreement. Your client received since closing approximately $738,000.00 to which $500,000.00 was to pay third party expenses which included your fee and was given an extra $200.000.00 as a loan claiming that since he's responsible for all Capital Calls he will pay back the loan at that point. So far Suffern Partners needed to take a loan so that it could pay your clients obligations for the security to ISSM Protective Services Inc. 34,236.05, The law office of Amy Mele $6592.50, reimbursement for the RFP for Amazon Luxque $7029.15, Leonard Jackson Associates $5000.00 total. Suffern Partners took a loan, and laid out on behalf of your client $52,857.70 on which Suffern Partners is paying interest. All this is part of your clients responsibility in which he's supposed to pay all Capital Calls.</span>

These shenanigans have gone on far too long and will not be tolerated for one minute longer.  I have been restrained by my client from pursuing the actions that I have repeatedly counseled should be taken because he believed that your client was operating in good faith.  He has now removed that restraint.  Should this matter not be entirely resolved by the close of business tomorrow, all resolution offers should be considered withdrawn and we will take all appropriate and necessary actions immediately thereafter.

Kindly be guided accordingly.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

Telephone (914) 600-4288

Fax (914) 725-4778

Cell (917) 855-6453

**From:** David Fleischmann [mailto:david@dfleischmann.com]
**Sent:** Tuesday, November 14, 2017 3:02 PM
**To:** Michael Levine <ml@levlaw.org>
**Cc:** igenuth@bridgewatercp.com
**Subject:** Re: Escrow Agreement

I am sorry, I can't meet this week. I have two closing every day for the next week. Lets aim for late next week and will find a time to make this happen. I have no problem driving from brooklyn to your office

David Fleischmann, Esq.
Law Offices of David Fleischmann P.C.
2233 Nostrand Avenue, 3rd Floor
Brooklyn, New York 11210
Phone: (718) 650-6090
Fax:    (718) 504-7835
david@dfleischmann.com

The information contained in this message is privileged and confidential as attorney-client communication and protected from disclosure. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

On Mon, Nov 13, 2017 at 6:39 PM, Michael Levine <ml@levlaw.org> wrote:

David:

Attached is Draft 3 of the proposed escrow agreement.  I have accepted most of your requested changes, with the following exceptions:

1.        Your proposed new paragraphs 3E and F are not acceptable.  E forfeits Membership interests in the event of a default.  F dilutes Membership interests in the event of a failed capital call.  However, there is sufficient collateral at all times to compensate for those.

2.        The Declaration of Restriction was supposed to be a document filed in lieu of the Property Deeds so as to prevent any encumbrances being put thereupon while the same remained as collateral.  The document you drafted went far beyond that.  I redrafted it to comply with the original intent.

Also, after review by my client, I have added certain paragraphs and language to conform to what I am advised has already been agreed to.

Finally, as I previously indicated, the values of the property on the existing Schedule 10 are not agreed to and must be discussed directly among the clients.  My proposal is as follows.  We have what I believe to be a framework for a resolution of at least the escrow portion of the dispute, as reflected on the attached draft.  I suggest that we have a face-to-face meeting with all clients being present this week to finalize that.  If we can do that, great; if we cannot then we can all do

whatever is necessary to protect our respective clients' rights.  But it is imperative that we finalize this phase this week.  Please let me know your and your client's availability.


Mike Levine


## LEVINE & ASSOCIATES, P.C.

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

Telephone (914) 600-4288

Fax (914) 725-4778

Cell (917) 855-6453

# **EXHIBIT 11**



**Mark Yunger <mark@bridgewatercp.com>**

---

## FW: Legal Fees - RS Old Mill
1 message

---

**igenuth@bridgewatercp.com** <igenuth@bridgewatercp.com>
To: mark@bridgewatercp.com

Fri, Nov 17, 2017 at 8:09 AM

---

**From:** duvis 110 [mailto:duvis110@gmail.com]
**Sent:** Friday, November 17, 2017 12:39 AM
**To:** igenuth@bridgewatercp.com
**Subject:** Fwd: Legal Fees - RS Old Mill


