| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br><br>RS OLD MILL, LLC<br><br>                       Debtor.<br>------------------------------------------------------------x | Hearing Date and Time:<br>June 4, 2019 at 10:00 a.m.<br><br>Chapter 11<br><br>Case No: 17-22218-RDD |

### DEBTOR'S OBJECTION TO MOTION FOR
### *NUNC PRO TUNC* RELIEF TO APPROVE THE SALE OF
### THE DEBTOR'S INTEREST IN THE NOVARTIS PROPERTY
### AND ALTERNATE RELIEF

**TO THE HONORABLE ROBERT D. DRAIN:**
**UNITED STATES BANKRUPTCY JUDGE:**

RS Old Mill, LLC (the "Debtor"), by its proposed substitute counsel, Goldberg Weprin Finkel Goldstein LLP ("GWFG")[1] as and for its Objection to the motion of Suffern Partners LLC ("Suffern Partners") primarily seeking *nunc pro tunc* approval of a sale transaction involving the Novartis Property, and alternate relief, as joined by Bridgewater Capital Partners LLC and certain individual defendants (the "Motion"), represents and shows this Court as follows:

### Overview

1. Seeking to whitewash an otherwise unauthorized post-petition transaction in which the Debtor's estate received <u>no</u> benefit (let alone $12.0 million), Suffern Partners has moved for *nunc pro tunc* relief to approve the so-called retransfer of the Novartis property at 25 Old Mill Road, Suffern, NY (the "Novartis Property") that occurred on or about September 6, 2017. Suffern Partners, of course, is not the debtor-in-possession, and has no authority to move under 11 U.S.C. Section 363(b) which is limited to a "trustee". Likewise, Suffern Partners is

---

[1] Goldberg Weprin Finkel Goldstein LLP, as proposed substitute bankruptcy counsel, is responding the bankruptcy-related aspects of the Motion relating to *nunc pro tunc* relief, while proposed litigation counsel, Levine & Associates P.C. is responding to the Motion insofar as it seeks to dismiss the complaint in the Adversary Proceeding.

hardly in a position to exercise business judgment on behalf of the Debtor or the Debtor's estate. Indeed, to state the paradigm that a non-debtor can seek retroactive approval of the sale of the estate's real property outside of a plan of reorganization more than seventeen (17) months after it occurred, demonstrates the utter baselessness of this motion.

2. Moreover, even if Suffern Partners somehow has standing to proceed, it makes no effort to meet the high standards of *nunc pro tunc* relief as announced by the Second Circuit Court of Appeals in *In re Keren Ltd. P'ship*, 189 F.3d 86 (2d Cir. 1999) and its progeny.

3. Under these well settled principles, *nunc pro tunc* relief is reserved for "narrow" circumstances in which there is both a showing that the relief would have been granted had it been timely sought, and "extraordinary circumstances" for the delay in seeking approval.

4. With so many questions surrounding the resale of the Novartis Property, there is absolutely no basis for the Court to dismiss the Chapter 11 case or otherwise abstain in this matter. The Bankruptcy Court is clearly the proper forum to adjudicate all of the rights of the parties, since the gravamen of the Adversary Proceeding is that the retransfer of the Novartis Property was done in violation of the Bankruptcy Code.

## Background

### A. Lead-Up to the Closing

5. The Chapter 11 case was initiated on February 13, 2017 by the Debtor to obtain additional time to close on a sales contract (the "Novartis Contract") with Novartis Corporation "Novartis") to purchase the Novartis Property for the sum of $18 million.

6. After extensive effort, the Debtor ultimately obtained an Order on July 13, 2017 (ECF #45) approving the Debtor's assumption of the Novartis Contract, based upon financing to be provided by Bridgewater Capital Partners LLC ("Bridgewater"). There is nothing in the

Order or underlying motion that suggests that the Debtor would not be the owner of the Novartis Property following a closing.

7. On August 16, 2017, Thomas Landrigan, Esq., who identifies himself as having been retained by the Debtor out of concerns over the delay in closing, filed a letter with the Court requesting additional time to close (ECF #57). A copy of the letter (without exhibits) is annexed hereto as Exhibit "A".

8. Thereafter, on August 18, 2017, the Debtor, through its bankruptcy counsel, Pick & Zabicki, LLP, filed an emergency motion with a proposed order to show cause seeking to compel Novartis to extend the closing deadline (ECF #58). On August 21, 2017, Novartis filed opposition to the Debtor's emergency motion (ECF #59), as well as its own motion to declare a default (ECF #60).

9. In the Debtor's submission, there is no discussion of a proposed retransfer of the Novartis Property, nor any mention of Suffern Partners, or the intermediary non-debtor company of similar name, RS Old Mills Rd LLC.

