# EXHIBIT A

# COHEN, LaBARBERA & LANDRIGAN, LLP
## ATTORNEYS AT LAW

RONALD J. COHEN (NY BAR & LL.M. IN TAXATION)
STEPHEN P. LA BARBERA (NY BAR)
THOMAS C. LANDRIGAN (NY & NJ BAR)
\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-
GREGORY J. BROSNAN (NY, NJ & CT BAR & LL.M. IN TAXATION)
JOSHUA A. SCERBO (NY & NJ BAR)
PATRICK HICKEY (NY BAR)
KYLE SEISS (NY BAR)
ME LISSA PERRY (NY BAR)

40 MATTHEWS STREET, SUITE 203
GOSHEN, NEW YORK 10924
TELEPHONE (845) 291-1900
FACSIMILE (845) 291-8601*
EMAIL: tlandrigan@cll-law.com

August 16, 2017

Via e-mail (rdd.chambers@nysb.uscourts.gov)
Hon. Judge Robert D. Drain
United States Bankruptcy Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4140

Re:   RS Old Mill, LLC., Case No. 17-22218-rdd, Letters by Scott Mathews

Dear Judge Drain:

I am a partner of the law firm of Cohen, LaBarbera & Landrigan, LLP, engaged out of concern by the Debtor that the real estate closing in this matter and related matters being handled by prior real estate closing counsel were in peril of not being completed due to a number of challenges beyond the Debtor's control.

Having recently taken over from prior real estate closing counsel for Debtor with the goal of trying to guide a previously litigated transaction toward conclusion, it was rather obvious that tensions related to the prior litigation disputes of the parties have adversely effected what should be straightforward logistical issues that the parties would customarily work together on a collaborative basis to accomplish. Regrettably, Novartis has simply not permitted basic access to occur despite extraordinary efforts by Debtor in what would normally be a priority for a real estate seller actually looking to close, as detailed by other parties submissions and supplemented below. As such, Court supervision of the process to insure its successful conclusion and to permit the Debtor access to the premises and the appropriate time to accomplish necessary steps to close is prudent and warranted.

## TITLE ISSUES AND PROPERTY VIOLATIONS

Title issues remain unsettled and no documents clearing title issues have been provided to our office or to other counsel involved to my knowledge, given incomplete non-final closing documents were provided only late afternoon Tuesday, August 15, 2017. Two separate title company reports (i.e. Riverside Abstract and New York Land Services) reflect very similar issues and no documents have been provided clearing same, despite that these items were reflected in Novartis' title policy since February of 2017 of which I am aware regarding submission providing starting approximately 24 hours ago on a rolling basis.

### Stale February 7, 2017 Survey Must Be Updated

As a preliminary, I note that the survey provided by Novartis is from February, 7, 2017 and has not been updated. Typically, in my experience, and after confirming with Riverside Abstract title company attorney Philip Roman, Esq., this survey from over six months is considered stale and minimally must be updated to insure no changes to the property have occurred (a particular concern on a transaction-property of this size). This has not been completed, in significant part, due to a failure to provide access to the property sufficient for the surveyor to attend to the foregoing. As such, the ability to properly provide typical timely assurances as to issues such as encroachments, changes to the property and so forth are not reflected in a timely way, regardless of any other substantive additions to the survey for greater detail addressed below. While a surveyor was finally provided access to the property on Tuesday of this week, it is my understanding that no measurements were taken or have been provided. See Stale Survey at **Exhibit A**.

Notably, as various issues were bring noticed to counsel, a purported pro forma title policy was provided that made clear that Novartis' title insurer is "Subject to any changes or conditions subsequent to February 7, 2017 that an accurate survey would show." *As such, Novartis is unable to properly insure title after February 7, 2017.* Seller asks buyer to accept title as of a date 6 plus months in the past. See excerpt of purported pro forma at **Exhibit B**. Further, the survey has other issues addressed in e-mail to counsel which are attached for reference which are required to insure that the property provided appropriate title and is compliant with applicable law as contractually required. Same also reflects a concerted successful effort we promptly made to attempt to expedite the survey process to curtail certain plotting and drawings in favor of certified notes that could be handled expeditiously through our efforts which have been rebuffed. See **Exhibit C**.

