**HAHN & HESSEN LLP**
Gilbert Backenroth
Stephen J. Grable
Steven R. Aquino
488 Madison Avenue
New York, New York 10022
Telephone: 212-478-7200
Fax: 212-478-7400

*Attorneys for Suffern Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RS OLD MILL, LLC,<br><br>　　　　　　Debtor. | Case No. 17-22218 (RDD)<br><br>Chapter 7 |
| RS OLD MILL, LLC,<br><br>　　　　　　Plaintiff,<br><br>- against -<br><br>SUFFERN PARTNERS LLC, BRIDGEWATER CAPITAL PARTNERS LLC, ISAAC GENUTH, MARK YUNGER a/k/a "MARK JUNGER," GOLDIE REISMAN, MOSES REICHMAN, RS OLD MILLS RD LLC., DAVID FLEISCHMANN, THOMAS LANDRIGAN, and CPIF LENDING, LLC,<br><br>　　　　　　Defendants. | Adversary No. 19-8243 (RDD)<br><br>Hearing Date: June 25, 2019, 10:00 a.m. |

**SUPPLEMENTAL SUBMISSION IN FURTHER SUPPORT OF
EMERGENCY MOTION TO APPROVE SALE OF SUBSTANTIALLY ALL
OF DEBTOR'S ASSETS TO SUFFERN PARTNERS LLC, *NUNC PRO TUNC*,
AND FOR DISMISSAL AND/OR ABSTENTION AS TO ALL CLAIMS IN
<u>DEBTOR'S PROPOSED ADVERSARY PROCEEDING COMPLAINT</u>**

Pursuant to the Court's permission as stated on the record during an initial June 4, 2019 hearing, Suffern Partners LLC ("Suffern") respectfully files this supplemental submission in further support of its emergency motion to approve the sale of Debtor's assets to Suffern, *nunc pro tunc*, and for dismissal and/or abstention for all claims in Debtor's proposed Adversary Proceeding Complaint, and in anticipation of the further hearing on June 25, 2019.[1]

## OVERVIEW

1. Suffern is now able to answer a question raised at the first hearing on the Sale Motion: What happened to the approximately $13.7 million that Debtor, by its counsel, received as the proceeds of Debtor's sale of the Premises to Suffern?

2. Contemporaneous emails and wire-transfer records unequivocally show that Debtor received the sale proceeds. Contemporaneous emails and wire-transfer records also unequivocally demonstrate that Debtor, ***at the instruction or with the knowledge and consent of Debtor's principal, Yehuda Salamon***, then intentionally and willingly transferred more than $13.5 million of those funds out of the estate to various payees and creditors. This evidence is absolutely fatal to Debtor's claim that it never received the monies from the sale of the Premises – or that it does not know where those funds were disbursed – and also forecloses Debtor's specious objection to the Sale Motion.

3. While the issue of whether all of Debtor's creditors were paid from such sale proceeds remains a question for the newly appointed Chapter 7 Trustee, Suffern respectfully submits that such question has no bearing on the fairness of the sale or the validity of

---

[1] Terms not otherwise defined herein shall have the meaning given to them in Suffern's motion to approve the sale of the Premises and related relief (the "Sale Motion") and the supporting declarations. *See* ECF 86, 86-1, 86-2.

1

Suffern's title to the Premises.  Accordingly, the sale of the Premises to Suffern should be approved and the Adversary Proceeding dismissed as a nullity.[2]

### DEBTOR RECEIVED THE PROCEEDS OF THE SALE, APPROVAL OF WHICH WILL NOT INTERFERE WITH THE CHAPTER 7 TRUSTEE'S INVESTIGATION

4. Debtor's core objection to the Sale Motion is that Debtor never received the proceeds of its $30 million sale of the Premises to Suffern.  Debtor also claims that it does not know what happened to the funds if they indeed were delivered to Debtor.  These claims, as shown below and in the accompanying documents, are demonstrably false.

5. On September 6, 2017, Debtor, through its closing counsel, Thomas Landrigan, Esq., received $13,763,840.88, which represented Debtor's portion of the proceeds from the sale of the Premises, via a wire transfer from Riverside Abstract, the escrow agent for the sale of the Premises.  *See* Ex. A; Tabs 1-2.  The next day, Debtor, through Mr. Landrigan, received an additional $1,997.00 from Commonwealth Land Title Insurance Company as a refund of excess amounts received at the closing on the Premises, bringing Debtor's total receipts from the sale of the Premises to $13,765,837.88.  *See id.*

6. Immediately after receiving the sale proceeds, Debtor began intentionally and knowingly disbursing them.  On September 6, 2017, Yehuda Salamon – Debtor's sole equity holder and principal – and his so-called "consultant" Marty Stern, directed Mr. Landrigan to transfer $12.5 million to Treff & Lowy PLLC, a Brooklyn law firm.  *See* Ex. A; Tab. 3.  Mr. Landrigan did so.  *See id.*

7. The same day, Mr. Landrigan disbursed $200,000 of the sale proceeds to an entity called "Star Foods and More" in New Jersey.  *See* Ex. A; Tab 4.  In a subsequent

---

[2] The Sale Motion originally sought dismissal of the Chapter 11 proceeding.  The Court's Chapter 7 conversion Order, however, has rendered that portion of the Sale Motion moot.

