**LaMONICA HERBST & MANISCALCO, LLP**  Relates to a Hearing: October 4, 2019 at 10:00 a.m.
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Salvatore LaMonica, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                  Chapter 7

RS OLD MILL, LLC,                                              Case No.: 17-22218 (RDD)

              Debtor.
------------------------------------------------------------x

**REPLY IN FURTHER SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION APPROVING
SETTLEMENT BETWEEN CHAPTER 7 TRUSTEE AND SUFFERN PARTNERS LLC
AND SALE OF PROPERTIES IN ACCORDANCE WITH STIPULATION OF
<u>SETTLEMENT AND OMNIBUS RESPONSE TO OBJECTIONS</u>**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE

      Marianne T. O'Toole ("<u>Trustee</u>"), as Chapter 7 Trustee of the estate of RS Old Mill, LLC ("<u>Debtor</u>"), submits this reply in further support of the Trustee's motion ("<u>Motion</u>")[1] [Dkt. No. 138], pursuant to 11 U.S.C. §§105(a), 363(b)(1) and 363(m) ("<u>Bankruptcy Code</u>"), and Rules 2002(a)(2), 2002(a)(3), 6004(a), 6004(h) and 9019(a) of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), seeking the Court's approval of a settlement between the Trustee and Suffern Partners LLC ("<u>Suffern</u>") and the sale of certain real properties to RS Old Mills RD LLC <u>nunc</u> <u>pro</u> <u>tunc</u> to September 5, 2017 in accordance with the stipulation of settlement annexed to the Motion as <u>Exhibit A</u> ("<u>Stipulation</u>") and in omnibus response to the objections to the Motion (collectively, "<u>Objections</u>") filed on behalf of: (i) the United States Trustee ("<u>UST Objection</u>") [Dkt. No. 145]; (ii) Yehuda Salamon (together, "<u>Salamon</u> <u>Objections</u>") [Dkt. Nos. 149, 154]; (iii) Romaro LLC ("<u>Romaro Objection</u>") [Dkt. No. 150]; (iv)

---

[1]    Defined terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

Beauty Brags ("Beauty Brags Objection") [Dkt. No. 151]; (v) El City ("El City Objection") [Dkt. No. 152]; and (vi) Ell City LLC ("Ell City Objection") [Dkt. No. 153]. In support of the Reply, the Trustee sets forth and represents as follows:

## PRELIMINARY STATEMENT

The commencement of a Chapter 11 case creates an estate and, pursuant to section 1107(a) of the Bankruptcy Code, the debtor-in-possession is charged with performing all of the functions and duties of a trustee under section 1106 of the Bankruptcy Code. Courts have held that debtors-in-possession and those who control them owe fiduciary duties to the bankruptcy estate. See, e.g., In re N. Beef Packers Ltd. P'ship, No. 13-10118, 2017 Bankr. LEXIS 4566, at *15-16 (Bankr. D.S.D. Jan. 5, 2017). Counsel to debtors-in-possession may also owe fiduciary duties to the estate that are separate and independent from the debtor-in-possession. See, e.g., ICM Notes , Ltd. v. Andrews & Kurth, L.L.P., 278 B.R. 117 (S.D. Tex. 2002) (aff'd In re ICM Notes, 2003 U.S. App. LEXIS 4219 (5th Cir. Tex., Mar. 11, 2003)).

In this case, there can be no doubt that there were many irregularities during the Chapter 11 period including, but not limited to, the engagement of professionals without Orders of the Court, the transfer of the Properties without an Order of the Court and the payment of Chapter 11 professional fees without fee applications or Orders of the Court. What is clear, however, is that everyone involved, including Yehuda Salamon ("Salamon"), the 100% owner of then Debtor-in-possession, and the Debtor's multiple counsels, including Michael Levine, Esq. ("Levine") (who is now representing Salamon individually), were well aware that: (i) Suffern took title to the Properties; and (ii) Suffern obtained a $33,000,000 loan that both funded the Debtor's purchase of the Properties from Novartis and Suffern's purchase of the Properties from RS Old Mills RD LLC. Any newly alleged conspiracy by Salamon and Levine is belied by documentary evidence

2

from 2017 when these transactions occurred. In fact, at or about the time of closing, Levine opined that Bankruptcy Court approval of the Debtor's sale of the Properties was <u>not required</u>.[2] For his part, Salamon executed the Bargain and Sale Deed transferring title to the Properties from the Debtor to RS Old Mills RD LLC and the corresponding RP-5217 form that was filed with Rockland County. <u>See</u> **Exhibit B**.