This is serious,please,Michael is Mad At me,He knows everyone Got Paid. Your only Not paying Levine. And I can't Take The fall,Please

Sent from my iPhone


Begin forwarded message:

> **From:** "Thomas C. Landrigan" <tlandrigan@cll-law.com>
> **Date:** November 15, 2017 at 3:44:27 PM
> **Cc:** <tlandrigan@cll-law.com>
> **Subject: FW: Legal Fees - RS Old Mill**
>
> What is this?  Note, there is not enough money to accomplish all goals and pay this. We are literally done as far as proceeds.

---

> **From:** Michael Levine [mailto:ml@levlaw.org]
> **Sent:** Wednesday, November 15, 2017 2:58 PM
> **To:** tcl2@frontier.com
> **Subject:** Legal Fees - RS Old Mill


Tom:

As you may be aware, I received the sum of $65,000 from a client who was covering the debt of RS Old Mill to me with the understanding that he would be quickly repaid from the legal fee that I was to receive from the closing proceeds.  The client is now demanding the return of his funds.  If I do not receive the funds from your escrow account prior to the termination of the bankruptcy case, I will have to file a Notice of Claim and object to the dismissal of the case.  Please let me know ASAP what the status is of the release of those funds to me.

Thank you.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

Telephone (914) 600-4288

Fax (914) 725-4778

Cell (917) 855-6453

Virus-free. www.avg.com

# **EXHIBIT 12**



**Mark Yunger <mark@bridgewatercp.com>**

---

## RE: Escrow Agreement
1 message

---

**igenuth@bridgewatercp.com** <igenuth@bridgewatercp.com>  Tue, Dec 5, 2017 at 3:07 AM
To: mark@bridgewatercp.com

---

**From:** Michael Levine [mailto:ml@levlaw.org]
**Sent:** Monday, December 04, 2017 8:35 PM
**To:** David Fleischmann <david@dfleischmann.com>
**Cc:** igenuth@bridgewatercp.com
**Subject:** RE: Escrow Agreement


David:


As you know, December 13th is the last date that the order to dismiss the bankruptcy case must be filed.  Therefore, if the matter is going to be settled (in lieu of the motion to dismiss the bankruptcy case being withdrawn and other actions taken), we need to have a signed agreement by the 13th.  Responding to your last e-mail, attached is the last draft of the agreement that you indicated below your clients are prepared to sign.  I originally sent this to you under cover of my e-mail of November 13th.  The only remaining issue (as I stated in my e-mail of 11/13) is the collateral values on Schedule 10.  They are not agreed to and must be agreed and modified directly by the clients.  Thus, I am willing to have all necessary parties meet to execute the attached agreement at your offices on December 13th at 12:00 noon [I will be out of the country from early tomorrow morning through the evening of December 12th, and I have a criminal matter in the Eastern District at 9:30 AM on December 13th], on the follow two conditions.  First, confirm to me that all parties are prepared to execute the attached escrow agreement in the form attached (with a corrected Schedule 10).  Secondly, Mr. Genuth and my client must speak directly and agree to the Schedule 10 values before we meet.


Please confirm to me by return e-mail tomorrow that those conditions are acceptable.  I will have only sporadic e-mail service for the next 8 days, but will be able to receive your confirmatory e-mail at some point tomorrow.


Mike Levine

## LEVINE & ASSOCIATES, P.C.

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY 10583**

**Telephone (914) 600-4288**

**Fax (914) 725-4778**

**Cell (917) 855-6453**

---

**From:** David Fleischmann [mailto:david@dfleischmann.com]
**Sent:** Thursday, November 30, 2017 4:09 PM
**To:** Michael Levine <ml@levlaw.org>
**Cc:** igenuth@bridgewatercp.com
**Subject:** Re: Escrow Agreement

Mike,

So we can all sign at the same time and put this to bed.