10. It appears that a hearing did not occur on the motions, and the parties convened a closing on or about September 6, 2017. The events surrounding the closing raise troubling issues which require discovery and the continuing jurisdiction of the Bankruptcy Court.

11. The public record shows that Novartis delivered a deed, dated as of September 1, 2017, notarized on August 31, 2017 and recorded on September 14, 2017, transferring the Novartis Property to the Debtor for the "deed amount" of $18,000,000. A copy of this deed is annexed here as Exhibit "B", together with the applicable New York State tax filings.

12. Contemporaneously with this conveyance, the Debtor then delivered a deed dated as of September 5, 2017, re-transferring the Novartis Property to a non-debtor intermediary

3

entity known as RS Old Mills Rd LLC. This deed was also recorded on September 14, 2017, and lists no consideration given to the Debtor. A copy of this deed is annexed hereto as <u>Exhibit "C"</u>, together with the applicable New York State tax filings.

13. RS Old Mills Rd LLC (bearing a similar name to the Debtor) was apparently organized by Mr. Landrigan on or about August 8, 2017, since its mailing address is 40 Matthews Street, Suite 208, Goshen, NY, which is the same address as Mr. Landrigan's law office. [Compare the Landrigan letter (<u>Exhibit</u> "A") with the New York Secretary of State, Division of Corporations, website printout annexed hereto as <u>Exhibit</u> "D"].

14. To complete the picture, RS Old Mills Rd LLC delivered a deed dated as of September 5, 2017, notarized on September 5, 2017, and recorded on September 14, 2017, conveying the Novartis Property to Suffern Partners for $30,000,000.[2] A copy of this deed is annexed hereto as <u>Exhibit</u> "E", together with the applicable New York State tax filings.

15. Thus, Suffern Partners paid $12 million more for the Novartis Property that the Debtor's contract price, but the precise disposition of these additional monies remains unaccounted for. These funds ostensibly belong to the Debtor's estate. The true culprits, however, need to be identified and are believed to include representatives of Suffern Partners.

16. Suffern Partner's purchase of the Novartis Property was financed by a loan from CPIF Lending LLC ("CPIF") in the sum of $33,000,000 for which CPIF received a mortgage on the Novartis Property. It appears from a mortgage closing statement dated September 6, 2017[3], a copy of which is annexed hereto as <u>Exhibit</u> "F", that a total of $ 33.0 million was involved in the

---

[2] The fact that all three (3) deeds (Novartis to Debtor; Debtor to RS Old Mills Rd LLC; and RS Old Mills Rd LLC to Suffern Partners) were all recorded on September 14, 2017 in sequential order, shows that this was an integrated and continuing set of transactions.

[3] The fact that the Lender's closing statement references a date of September 6, 2017 is evidence that the closing of the retransfer to Suffern Partners took place on that date.

4

closing, with Novartis receiving $15,940,321.51[4] million through Commonwealth Title, approximately $7.3 million going to pay taxes and establish reserves. The balance of $13,763,840.88 was wired to Mr. Landrigan, although Mr. Landrigan was never retained by Order of this Court as real estate counsel to the Debtor.

17. Why Mr. Landrigan received the funds and what he did with them is still to be determined through discovery, but it is believed that prior to closing Mr. Landrigan obtained $12 million from a third party (perhaps on behalf of Suffern Partners, showing equity or capital in the Novartis Property so it could qualify for the $33 million loan based on underwriting criteria). After the closing, this third party was purportedly reimbursed by Mr. Landrigan; however the point to emphasize is that the Debtor's estate did not receive the sale proceeds, or even reimbursement of the $2.5 million contract deposit for that matter.

**Aftermath**

18. Following the closing, on November 1, 2017, Pick & Zabicki LLP, as counsel for the Debtor, filed by notice of presentment, a proposed consent Order dismissing the case (the "Consent Dismissal Order") (ECF #67). In this Consent Dismissal Order, a copy of which is annexed hereto as Exhibit "G", the Fourth Recital states that "on September 6, 2017, a closing on the Sale Agreement was completed", without any mention of the retransfer of the Novartis Property or the disposition of sale proceeds. The proposed Consent Dismissal Order further recites that the claims of Novartis (for the balance of the purchase price) and the unsecured pre-petition claims (Nos. 4 and 5) of New York Land Services, a title company, were paid at the closing. There is no explanation of why New York Land Services was paid ahead of other unsecured creditors, nor as to the source the proceeds to pay the claims revealed.

---

[4] The sum of $15,940,321.51 is the balance of the $18 million purchase price, with adjustments plus the $2.5 million deposit.