### Seller Demands Payment of Survey Charges To Close In Addition to Purchase Price

Late Wednesday, the Seller submitted a letter to its title company as escrow agent that indicates closing documents (even with some of the deficiencies cited herein) to convey title may not be released to the purchaser unless the balance of the Purchase Price (as per proposed adjustments) *and* Seller's alleged "Survey Charges" of $75,035.21 are paid (i.e. in addition to the "Purchase Price"). I am unaware of any basis that would permit Seller to be paid these charges as a precondition to close, in excess of the contractual "Purchase Price". Ironically, Seller's demand implicitly acknowledges a survey is required and asks Purchaser to pay for a stale survey that it has prevented from being updated on top of the Purchase Price.

### Open Permits and Violations, and Life Estate Issue

The Novartis title policy reflects multiple open building permits and appears to reflect multiple violations on the property. See **Exhibit D**. No documents closing these issues have been provided to my knowledge. As such, it would appear the violations issue has not yet been cleared, a violation of the representations of 5.1(e) of the Contract and would make the required Certificate of Representations offered by the Seller appear to be inaccurate. These permits appear to be open and there appear to be no records that indicate whether the work was completed, abandoned or otherwise, an issue of obvious concern. Further, as highlighted in our correspondence to counsel both Riverside Abstract and New York Land Services highlighted a life estate held by Gertrude

Conklin as to a portion of the property to be conveyed, and neither a death certificate or affidavit of a party with knowledge have been offered, nor any other documents as to this issue. These and other issues not provided for brevity remain open issues.

### UNWILLINGNESS TO PROVIDE ACCESS

Perhaps with some good fortune, I have not been intimately involved in the prior contentious dealings regarding access to the premises which are set forth in detail by other parties. I certainly can attest that there appears to be very significant resistance in tone and deed to providing access even in my relatively shorter dealings with Novartis. On Friday, August 11, 2017, I left messages with both Scott Mathews, Esq. and Karl Piirimae, Eq., as neither were available to take my calls. I followed up and reached out to Karl Piirimae, Monday morning to make an introduction and to engage in problem solving to facilitate closing as soon as possible.

One key concern raised to me by the Debtor in advance was their inability to gain access to the Premises which was critical both for obtaining environmental insurance, as well as for the completion of a current survey.

In my initial call with Mr. Piirimae I advised that access was an issue raised to me by the Debtor with the hopes of trying to move the process along. I was met with surprising hostility and told that Mr. Piirimae lacked authority to gain access and recited a series of protocols as to why extensive advance notice was required for Novartis, why access was not permitted because due diligence had expired and so forth. I expressed concern that this seemed inconsistent with parties actually trying to accomplish the goal of trying to close a transaction. That is, customarily if the seller was looking to close they would actually go out of their way with persons regularly available to permit access as easily as possible and in any event, it was my understanding that the Court had directed access be provided. Mr. Piirimae actually engaged on multiple occasions in the use of inappropriate language in a manner inconsistent with some prior more cordial dealings with his reputable firm. I do not say this as a reflection upon any particular attorney, but rather to highlight the contentious litigation style approach not consistent with attempting to solve matters actually required to meet closing obligations such as providing access for a current survey, insurance, addressing violations and so forth. Instead, the goal would appear to be give the appearance of a willingness to close without actually attending to customary or contractual requirements.

By way of one rather obvious example, Novartis appears to have attempted to notify the Debtors Friday evening for Monday morning access to the property. What is particularly interesting is that, knowing the Debtor wanted the Novartis hand-picked surveyor on site, Novartis made no mention of this to their selected surveyor. This is a critical point because, as I understand, the surveyor has at various points advised that they cannot even schedule a time unless they confirm Novartis approves access in advance, creating a circular scheduling curfuffle entirely within Novartis' control. Debtor and Bridgewater who I understand have consistently tried to schedule a surveyor and environmental insurance professionals are headed by parties who religiously observe the Sabbath and, in any event, Friday after hours notice was not sufficient to schedule these professionals on such short notice. Other parties have like accounts of the denial of access or roadblocks.

### TIME IS INSUFFICIENT TO CLOSE

Late in the business day Tuesday and on a rolling basis thereafter, I received documents which do not appear to address the above items, and other matters, as required. Today, I notified counsel of some of the more obvious issues and inviting them to consent to adjourn the closing for a short period of time. See Exhibit C. Likewise, it is my understanding, that without prejudice, other attorneys involved similarly tried to provide more "robust" incentives to do so which have been rebuffed. For these and other reasons, a closing is not feasible nor permitted according to the terms of the Contract.

In short, it would appear that Court oversite upon appropriate additional time is warranted and required.

Thank you for your consideration.

Respectfully,

COHEN, LABARBARA & LANDRIGAN, LLP

By: /s Thomas C. Landrigan

cc: Counsel of record (via e-mail only)