2

email, Mr. Salamon explained the Star Foods payment was for "closing costs" – a clear reference to the sale of the Premises.  *See id.*

8.   On September 13, 2017, Mr. Landrigan sent an email to Douglas Pick, Esq. – Debtor's bankruptcy counsel – indicating that Mr. Landrigan had the "authority" to disburse $118,000 to Pick and Zabicki LLP for legal fees.  *See* Ex. A; Tab 5.  Mr. Landrigan thereafter released those funds to Mr. Pick.  *See id.*  In an email dated October 3, 2017, and copied to Mr. Salamon, Mr. Landrigan informed Heidi Sorvino of White and Williams LLP, counsel to interested party and Adversary Proceeding defendant Bridgewater Capital Partners LLC, that he had "necessary client authorization" to wire $130,000 to White and Williams for legal fees.  *See* Ex. A; Tab 6.  Mr. Landrigan then wired this amount to White and Williams.  *See id.*

9.   Mr. Landrigan also wrote to Mr. Salamon and others on October 17, 2017 and noted that, "as instructed," he would be delivering a check in the amount of $622,837.88 and payable to the Receiver of Taxes for real estate taxes incurred in connection with the sale of the Premises.  *See* Ex. A; Tab 7.  Then, on November 6, 2017, Mr. Landrigan wrote to Mr. Salamon and advised that, "[p]er our prior emails, I am wiring $20,000 to Doug Pick, Esq." for payment of the "statutorily required amount to the US Trustee's office."  *See* Ex. A; Tab 8.  Mr. Landrigan wired the funds to Mr. Pick's firm. *See id.*  Mr. Pick thereafter submitted a check in the amount of $20,000 to the United States Trustee's Office, which acknowledged receipt of the same.  *See id.*[3]

10.   In total, Mr. Landrigan made $13,590,837.88 in disbursements of the sale proceeds pursuant to **Debtor's instructions**, leaving $175,000 that still remains in Mr. Landrigan's firm IOLA account.  *See* Ex. A.  Upon information, those remaining funds

---

[3]   Novartis' $2.5 million claim for Debtor's security deposit on the Premises – which Debtor risked forfeiting if Suffern had not procured financing for the deal – was satisfied at the closing on September 1, 2017.  *See* Ex. B; Tab 9.

3

represent (a) legal fees claimed by Mr. Landrigan; (b) $10,000 for payment of a negotiated settlement of the scheduled claim of Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C. for legal fees incurred by Debtor in connection with its negotiation of the Novartis Sale Agreement; and (c) $20,000 for payment of a negotiated settlement of the scheduled claim of AKRF, Inc. for environmental consulting in connection with Debtor's purchase of the Premises from Novartis. *See* Ex. B; Tabs 10-11.

11. Debtor cannot dispute that Suffern paid, and Debtor actually received, real value for the Premises. That Debtor, through Mr. Salamon and his "consultant" Mr. Stern, thereafter allowed the proceeds to leave the estate does not affect the fairness of the transaction or the adequacy of the price Suffern paid for the Premises. In fact, Debtor has not disputed that it willingly sold the Premises to Suffern and that the $30 million sale price reflected fair and sufficient consideration, nor has any creditor objected to the sale. These undisputed – and undisputable – facts compel approval of the sale.

12. Lastly, Suffern acknowledges that outstanding questions remain as to whether Debtor's directives to disburse $12.5 million to Treff & Lowy, the Brooklyn law firm, occurred without all of Debtor's creditors having been satisfied. But regardless of the answer to that question (which the Chapter 7 Trustee is rightfully investigating), the fact remains that the sale of the Premises to Suffern was fair and supported by adequate, real consideration. Indeed, the Trustee's investigation must necessarily analyze what happened to the sale proceeds *after* Suffern paid them. Granting the Sale Motion will not interrupt or prevent this process.[4] Moreover, every day the sale stands unapproved and Suffern is unfairly precluded from leasing or refinancing the Premises, Suffern is further and

---

[4] While the Chapter 7 Trustee's investigation remains at the initial stages, for the Court's and Chapter 7 Trustee's convenience, Suffern provides herewith its current analysis of the claims made against the estate. *See* Ex. B.

4

irreparably damaged given the $1 million per month in carry costs for the Premises that will not be recoverable. Thus, while Debtor has realized the benefits of the sale by virtue of having received the sale proceeds, Suffern, to the contrary, is being deprived of any such benefit while also on the hook for its $30 million mortgage to CPIF.

## CONCLUSION

13. Debtor, Mr. Salamon, Mr. Stern, and their counsel have manufactured a cloud on Suffern's title to the Premises through allegations of "fraud" and non-payment that are demonstrably false and thus implausible. The significant, irreparable harm they have caused Suffern through their meritless objection to the Sale Motion cannot be allowed to continue. The Court, respectfully, should grant *nunc pro tunc* approval of the sale and dismissal of the Adversary Proceeding Complaint as a nullity.

**WHEREFORE**, Suffern respectfully requests that this Court grant the Sale Motion, including the direction to remove the three *lis pendens* filed against the Premises, together with such other and further relief in favor of Suffern as the Court deems just and proper.

Dated: New York, New York
      June 19, 2019

**HAHN & HESSEN LLP**

By:   s/ Stephen J. Grable
      Gilbert Backenroth
      Stephen J. Grable
      Steven R. Aquino

488 Madison Avenue
New York, New York 10022
Tel.: (212) 478-7200
Fax: (212) 478-7400
gbackenroth@hahnhessen.com
sgrable@hahnhessen.com
saquino@hahnhessen.com

*Attorneys for Suffern Partners LLC*

5