Salamon, Levine and the Debtor's various counsels were intimately and contemporaneously involved in the transfer of the Properties. Salamon and Levine nevertheless have the shameless audacity to assert now that the very transaction they orchestrated and approved is "a highly irregular sales transaction," Dkt. No. 154 at p. 2, ¶1, and "a carefully calculated and engineered scheme to directly defraud *this Court. . . . ,*" <u>id</u>. at p. 3, ¶4 (emphasis in original). Not only is this about-face inconsistent with prior representations made to this Court and contrary to the debtor-in-possession and counsels' fiduciary duties to this bankruptcy estate, it is inequitable and unfair to the legitimate creditors of the Debtor.

Plain and simple, the current dispute is about ownership of equity in Suffern. Indeed, annexed as **Exhibit C** is a copy of an August 31, 2017 agreement ("<u>Suffern Equity Agreement</u>") between, among others, Suffern, Goldie Reisman ("<u>Reisman</u>") and Lone Pine Associates LLC ("<u>LPA</u>") which, upon information and belief, is an entity formed on or about August 30, 2017 by or at the direction of Salamon to hold his equity interest in Suffern. The Suffern Equity Agreement outlines, <u>inter alia</u>, the mechanism by which LPA could acquire an ownership interest in Suffern. <u>See</u> <u>id</u>. at pp. 5-6 (Ownership/Membership of Suffern/Capital Call Procedure). Notably, the Suffern Equity Agreement: (i) was prepared for the Debtor's signature by Salamon

---

[2] This is evidenced by, <u>inter alia</u>, an e-mail (ultimately sent by Debtor's counsel of record approximately 2 weeks prior to the closings on the Properties) to which Levine provided comments, including "Bankruptcy Court approval for these transactions is, therefor [sic], **not required** under the Bankruptcy Code." <u>See</u> **Exhibit A** (emphasis added). Salamon, among others, is copied on Levine's e-mail. <u>See</u> **Exhibit A** (Salamon testified that his e-mail address is yidel11219@gmail.com at the meeting of creditors, <u>see</u> Dkt. No. 142-2 at p. 30, line 21).

3

and was changed, by hand, to RS Old Mills RD LLC by Avrohom Kaufman who is, upon information and belief, Salamon's brother-in-law; (ii) lists Thomas Landrigan ("Landrigan") as counsel to the Debtor and provides that his law firm, Cohen, LaBarbera & Landrigan, LLP, is to act as escrow agent; (iii) lists Levine's firm, Levine & Associates, P.C., as counsel to LPA; and (iv) was executed by David Salamon, Salamon's son, on behalf of LPA. See id. at p. 1; §9.4 (iii) and (iiii); and p. 10. The Suffern Equity Agreement provides that: (i) Suffern will purchase the Properties from RS Old Mills Road LLC for $30,000,000 (which is what occurred); (ii) Suffern will obtain a loan from CPIF Lending LLC ("CPIF") in the principal amount of $33,000,000 (which is what occurred); and (iii) as additional collateral, Reisman will give CPIF a first mortgage to separate parcel of real property in Brooklyn, New York that she owns (which occurred). See id. at pp. 1-2. The Suffern Equity Agreement provides that as collateral to provide protection to Reisman, LPA will, inter alia, provide certain collateral, including a note to Galster Funding with a face value of $6,500,000 that will be paid off (which did not occur).[3] See id. at §(b)(vi). The Suffern Equity Agreement expressly provides that $15,974,823.11 will be used to pay Novartis the balance of the purchase price for the Debtor's acquisition of the Properties (which occurred). See id. at p. 3, §(i). Disputes under the Suffern Equity Agreement were to be decided by Rabbi Rottenberg (while the specifics are unknown, the parties were before the Rabbinical Court on these issues for more than a 1 year after the closing on the Properties and while the Debtor's Chapter 11 case lay dormant between December 15, 2017 and March 28, 2019, see Dkt. No. 142-1 at lines 1:9). See id. at §9.12.

---

[3] According to a complaint filed by Mark Frankel as Plan Administrator for 4921 12th Avenue LLC against, among others, Salamon and his son, David Salamon in the United States Bankruptcy Court for the Eastern District of New York, no portion of the $6,500,000 loan was repaid. See, generally, Bankr. E.D.N.Y., Adv. Pro. No. 19-1120-CEC, Dkt. No. 1.

4

Upon her appointment in June 2019, the Trustee commenced an expansive investigation into the Debtor's financial affairs and the facts and circumstances surrounding the transfers of the Properties. Among other things, the Trustee and counsel reviewed thousands of pages of documents, including all pleadings filed in this case and the adversary proceeding commenced on March 29, 2019 by unretained counsel on behalf of the Debtor, documents turned over by Levine, documents turned over by Suffern, land records and Secretary of State filings. The Trustee and her counsel met with Salamon and his counsel, including Levine, Kevin Nash, Esq. ("Nash"), and Gary Ginsberg, Esq., and Suffern and its counsel. The Trustee and/or her counsel participated in conference calls with Debtor's counsel of record, Salamon's counsels, CPIF's counsel, LPA's former counsel, and others. Trustee's counsel conducted the Bankruptcy Rule 2004 examination of Treff & Lowy PLLC by Joseph Treff, Esq. ("Treff") and participated in the examination of David Fleischmann, Esq. ("Fleischmann"). The Trustee also examined Salamon under oath at a lengthy meeting of creditors. See Dkt. No. 142 (transcript).