Thanks,

David Fleischmann

On Nov 30, 2017, at 5:58 AM, Michael Levine <ml@levlaw.org> wrote:

> David:

> Not sure why a meeting is necessary if we are going to simply sign the last draft. Why can't we just sign and exchange all necessary documents via e-mail?

> However, if there is a legitimate reason for meeting to close, I am available (subject to client's availability) this evening (after 6:00 PM) or Monday morning as early as you like (I would have to leave by noon; hard stop).

Just a note on another front to Mr. Genuth.  I do not appreciate (nor react well to) back-door threats.  I will overlook it this time, but this is the last time.  The next time there will be consequences.


Mike Levine


**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

Telephone (914) 600-4288

Fax (914) 725-4778

Cell (917) 855-6453

---

**From:** David Fleischmann [mailto:david@dfleischmann.com]
**Sent:** Wednesday, November 29, 2017 9:48 PM
**To:** Michael Levine <ml@levlaw.org>
**Cc:** igenuth@bridgewatercp.com
**Subject:** Re: Escrow Agreement


Mike,


Spoke with my client. We are ready to meet and sign your last version. Let me know when you are available.


Thanks,

David Fleischmann


On Nov 24, 2017, at 8:33 AM, Michael Levine <ml@levlaw.org> wrote:

       David:

I assume this is a joke. On 11/13/17, I sent you Draft 3 of the escrow agreement (attached) with the below comments:

David:

Attached is Draft 3 of the proposed escrow agreement. I have accepted most of your requested changes, with the following exceptions:

1.        Your proposed new paragraphs 3E and F are not acceptable. E forfeits Membership interests in the event of a default. F dilutes Membership interests in the event of a failed capital call. However, there is sufficient collateral at all times to compensate for those.

2.        The Declaration of Restriction was supposed to be a document filed in lieu of the Property Deeds so as to prevent any encumbrances being put thereupon while the same remained as collateral. The document you drafted went far beyond that. I redrafted it to comply with the original intent.

Also, after review by my client, I have added certain paragraphs and language to conform to what I am advised has already been agreed to.

Finally, as I previously indicated, the values of the property on the existing Schedule 10 are not agreed to and must be discussed directly among the clients. My proposal is as follows. We have what I believe to be a framework for a resolution of at least the escrow portion of the dispute, as reflected on the attached draft. I suggest that we have a face-to-face meeting with all clients being present this week to finalize that. If we can do that, great; if we cannot then we can all do whatever is necessary to protect our respective clients' rights. But it is imperative that we finalize this phase this week. Please let me know your and your client's availability.

You sent me (on the Wednesday before Thanksgiving) an e-mail with a purported link to your revisions to that draft. No link was included in your e-mail. On Thursday (Thanksgiving), Michael Ershowsky sent me an email containing a link to a document which contained only purported modifications *to the first draft to the escrow agreement* (that was

sent weeks ago). Those "revisions" simply re-incorporated the rejected
terms on your last modification.  You apparently believe that we are
either stupid or unmotivated.  As to the former, you may be right (see
below), as to the latter I assure you that you are not.  I have repeatedly
advised my client to take what I perceive to be necessary actions
because I was convinced that your client was not acting in good faith.
My client, however, continued to insist on giving your client the benefit of
the doubt and incur additional legal fees in purported "negotiations"
(which were, in reality, simply delay tactics).  The stupidity was in me
appeasing the client in that regard.  That has ended.

Mike Levine

**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

Telephone (914) 600-4288

Fax (914) 725-4778

Cell (917) 855-6453

**From:** Michael Brian Ershowsky [mailto:michael@dfleischmann.com]
**Sent:** Thursday, November 23, 2017 12:39 AM
**To:** David Fleischmann <david@dfleischmann.com>
**Cc:** Michael Levine <ml@levlaw.org>; igenuth@bridgewatercp.com
**Subject:** Re: Escrow Agreement

Mike,

I see that the previous link did not go through. Please follow this link to
access the revised escrow agreement:

https://app.box.com/s/4fbt49ac5dik44rqjhljpopm7lhbuvht.