5

19. To be clear, there is no mention whatsoever in the bankruptcy record, before or after September 6, 2017, of the retransfer of the Novartis Property to RS Old Mills Rd LLC or Suffern Partners, nor of the millions of dollars supposedly received by the Debtor at the closing on account of the retransfer of the Novartis Property. Similarly, there was no mention of an intended retransfer of the Novartis Property in the August 17, 2017 letter filed by Mr. Landrigan, notwithstanding that he had already formed RS Old Mills Rd LLC nine days earlier (*See*, Exhibit "D"), or in the emergency motion filed by Pick & Zabicki on August 18, 2017.

20. On November 7, 2017, the Debtor filed operating reports for the months of September and October, 2017 (ECF #s 69 and 70), copies of which are annexed hereto as Exhibit "H". The reports, which were prepared by Pick & Zabicki, show no disbursements, and do not disclose the September 6, 2017 closing on the acquisition of the Novartis Property, much less the retransfer of the Novartis Property to Suffern Partners, or the alleged receipt of $13,763,840.88 by Mr. Landrigan. Indeed, the balance sheet in the report still shows the contract deposit as an unliquidated asset.[5]

21. Thereafter, the Debtor spent many months attempting to negotiate a resolution of this matter. When this proved unavailing, the Debtor requested Goldberg Weprin Finkel Goldstein to become substitute bankruptcy counsel and replace Pick & Zabicki in connection with all future bankruptcy proceedings. In connection with GWFG's retention, the Debtor also sought to retain Levine & Associates P.C. as special litigation counsel.

22. On March 29, 2019, the Debtor simultaneously commenced an adversary proceeding (No. 19-08243-RDD) (the "Adversary Proceeding") against all of the individuals and

---

[5] The reports also contain a list of several unsecured creditors owed in excess of $10 million, notwithstanding that the Bar Date for filing claims was April 7, 2017, leaving only ten creditors holding timely filed or schedules claims in the total amount of approximately $1,037,000.

6

entities involved in the retransfer, seeking to set aside the transfer on the ground that it was never authorized by the Court, and demanding an accounting of the proceeds of the transaction. The Debtor also filed a notice of pendency so that any potential third party purchaser of the Novartis Property is aware of the disputed title.

23. Thereafter, Suffern Partners filed two motions, one seeking dismissal of the complaint, and the instant Motion for *nunc pro tunc* approval of the retransfer.

## POINT I:
### Suffern Partners Lacks Standing to Move to Approve the Sale

24. The focal point of the Motion is nunc pro tunc approval of the sale of the Novartis Property to Suffern Partners by means of the Debtor's intermediary transfer to RS Old Mills Rd LLC. Before considering the fact that the motion seeks relief a year and a half after the purported transfers, it must be noted that Suffern Partners has no standing in bankruptcy as a non-debtor to seek approval of a sale in bankruptcy.

25. Section 363(b) of the Bankruptcy Code plainly states that "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." Section 1107(a) of the Bankruptcy Code extends this power to a debtor-in-possession, who can take all actions a trustee can take. Nowhere in the Code is the right to sell the Debtor's property granted to a creditor or, in this case, the purchaser. *See, e.g., In re Lowery*, 203 B.R. 587, 590 (Bankr. D. Md. 1996)(noting that the power to sell under Section 363 is limited to a trustee, and by virtue of Section 1303, a Chapter 13 debtor, but not to a co-owner of the property).

26. Suffern Partners simply presumes standing to make the motion for *nunc pro* tunc approval without any analysis of the provisions of Section 363(b) or the exclusive standing of a

7

trustee. As such, the Motion for *nunc pro tunc* relief is procedurally improper, and should be denied on this basis alone.

## POINT II:
### Suffern Partners has Failed to Meet the Stringent Requirements for *Nunc pro tunc* Relief

27. The Motion also fails on the merits, as Suffern Partners has failed to meet the stringent requirements for *nunc pro tunc* relief in bankruptcy.

28. In *Keren, supra,* the Second Circuit Court of Appeals announced in the context of a motion for approval of a broker's retention after the sale had been completed, that *nunc pro tunc* relief is limited, available only in narrow circumstances:

> *Nunc pro tunc* approval should only be granted in narrow situations and requires that (i) if the application had been timely, the court would have authorized the appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances.

*In re Keren Ltd. P'ship, supra,* 189 F.3d at 87.

29. Notably, Suffern Partners does not cite *Keren* or its progeny, or otherwise even attempt to meet the standards for *nunc pro tunc* approval. Instead, Suffern Partners tries to justify approval of the retransfer of the Novartis Property by alleging that the Debtor exercised its business judgment in proceeding with the retransfer. This self-serving statement is not supported by any proof from or on behalf of the Debtor.