While the UST Objection and Salamon Objections infer that the Trustee's investigation was insufficient to reach the proposed resolution with Suffern, the Trustee and counsel analyzed all of the facts and circumstances surrounding the Debtor's acquisition of title to the Properties, the Debtor's transfer of title to the Properties to RS Old Mills RD LLC and RS Old Mills RD LLC's subsequent transfer of title to the Properties to Suffern. The Debtor, Debtor's counsels (including Levine) and Salamon were well aware of and intimately involved in these transactions. While other aspects of the Trustee's investigation are ongoing, the Trustee concluded in her best business judgment that the settlement embodied in the Stipulation is fair, reasonable and in the best interests of the Debtor's estate.

Under the Stipulation, a $2,500,000 Claim Fund is established for the payment of all administrative and/or allowed claims against the Debtor's estate, which $2,500,000 was paid to the Trustee.[4] In exchange, the Trustee agreed to seek section 363(m) approval of the Debtor's 2017 transfer of the Properties to RS Old Mills RD LLC and to release with prejudice any claim of the Debtor against Suffern with respect to Suffern's title to the Properties. No other claims are waived or released under the Stipulation. Thus, to the extent improprieties occurred before the Trustee's appointment, the United States Trustee may pursue its claims and the Trustee may pursue other claims.[5] Likewise, to the extent there is a dispute among equity in Suffern, the parties can continue their fight in whatever other forum they chose.

The only issue properly before this Court is approval of the Stipulation between the Trustee and Suffern, including approval of the Debtor's transfer of the Properties to RS Old Mills RD LLC. The Trustee's business judgment was sound and reasonably exercised when entering into the Stipulation. There is nothing in the Objections that causes the Trustee to alter her business judgment. In fact, the intensity, volume and detail of the Salamon Objections reinforces the Trustee's decision to enter into the Stipulation and leave the state court to resolve what is clearly an equity dispute over the ownership of Suffern. The agreement embodied in the Stipulation falls well above the lowest point in the range of reasonableness and should be approved.

---

[4] The Trustee notes that, while the claims register currently reflects filed claims totaling $7,500,000 (excluding Suffern's claims, duplicates and withdrawn or paid claims), the filed claims are inconsistent with the Debtor's schedules, testimony and documentary evidence. Many recently-filed claims appear to be directly or indirectly against third parties including, but not limited to, Salamon and Suffern. See, e.g., claim 17-1 filed by Continental Kosher Catering Inc. The Trustee reserves all rights and objections with respect to all claims filed.

[5] For example, Debtor's retained counsel of record was paid $118,000 on September 13, 2017 without a corresponding fee application or Order of the Bankruptcy Court. See Dkt. No. 111 at p. 4, ¶18; 111-1 at p. 3.

6

## SUPPLEMENTAL BACKGROUND[6]

1.      By application filed on March 17, 2017, the Debtor sought to employ Pick & Zabicki LLP as its counsel. See Dkt. No. 18. The application was signed by Yoel Kaufman, the manager of the Debtor who also signed the Debtor's voluntary petition. Compare id., with Dkt. No. 1. The application includes a Lar Dan Affidavit by Piotr Marcinek ("Marcinek") of Stealth eCommerce Ltd. See Dkt. No. 18-2. By Order dated April 10, 2017, the application was approved. See Dkt. No. 30.

2.      By Order dated July 13, 2017 ("July 2017 Order"), the Court authorized and approved the Debtor's assumption of the Agreement of Sale and directed the Debtor to close within ten (10) business days of the entry of the Order. See Dkt. No. 45.

3.      By motion dated July 21, 2017 ("Bridgewater Motion"), Bridgewater Capital Partners ("Bridgewater") sought entry of an Order, inter alia, amending the July 2017 Order and/or providing relief from the July 2017 Order for certain loan documents to be finalized. See Dkt. No. 46.

4.      On July 26, 2017, the Debtor filed a joinder to the Bridgewater Motion. See Dkt. No. 50. On that same date, Novartis objected to the Bridgewater Motion. See Dkt. No. 51 (as corrected on July 27, 2017 by Dkt. No. 52).