All the best,

Michael

On Wed, Nov 22, 2017 at 8:02 PM, David Fleischmann
<[david@dfleischmann.com](mailto:david@dfleischmann.com)> wrote:

Please see below a link to revised agreement for your review. My
apologies for the delay, it is entirely my fault as I was backlogged with
other matters.

David Fleischmann


On Nov 13, 2017, at 6:39 PM, Michael Levine <[ml@levlaw.org](mailto:ml@levlaw.org)>
wrote:

David:


Attached is Draft 3 of the proposed escrow agreement.
I have accepted most of your requested changes, with
the following exceptions:


1.       Your proposed new paragraphs 3E and F are
not acceptable.  E forfeits Membership interests in the
event of a default.  F dilutes Membership interests in
the event of a failed capital call.  However, there is
sufficient collateral at all times to compensate for those.


2.       The Declaration of Restriction was supposed
to be a document filed in lieu of the Property Deeds so
as to prevent any encumbrances being put thereupon
while the same remained as collateral.  The document
you drafted went far beyond that.  I redrafted it to
comply with the original intent.


Also, after review by my client, I have added certain
paragraphs and language to conform to what I am
advised has already been agreed to.


Finally, as I previously indicated, the values of the
property on the existing Schedule 10 are not agreed to
and must be discussed directly among the clients.  My
proposal is as follows.  We have what I believe to be a
framework for a resolution of at least the escrow portion
of the dispute, as reflected on the attached draft.  I
suggest that we have a face-to-face meeting with all
clients being present this week to finalize that.  If we
can do that, great; if we cannot then we can all do

whatever is necessary to protect our respective clients
rights.  But it is imperative that we finalize this phase
this week.  Please let me know your and your client's
availability.


Mike Levine


**LEVINE & ASSOCIATES, P.C.**

*Attorneys-at-Law*

**15 Barclay Road**

**Scarsdale, NY  10583**

Telephone **(914) 600-4288**

Fax **(914) 725-4778**

Cell **(917) 855-6453**

<Bridgewater Escrow Agreement - Draft 3 - 11-13-
17.docx>


<Bridgewater Escrow Agreement - Draft 3 - 11-13-17.docx>

# **EXHIBIT 13**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LONE PINE ASSOCIATES, LLC                    :    Index No.

                                  Plaintiff,    :    **AFFIRMATION**

        - against -                             :

ISSM PROTECTIVE SERVICES INC.,                  :

                                  Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

     **PIOTR MARCINEK**, being duly affirmed, hereby deposes and states, under the penalty

of perjury:

     I am an agent of Plaintiff Lone Pine Associates, LLC ("LPA"), and, as such, am fully

familiar with all of the facts and circumstances as are hereinafter set forth.  I affirm, rather than

swear, for religious reasons.

     LPA is the beneficial owner of the developed real property located at 25 Old Mill Road,

Suffern, New York [the "Premises"].[1]  The Premises consist of approximately 162 acres of land

and are improved with aa 585,000 square foot building (which was previously a pharmaceutical

production campus) located near the junction of Interstates 87 and 287 in Rockland County.

---

[1]  A dispute presently exists between LPA and the record owner of the Premises, Suffern
Partners, LLC ("Suffern Partners"), regarding ownership percentages for the Premises.
However, no litigation has been commenced with respect to that dispute, and the same that
dispute is completely irrelevant and of no consequence to the instant action.

FILED: ROCKLAND COUNTY CLERK 07/25/2018 12:05 PM
INDEX NO. 034447/2018
NYSCEF DOC. NO. 3
17-22218-rdd    Doc 91-1    Filed 05/09/19    Entered 05/09/19 15:11:49    Exhibit
RECEIVED NYSCEF: 07/25/2018
Declaration of Isaac Lefkowitz with Exhibits 1-13    Pg 62 of 66

Since about September of 2017 (when the Premises were purchased from its former owner), LPA has been occupying the Premises and conducting its, and related companies, businesses from there (collectively, the "Business").