30. This argument is completely undermined by the very cases cited by Suffern Partners, *In re Lionel*, 772 F.2d 1063 (2d Cir. 1983) and *In re Del. & Hudson R. Co.*, 124 B.R. 169 (D.Del. 1991), which not only require a business justification for approval of a sale of substantially all of the Debtor's property outside of a plan, but also a showing of (i) fair and reasonable consideration, (ii) good faith; and (iii) adequate notice. *In re Del. & Hudson R. Co. supra,* 124 B.R. at 175-76 (adopting *Lionel*).

8

31. Since the Debtor's filings with this Court do not evidence receipt of any consideration, and no prior notice was given to creditors or this Court, Suffern Partners cannot meet the *Lionel* tests.

32. While the Debtor may have sought to preserve its deposit, there is no record that it did so. Indeed, the post-closing operating reports (*See,* Exhibit "H") show just the opposite – the deposit was still listed as an unliquidated asset.

33. It is axiomatic that the disposition of funds wired to Mr. Landrigan at the closing of $13,763,840.88 requires discovery because there is no indication that any of these funds were remitted to or received by the Debtor. Moreover, Suffern Partners cannot so easily disassociate itself from Mr. Landrigan, since a core contention is that Suffern Partners and Mr. Landrigan were in cahoots regarding the need to show greater "equity" in the transaction in order for Suffern Partners to qualify for a mortgage. Hence, Suffern Partners is alleged to have been involved in the use of an intermediary company (RS Old Mills Rd LLC) and a strawman funder who deposited monies with Mr. Landrigan.

34. In any event, *nunc pro tunc* relief cannot possibly be granted where the Debtor's estate is harmed by the transactions in question, and full disclosure is otherwise lacking.

35. Importantly, even assuming *arguendo* that the Court may have approved the retransfer had a timely motion been filed, Suffern Partners does not, and indeed cannot, show that there were extraordinary circumstances leading to the year and one half delay in seeking *nunc pro tunc* approval of the retransfer. Instead, Suffern Partners merely argues that it faces potential monetary losses in the event that the retransfer is not approved. This is hardly the type of proof required by *Keren*.

36. In its Motion, Suffern Partners tries to lay all of the blame on the Debtor, and presents itself as a victim of Pick & Zabicki's failure to obtain prior approval for the retransfer. However, the most curious aspect of the retransfer is the fact that none of the parties to the retransfer sought prior Court approval, notwithstanding that each of the parties, including Suffern Partners, was represented by counsel.

37. In any event, neglect by counsel is not a basis for finding that extraordinary circumstances exist warranting *nunc pro tunc* relief. As the Second Circuit has explained:

> First, "[s]imple neglect" on the part of a debtor in failing to take timely action does not constitute the "extraordinary circumstances" necessary to justify nunc pro tunc relief . . . Second, characterizing ADG's neglectful conduct as an extraordinary circumstance justifying nunc pro tunc relief mistakes cause for effect—ADG's failure to act was *itself* the delay, rather than a "circumstance" leading to it.

*In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 679 (2d Cir. 2003) (internal citations omitted).

38. In short, while the facts of this case may be extraordinary for different reasons, it does not present extraordinary circumstances for granting *nunc pro tunc* relief and Suffern Partner's Motion should be denied. To the contrary, there is palpable harm suffered by the Debtor's estate.

39. Tellingly, it was only after the Debtor sought to retain new counsel and commenced the Adversary Proceeding to challenge the unauthorized post-petition resale of the Novartis Property that Suffern Partners came forward and request that the transaction be approved on a *nunc pro tunc* basis. The Motion is simply "too little, too late" to impede a full exploration of the events in question.

## POINT III
### There is No Basis for Dismissal of the Chapter 11 Case

40. To the extent that the Motion seeks alternate relief in the form of dismissal of the entire Chapter 11 case, this Court must deny such a request as a thinly veiled attempt by Suffern Partners to avoid having to answer on the merits for their actions, and their failure to obtain timely approval of those actions. The suggestion that creditors have been paid is rank speculation by Suffern Partners, which is not supported by any evidence as to the actual disposition of the monies remitted to Mr. Landrigan. Plainly, the Court cannot dismiss a Chapter 11 case where more than $13 million is not accounted for.

41. In fact, under the Court's inherent core powers to oversee the proper administration of the Debtor's assets, and the specific powers granted under Section 549 of the Bankruptcy Code to avoid an unauthorized transfer of property, there is a substantial basis for this Court to retain jurisdiction over both the Chapter 11 case and the Adversary Proceeding.

WHEREFORE, the Debtor respectfully prays that Suffern Partner's Motion be denied.

Dated: New York, New York
May 29, 2019

                    Goldberg Weprin Finkel Goldstein LLP
                    *Proposed Attorneys for the Debtor*
                    1501 Broadway – 22nd Floor
                    New York, New York 10036
                    (212) 221-5700

By:   /s/ Kevin J. Nash, Esq.