5.      Following a contested hearing on July 27, 2017, see Dkt. No. 62, the Court issued an Order on August 14, 2017 ("August 27 Order") amending the July 2017 Order. See Dkt. No. 53. The August 27 Order provides that the Debtor and Novartis "shall close on the Agreement of Sale . . . on or before August 17, 2017." See id.

---

[6] The Trustee incorporates the procedural and factual background set forth in the Motion as if fully set forth herein.

6. On August 16, 2017, Debtor's counsel filed a letter requesting, inter alia, an extension of the Debtor's deadline to close. See Dkt. No. 56. On that same date, a letter was also filed by Landrigan allegedly on behalf of the Debtor also requesting, inter alia, additional time for the Debtor to close. See Dkt. No. 57.

7. On August 18, 2017, the Debtor filed a motion to enforce the Agreement of Sale and compel specific performance by Novartis ("Motion to Compel"). See Dkt. No. 58. The Motion to Compel was supported by a declaration of Salamon detailing, inter alia, the Debtor's and Bridgewater's joint efforts to close with Novartis. See Dkt. No. 58-1.

8. On August 21, 2017, Novartis objected to the Debtor's Motion to Compel and argued, inter alia, that Novartis had reasonable doubts over the Debtor's ability to close. See Dkt. No. 59.

9. On August 23, 2017, Levine commented on a proposed e-mail concerning the Debtor's ability to sell the Properties and added that "Bankruptcy Court approval for these transactions is, therefor, not required under the Bankruptcy Code." See **Exhibit A**. On that same date, Debtor's counsel sent the revised e-mail to, among others, the title company and counsel to Novartis. See **Exhibit A**.

10. On August 31, 2017, the Suffern Equity Agreement was at least partially executed. See **Exhibit C**.

11. By *Bargain and Sale Deed With Covenant Against Grantor's Acts* dated as of September 1, 2017 and recorded on September 14, 2017, title to the Properties was transferred from Novartis to the Debtor. See **Exhibit D**. The recorded deed was to be returned to Landrigan, Debtor's purported but unretained real estate counsel. See id. Salamon executed the RP-5217 on behalf of the Debtor. See id. The Debtor has conceded that approximately $15,500,000 of the

funds used to close on the sale were provided by CPIF. See Adv. Pro. No. 19-8243, Dkt. No. 1 at p. 27, ¶102.

12. By *Bargain and Sale Deed With Covenant Against Grantor's Acts* dated as of September 5, 2017 and recorded on September 14, 2017, title to the Properties was transferred from the Debtor to an entity known as RS Old Mills RD LLC. See **Exhibit B**. Salamon executed the deed and RP-5217 on behalf of the Debtor. See id.

13. By *Bargain and Sale Deed With Covenant Against Grantor's Acts* dated as of September 5, 2017 and recorded on September 14, 2017, title to the Properties was transferred from non-debtor RS Old Mills RD LLC to Suffern. See **Exhibit E**. Avrohom Kaufman (Salamon's brother-in-law) executed the deed and RP-5217 on behalf of non-debtor RS Old Mills RD LLC. See id.

14. Suffern secured a $33,000,000 loan from CPIF to purchase and develop the Properties and the related mortgage was filed against the Properties on September 14, 2017. See **Exhibit F**. Suffern also put up two income-generating properties in Brooklyn as additional collateral to secure the funds needed to carry the Properties. See id. at pp. 2-3. Suffern's principal Reisman personally guaranteed the $33,000,000 loan from CPIF. See **Exhibit G**.

15. For purposes of clarity, it is important to note that, to lend the $33,000,000 to Suffern, CPIF required additional property as collateral and a show of equity. Accordingly: (a) Reisman gave CPIF a first mortgage to separate parcel of real property that she owns in Brooklyn, New York; and (b) a $12,500,000 short-term loan was made and repaid within 3 days of the closing.[7]

---

[7] As set forth more fully below, Treff testified at his Bankruptcy Rule 2004 examination and documentary evidence supports that $12,500,000 was borrowed by a third-party (Michael Bleich) from Treff's client and returned within 3 days by Landrigan.

16. On October 2, 2017, more than 3 weeks after the Debtor through Salamon transferred its title to the Properties to non-debtor RS Old Mills RD LLC, Levine sent an e-mail to Landrigan and Douglas J. Pick, Esq. ("Pick"), a copy of which is annexed as **Exhibit H**. Levine's e-mail provides "I hope to conclude this tonight so that we can file the motion to dismiss the CH 11 case." See id. Levine's e-mail included a copy of an earlier message sent to, inter alia, counsel to Suffern and members of Bridgewater that provides, inter alia, "[t]he only 'nonsense' that I see is your client's refusal to comply with its contractual obligations to convey the 65% membership interest to my client or its designees." See id. The attachment to Levine's email is a document titled Escrow Agreement among Reisman, David Salamon, the Debtor and Fleischmann. (as escrow agent). See id. Schedule 3 to the Escrow Agreement is a proposed Consent Order Dismissing Chapter 11 Case. See id.