LPA constructed and finished offices on the Premises, and it is from there that it conducts its Business. Additionally, as part of its Business, a large quantity of inventory is stored by LPA in a warehouse-like portion of the Premises.

Defendant ISSM Protective Services Inc. ("Defendant" or "ISSM") is a security guard company that provides security guard services to safeguard property and buildings. Defendant was hired by Suffern Partners in September of 2017 to safeguard the Premises.

Apparently, between September 5, 2017 and December 18, 2017, Defendant provided a security guard at the Premises (who was stationed at a kiosk at the entrance to the Property). Defendant claims that its bill for its services during that period totaled $57,380.67, of which the sum of $44.62 was claimed by Defendant to bed unpaid.

LPA had (and still has) no direct knowledge or participation regarding the financial arrangement between Suffern Partners and the Defendant. My statement regarding Defendant's claim is based entirely upon a Notice Under Mechanic's Lien filed by Defendant on December 18, 2017. A copy of the same is annexed hereto and labeled Exhibit "1" (the "12/2018 Mechanic's Lien")

Defendant continued to provide security services at the Premises after the filing of the Mechanic's Lien and continues to this day to provide such services.

About two weeks ago, when LPA employees attempted (as they have been doing for the past ten months) to enter the Premises, they were physically prevented from doing so by

2

FILED: ROCKLAND COUNTY CLERK 07/25/2018 12:05 PM
NYSCEF DOC. NO. 3
17-22218-rdd    Doc 91-1    Filed 05/09/19    Entered 05/09/19 15:11:49    Exhibit
Declaration of Isaac Lefkowitz with Exhibits 1-13    Pg 63 of 66
INDEX NO. 034447/2018
RECEIVED NYSCEF: 07/25/2018

Defendant's security guard. When asked for an explanation, we were advised that we should speak to Defendant's owner, Simon Shenker, but, until Mr. Shenker authorized it, we would not be permitted to enter onto the Premises and would not be physically prevented from doing so.

When we subsequently spoke to Mr. Shenker, he advised us that Defendant was owed in excess of $100,000 from Sutphin Partners, and that his guard would not permit access to the Premises to anyone until he was paid. He explained that he was permitted to do so because his company purportedly had a "lien" on the Premises.

We explained to Mr. Shenker that we had as large quantity of inventory in the Premises and typically conducted meetings with potential purchasers of the same at the Premises, where we exhibited the inventory. We further explained to him that we had equipment and computers at the Premises that we needed to access in order to operate our Business. Finally, we explained that we had a very important meeting scheduled at the Premises the week of July 23rd, and we needed access to our offices and our inventory in order to conduct that meeting.

However, our pleas fell on deaf ears and Mr. Shenker simply would not budge. He advised us in no uncertain terms that, unless he was paid, he would continue to have his guards bar us from access to our offices and our inventory.

At that point, we contacted our attorney to ascertain whether Defendant had the legal right to bar us from the Premises based upon either a claim that funds were due or owning or the filing of the purported 12/2017 Mechanic's Lien. He advised us that neither of those facts gave Defendant the right to physically prevent us from entering the Premises and/or retrieving our inventory and/or conducting our business from there (as we have been doing unimpeded for over ten months now).

Accompanying this Affirmation is the Affirmation of Michael Levine, Esq., explaining how he twice contacted Mr. Shenker in writing demanding that we be given access to the Premises and our inventory, and that Mr. Shenker did not respond to that demand.

At this point, our Business and our inventory is in dire jeopardy. We have a critical meeting scheduled for this week,[2] and, if we are unable to conduct that at the Premises, we will potentially lose a very large sale. Moreover, the inability to access and ship (as we sell it) our inventory will have catastrophic adverse consequences to our Business. Already, we are unable to ship inventory to fulfill existing customer orders, which is severely damaging our business credibility. Finally, our inability to access our computers and records is also having a devastating effect on our Business. We are, quite literally, dead in the water at this point, as our Business has come to a complete halt.