17. By Supplemental Notice of Presentment dated November 7, 2017, the Debtor noticed the presentment of a proposed consent Order dismissing its Chapter 11 case ("Proposed Dismissal Order"). See Dkt. No. 71. The Proposed Dismissal Order was presented to the Court by Debtor's retained counsel and signed by all scheduled creditors of the Debtor[8] and the United States Trustee. See id. The Proposed Dismissal Order was never entered.

18. As evidenced by the e-mail chain annexed as **Exhibit I**, negotiations between Levine and Fleischmann over the proposed Escrow Agreement continued through at least December 2017. In an e-mail dated December 5, 2017, Levine indicated that "if the matter is going to be settled (in lieu of the motion to dismiss [the Debtor's] bankruptcy case being withdrawn and other actions taken [sic]), we need to have a signed agreement by the 13th." See id.

---

[8] It is worth noting that a "Peter" Marcinek signed the Proposed Dismissal Order for alleged creditor Romaro. See Dkt. No. 71 at p. 3. Upon information and belief Peter Marcinek is Piotr Marcinek who signed the Lar Dan affidavit in connection with Debtor's counsel's employment application and an Affirmation on behalf of LPA (as set forth more fully in paragraph 19 below).

10

Upon information and belief, no agreement was reached and the parties were before the Rabbinical Court.

19. On or about July 25, 2018, Marcinek filed an Affirmation in an action captioned *Lone Pine Associates, LLC v. ISSM Protective Services Inc.* in the Supreme Court of the State of New York, County of Rockland under Index No. 034447/2018 ("Marcinek Affirmation"). See **Exhibit J**. Marcinek, who also executed the Lar Dan Affidavit in support of Debtor's counsel's employment in this case, affirms that he is an agent of LPA. See id. at p. 1. According to the Marcinek Affirmation, "[a] dispute presently exists between LPA and the record owner of the [Properties], Suffern . . . regarding ownership percentages for the [Properties]." See id. at 1, fn 1. The Marcinek Affirmation was notarized by Levine. See id. at p. 6. Levine was counsel to LPA in that action.

20. On March 29, 2019, the Debtor commenced the adversary proceeding ("Adversary Proceeding") through unretained co-counsel, Levine and Nash against, among others, Suffern, CPIF, Fleischmann and Landrigan. See, generally, Adv. Pro. No. 19-8243, Dkt. No. 1. Several defendants (including Suffern and CPIF) filed motions to dismiss the Debtor's Adversary Proceeding. See id. at Dkt. Nos. 8, 13, 29.

21. At a hearing conducted on June 4, 2019, the Court determined that conversion of the Debtor's case to one under Chapter 7 of the Bankruptcy Code was in the best interests of creditors. Serious allegations concerning the Debtor's conduct during the Chapter 11 period were raised including, inter alia, whether creditors of the Debtor's estate were paid.

22. By Order dated June 5, 2019, the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code on June 5, 2019. See Dkt. No. 102.

11

23. On June 7, 2019, the Trustee was appointed as Chapter 7 Trustee of the Debtor's estate. See Dkt. No. 103.

24. On July 10, 2019, Trustee's counsel conducted the Bankruptcy Rule 2004 examination of Joseph Treff, Esq. ("Treff"). Treff testified, inter alia, that he represented a client of his firm in connection with a short-term $12,500,000 loan his client made to Michael Bleich. See **Exhibit K** (excerpts of transcript) at pp. 9, 13. Treff testified that his client was Accurate Funding (exact name subject to verification) and that the individual involved with Accurate Funding was Simon Ganz ("Ganz"). See id. at pp. 10-11. Treff testified that the $12,500,000 loan plus a $500,000 origination fee for the loan was paid to him. See id. at pp. 25-26.

25. On July 15, 2019, the Trustee and her counsel attended the deposition of Fleischmann. Fleischmann testified that he represented, among others, Suffern and Reisman in connection with Suffern's acquisition of the Properties. See **Exhibit L** (excerpts of transcript) at pp. 16-17. Fleischmann identified, inter alia, 5 transfers from Treff & Lowy, PLLC each in the amount of $2,100,000 and 1 transfer from Ganz for $2,000,000 (for a total of $12,500,000) on a document titled "Flow Of Funds" attached to the Settlement Statement dated September 6, 2017. See id. at pp. 55-56 and **Exhibit M**. Fleischmann testified, inter alia, that he recalled an entity "something with the name Lone Pine" was involved in the deal. See **Exhibit L** at p. 63, lines 18:22. Fleischmann testified that Moshe Stern[9] was directing the "Salamon side" of the transaction, which included Salamon, David Salamon, Avrohom Kaufman and LPA, and that he