We are advised by counsel that there is *absolutely* no legal justification or authority for Defendant to prevent us from entering the Premises or conducting our business. Whatever dispute Defendant has with Suffern Partners is between them. Defendant can foreclose on its Mechanic's Lien if it wishes or remove its guards from the Premises until it gets paid. But the one thing that it simply cannot legally do is to engage in the "self-help" remedy of physically preventing entry onto property that it does not own. Indeed, we are advised by counsel that, even if Defendant did own the Premises (which it does not), it could not engage in such "self-help" remedies absent an agreement in writing with us that grants it such power. The bottom line is that Defendant's actions are clearly and unquestionably illegal.

---

[2] It was originally scheduled for today however we postponed it for one day so that this emergency application could be made to the Court.

4

FILED: ROCKLAND COUNTY CLERK 07/25/2018 12:05 PM
INDEX NO. 034447/2018
NYSCEF DOC. NO. 3
17-22218-rdd    Doc 91-1    Filed 05/09/19    Entered 05/09/19 15:11:49    Exhibit
RECEIVED NYSCEF: 07/25/2018
Declaration of Isaac Lefkowitz with Exhibits 1-13    Pg 65 of 66

At this point, we are in immediate jeopardy of irreparable harm. Our reputation and business credibility suffers each day. If we cannot fulfill orders, not only will we lose immediast and future (basically unquantifiable) business, but we will be subject to potential sanctions under applicable consumer statutes. Unless there is an immediate remedy to this situation, our Business is in dire jeopardy of having to shut down. By the time we located alternative premises, and restocked our inventory (which would be immensely expensive and time-consuming), we will be out of business.

As such, we must apply to the equitable powers of this Court to direct that Defendant immediately cease and desist from continuing its illegal conduct. A temporary Restraining Order prohibiting Defendant from barring our entry onto the Premises until this Court can hear the underlying motion for a Preliminary Injunction is critical to prevent the catastrophic consequences of our not being able to conduct the meeting scheduled for this week. Thereafter, a Preliminary Injunction, to be in effect during the pendency of this action is equally critically necessary in order to prevent the destruction of our Business while this action is pending.

As is clear from our attorney's accompanying Affirmation, we have an overwhelming likelihood of success on the merits of our claim, and (as explained above) we will unquestionably suffer irreparable injury if the interlocutory injunctive relief sought is not granted. Moreover, a balancing of the equities tips decidedly in our favor. If the interlocutory relief sought is granted, Defendant suffers absolutely no prejudice or damages. Its ability to collect whatever funds it claims to be due and owing remains intact, as does its ability to foreclose on its purported Mechanic's Lien. Conversely, if the interlocutory relief sought is not granted, we are essentially out of business.

5

FILED: ROCKLAND COUNTY CLERK 07/25/2018 12:05 PM
NYSCEF DOC. NO. 3

INDEX NO. 034447/2018

RECEIVED NYSCEF: 07/25/2018

17-22218-rdd    Doc 91-1    Filed 05/09/19    Entered 05/09/19 15:11:49    Exhibit
Declaration of Isaac Lefkowitz with Exhibits 1-13    Pg 66 of 66

For those reasons, we respectfully request that this Court issue the foregoing Order to Show Cause with Temporary Restraining Order and, upon the return date of the same, that this Court issue a Preliminary Injunction sought.

**WHEREFORE**, it is respectfully requested that this Court (i) issue the foregoing Order to Show Cause, (ii) grant a temporary restraining order prohibiting Defendant, until the underlying motion for a Preliminary Injunction can be heard, from interfering in any way with Plaintiff's right to occupy, access its inventory in, and conduct business in, the Premises, (iii) upon hearing the underlying motion herein, that this Court issue a Preliminary Injunction prohibiting Defendant, during the pendency of this Action, from interfering in any way with Plaintiff's right to occupy, access its inventory in, and conduct business in, the Premises, and (iv) award to the Plaintiff such other, further and different relief as is just, proper and equitable.

PIOTR MARCINEK

Affirmed before me this
25th day of July, 2018.

MICHAEL LEVINE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02LE4972017
Qualified in Westchester County
Commission Expires September 17, 2018

6