---

[9] Upon information and belief, Moshe Stern is also known Mark Stern and Moishe Stern and is no stranger to the courts, having been previously implicated in other mortgage fraud schemes and criminal matters. See, e.g., https://www.forbes.com/sites/nathanvardi/2010/11/02/the-man-who-personally-owes-citigroup-126-million/#2e46778d25e0 (last accessed October 1, 2019); https://www.lohud.com/story/news/local/westchester/2014/02/25/man-convicted-in-mortgage-fraud-orchestrated-by-monsey-resident-/5819805/ (last accessed October 1, 2019); http://www.totpi.com/monsey-fbi-informant-moshe-moses-stern-tied-rockland-county-judge-sherri-eisenpress/ (last accessed October 1, 2019);https://www.lohud.com/story/news/local/rockland/2014/06/04/defense-lawyers-attack-monsey-informant-ny-pols-trial/9979897/ (last accessed October 1, 2019).

12

was involved in discussions with them. See id. at pp. 64-65. When questioned about the Suffern Equity Agreement and whether he recalled a change in the structure of the transaction where RS Old Mills Road LLC came in as an intermediary, Fleischmann testified that "I don't think there was a change. I think that was the plan all along, to have an intervening party." See id. at pp. 73-74. Fleischmann further testified that "I think there was an agreement as to what should have happened, which didn't happen and the agreement is over" and went on to detail some of the terms of the agreement. See id. at pp. 81-82.

26.    On July 16, 2019, the Trustee conducted the 341(a) meeting of creditors. See, generally, Dkt. No. 142-1. Salamon testified on behalf of the Debtor at the meeting of creditors. See id. While initially Salamon testified that he did not know where the $2,500,000 deposit paid to Novartis in connection with the Debtor's purchase of the Properties came from, see id. at p. 12, upon further questioning by the Trustee, Salamon testified that funds came from an account in the name of his son, David Salamon, see id. at p. 44-45. Salamon further testified the $2,500,000 came from a closing on another piece of property that is subject to litigation in state court. See id.

27.    It is the Trustee's understanding that the $2,500,000 was paid from the $6,500,000 loan from Galster Funding, LLC ("Galster") to 4921 12th Avenue LLC. Galster sued, among others, Salamon, David Salamon and Salamon's company, 4921 12th Avenue LLC, in the Supreme Court of the State of New York, County of Kings, captioned *Galster Funding, LLC v. Yehuda Salamon, et al.*, under Index No. 520434/2016. Levine represents all defendants (except 1 bank) in that action. Galster alleged, among other things, that proceeds from its $6,500,000 loan were used to purchase the Properties from Novartis. See, e.g., id. at NYCEF Doc. No. 308.

28.    On or about December 20, 2018, a voluntary petition under Chapter 11 was filed for defendant 4921 12th Avenue LLC in the United States Bankruptcy Court for the Eastern

13

District of New York. See Bankr. E.D.N.Y. Case No. 18-47256-CEC, Dkt. No. 1.[10] The $6,500,000 Galster loan is now the subject of a recently-commenced adversary proceeding in that Chapter 11 case in which Salamon, his son David Salamon, and their companies, Yidel's Shopping Cart, Inc., E-Commerce Expand, LLC, Yidel's Online Food Station, LLC, and Riverstone, USA, LLC are defendants. See generally Bankr. E.D.N.Y. Adv. Pro. No. 19-1120-CEC, Dkt. No. 1. The complaint alleges that 4921 12th Avenue LLC borrowed $6,500,000 from Galster and the loan proceeds were fraudulently diverted into various entities owned or controlled by Salamon and his son, David Salamon. See id.

29. On August 20, 2019, the Motion was filed with the Court. See Dkt. No. 138.

30. On September 3, 2019, the hearing on the Motion was adjourned from September 13, 2019 to October 4, 2019 based upon a request from Douglas T. Tabachnik, Esq. ("Tabachnik") on behalf of LPA. See Dkt. No. 140.

31. On September 11, 2019, Tabachnik filed an application to withdraw as counsel to LPA, which included a request for an adjournment of the hearing on the Motion purportedly to afford LPA time to obtain substitute counsel. See Dkt. No. 141 at pp. 2-3 ¶7; 141-2 at p. 2, ¶15.

32. On September 20, 2019, the UST Objection was filed with the Court. See Dkt. No. 145.

33. On September 27, 2019, the Romaro Objection, Beauty Brags Objection, El City Objection and Ell City Objection were each filed with the Court. See Dkt. Nos. 150-153. These objections (which were filed by the same counsel) are virtually identical and consist of 2 paragraphs, one of which is not a complete sentence. No factual or legal basis for any of these objections is given. See, generally, id.

---

[10] Notably, Salamon signed the voluntary petition for 4921 12th Avenue LLC and Levine signed as counsel. See Case No. 18-47256-CEC.

34. On September 27, 2019, an objection to the Motion was filed by Pryor & Mandelup, L.L.P. on behalf of Salamon. See Dkt. No. 149. On September 29, 2019, a supplemental objection to the Motion was filed by Levine and Nash on behalf of Salamon. See Dkt. No. 154.

## REPLY

35. The Court should consider three arguments in assessing the Objections. First, the Trustee and counsel conducted an extensive analysis into the facts and circumstances surrounding the transfer of the Properties. The Trustee concluded in her reasonable business judgment that the settlement embodied in the Stipulation is in the best interests of the Debtor's estate and merits approval. Second, the "offer" from Salamon is not more favorable than the settlement embodied in the Stipulation and is not one the Court is likely to approve. Third, the settlement embodied in the Stipulation is narrowly tailored. The issues raised by the United States Trustee with respect to certain improprieties during the Chapter 11 period can be addressed in this Court. Likewise, the issues raised by Salamon may still be raised and litigated in another forum.

**A. The Trustee Completed Her Investigation With Respect to the Transfer of the Properties and the Limited Settlement Embodied in the Stipulation and The Stipulation Merits Approval**

36. As set forth above, the Trustee commenced an expansive investigation upon her appointment in June 2019. Among other things, the Trustee and counsel reviewed thousands of pages of documents including, but not limited to, documents turned over by Levine, documents turned over by Suffern, pleadings filed in this Court, land records and Secretary of State filings. The Trustee and her counsel met with Salamon and his counsels and Suffern and its counsel. The Trustee and/or her counsel participated in numerous conference calls with, among others, Debtor's counsel of record, Salamon's counsels, Suffern's counsel, CPIF's counsel, and LPA's

former counsel. The Trustee and counsel conducted the examination of Treff and participated in the examination of Fleischmann. The Trustee also examined Salamon under oath at a lengthy meeting of creditors. See Dkt. No. 142. In sum, the Trustee and counsel analyzed all of the facts and circumstances surrounding the Debtor's acquisition of title to the Properties, the Debtor's transfer of title to the Properties to RS Old Mills RD LLC and RS Old Mills RD LLC's subsequent transfer of title to the Properties to Suffern.

37. The Trustee completed her investigation with respect to the transfer of the Properties and the limited settlement embodied in the Stipulation. The Trustee concluded in her business judgment that the longer there is a cloud on title to Properties, the more the value of the Properties diminishes and any ultimate victory in the Adversary Proceeding with respect to the Properties would be pyrrhic. While Salamon's initial objection includes an appraisal purporting to value the Properties between $115,000,000 and $144,000,000, the June 26, 2018 appraisal prepared for LPA does not value the Properties "as-is" and instead makes extraordinary assumptions, none of which occurred here. See Dkt. No. 149-1 at p. 2.

38. The Court is not a super-trustee tasked with administering a debtor's estate. To approve the settlement embodied in the Stipulation, this Court must determine whether the settlement is fair, equitable and in the best interests of the estate. See In re Drexel Burnham Lambert Grp., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968)). The Second Circuit outlined the factors to be considered for approval of settlements under Bankruptcy Rule 9019 in Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452 at 462 (2d Cir. 2007).

16

39. Resolution of broad litigation is a primary factor to examine when determining whether a proposed settlement should be approved. See In re MF Global Inc., 2013 Bankr. LEXIS 427, *12-13 (Bankr. S.D.N.Y. January 31, 2013) (approving settlement on several grounds, the first of which was that continued litigation "would be complex and expensive, and would divert significant estate resources"); In re Dewey & Leboeuf L.L.P., 478 B.R. 627 at 642-43 (Bankr. S.D.N.Y. 2012) (approving settlements in large part based on resolution of uncertainty of anticipated future complex and protracted litigation); In re Schwartz, 480 B.R. 808, 810-11 (Bankr. W.D. Ky. 2012) (approving settlement under TMT Trailer factors and finding that "complexity of . . . litigation, the expense, the inconvenience and delay" factor weighed heavily in favor of approving settlement notwithstanding strong probability on success and collectability); In re Bay W. Kailua Bay, L.L.C., 2012 Bankr. LEXIS 5363, 2012 WL 5844806, *12-14 (Bankr. D. Haw. Nov. 15, 2012) (finding in approving proposed settlement that probability of success on litigation being settled was uncertain); In re Hildreth, 2012 Bankr. LEXIS 4627, *14-20 (Bankr. N.D. Iowa October 1, 2012) (finding that even though a high likelihood of success may exist, delays incident to further delays of three-year old case weighed in favor of approval of settlement).

40. Additionally, a court's evaluation of a settlement includes consideration of the opinion of counsel and the trustee supporting such a settlement. See MF Glob., 2013 Bankr. LEXIS 427 at * 13 (approving settlement after giving weight to "the opinion of bankruptcy counsel supporting the settlement".); see also In re Hildreath, 2012 Bankr. LEXIS, at * 16. A trustee's business judgment plays a role in the settlement of a claim that is property of the Chapter 7 bankruptcy estate. See United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.),

17

289 B.R. 269, 283 (B.A.P. 1st Cir. 2003) ("Compromises are generally approved if they meet the business judgment of the trustee.")

41. A bankruptcy court, however, should not conduct "mini-trials" on the merits of a proposed settlement. See Liberty Towers Realty, L.L.C. v. Richmond Liberty, L.L.C., 569 B.R. 534 at 539 (E.D.N.Y. 2017) (citations omitted). "[A] bankruptcy judge need not decide the numerous questions of law and fact raised by the settlement, but rather, should 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Bildirici v. Kittay (In re E. 44th Realty, LLC), No. 05 BR 16167, 2008 LEXIS 7337, 2008 WL 217103, at *8 (S.D.N.Y. Jan. 23, 2018) (quotations omitted).

42. In this case, the Trustee concluded in her best business judgment that the settlement embodied in the Stipulation is fair, reasonable and in the best interests of the Debtor's estate. The Trustee's business judgment was sound and reasonably exercised when entering into the Stipulation, and the settlement falls well above the lowest point in the range of reasonableness. See generally Motorola, Inc., 478 F. 3d 452; In re Drexel Burnham Lambert Grp., 134 B.R. 493. The Stipulation should be approved.

**B. The "Offer" From Salamon is not in the Best Interests of the Debtor's Estate**

43. While the "offer" from Salamon disclosed in the objection filed on September 27, 2019 appears to be higher in amount ($2,600,000), it is not comparable or analogous to the settlement embodied in the Stipulation. Indeed, Salamon's offer is for the sale of the estate's rights to pursue the Adversary Proceeding and all of the estate's claims against Salamon. See Dkt. No. 149 at p. 7, ¶24.

44. Among other infirmities, Salamon's offer does not address the substantial claim that would arise against the Debtor's estate in the unlikely event Salamon overcame Suffern's

motion to dismiss the Adversary Proceeding and obtained a final, non-appealable judgment setting aside the deed transferring title of the Properties to Suffern. Suffern has already filed proof of a contingent, secured, administrative, unliquidated claim in an amount not less than $33,000,000. See Claim 16-1.

45. What is clear is from Salamon's offer is that Salamon, after causing the Debtor to transfer title to the Properties to RS Old Mills RD LLC and unsuccessfully negotiating a resolution of his equity dispute through Levine and then through the Rabbinical Court, now intends to use this Court to pursue his equity dispute with Suffern. A bankruptcy court is not, however, a forum for litigation in perpetuity and settlements that minimize costly litigation and expedite the administration of a bankruptcy estate are favored. See In re MF Glob., Inc., 2012 Bankr. LEXIS 3701, 2012 WL 3242533 (Bankr. S.D.N.Y. August 10, 2012); In re Dewey & LeBoef L.L.P., 478 B.R. 627 at 640 (Bankr. S.D.N.Y. 2012).

46. The "offer" from Salamon is not in the best interests of the Debtor's estate. The Trustee's business judgment to reject the offer from Salamon is sound and reasonably exercised.

### C.   The Settlement Is Narrowly Tailored

47. Under the Stipulation, in exchange for establishing the Claim Fund, the Trustee agreed to seek section 363(m) approval of the Debtor's September 2017 transfer of the Properties to RS Old Mills RD LLC and to release with prejudice any claim of the Debtor against Suffern with respect to Suffern's title to the Properties. No other claims are waived or released under the Stipulation. In fact, the Stipulation expressly provides that it does not release any claims that equity holders may have against Suffern or any other individual or entity. See Dkt. No. 138-1 at p. 5, ¶5.

48.  The settlement embodied in the Stipulation is narrowly tailored. To the extent improprieties occurred before the Trustee's appointment, the United States Trustee may pursue its claims and the Trustee may pursue other claims. To the extent there is a dispute among equity in Suffern, the parties may continue their fight in whatever other forum they chose.

49.  The agreement embodied in the Stipulation falls well above the lowest point in the range of reasonableness and should be approved. The Stipulation should be approved.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order overruling the Objections and granting the relief requested in the Motion, together with such other and further relief as may be just.

Dated: October 1, 2019
Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
Counsel to Marianne T. O'Toole, as Chapter 7 Trustee of the Estate of RS Old Mill, LLC

By:  *s/ Salvatore LaMonica*
Salvatore LaMonica, Esq.
Holly R. Holecek, Esq.
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500