**HAHN & HESSEN LLP**
Gilbert Backenroth
Stephen J. Grable
Steven R. Aquino
488 Madison Avenue
New York, New York 10022
Telephone: 212-478-7200
Fax: 212-478-7400

*Attorneys for Suffern Partners LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 17-22218 (RDD) |
| | Chapter 7 |
| RS OLD MILL, LLC, | |
| | Hearing Date: |
| Debtor. | **October 4, 2019, at 10:00 a.m.** |

### RESPONSE OF SUFFERN PARTNERS LLC IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION, PURSUANT TO BANKRUPTCY CODE §§ 105(A), 363(B)(1) AND 363(M) AND BANKRUPTCY RULES 2002, 6004 AND 9019, TO APPROVE SETTLEMENT AND SALE OF PROPERTIES

1. The Chapter 7 Trustee, Marianne T. O'Toole, seeks this Court's approval of a Stipulation of Settlement entered into with Suffern Partners LLC ("Suffern"), pursuant to which it provided a $2.5 million "Claim Fund" to satisfy any creditor claims and which ultimately will enable finality to be achieved in this long-standing bankruptcy proceeding.[1] The proposed settlement reflects the Chapter 7 Trustee's exemplary diligence and prudence, as she demanded in negotiations that the Debtor give up virtually ***nothing*** in exchange for the substantial consideration from Suffern. Specifically, the settlement obligates the Debtor only to:

---

[1] Terms not otherwise defined herein shall have the meanings given to them in the Chapter 7 Trustee's motion. *See* ECF Nos. 138, 138-1, and 138-2.

(a) secure *nunc pro tunc* Court approval of Debtor's own knowing and willful transfer of the Properties to RS Old Mills RD, LLC, as the Debtor should have done more than two years ago;

(b) secure a Bankruptcy Code § 363(m) finding in favor of RS Old Mills RD, LLC, through which Suffern received title to the Properties and was induced by the Debtor to take on a $33 million debt obligation; and

(c) dismiss the unauthorized Adversary Proceeding complaint – which testimony from the Debtor's 100% sole member and principal, Yehuda Salamon, confirmed is frivolous and should never have been filed – without prejudice and thus reserving the Chapter 7 Trustee's rights to pursue any claims she determines appropriate.

2. Objections have been filed premised upon erroneous factual assumptions and deficient legal positions, advanced by (1) the US Trustee (*see* ECF No. 145); and (2) Yehuda Salamon (*see* ECF Nos. 149 & 154). For the reasons detailed herein, as well as in the robust record already before this Court, Suffern respectfully submits that this Court should approve the Chapter 7 Trustee's motion without delay.[2]

**I.**

**SUFFERN DID NOT "COLLUDE" IN THE DEBTOR'S FAILURE TO SECURE BANKRUPTCY COURT APPROVAL TO TRANSFER THE PROPERTIES, BUT RATHER WAS A GOOD FAITH PURCHASER FOR VALUE**

**A. Suffern Was and Remains a Good Faith Purchaser of the Properties**

3. The principal objection to the settlement is that it is contingent upon a Bankruptcy Code § 363(m) finding that RS Old Mills RD, LLC – through which Suffern was assigned the Properties – obtained title to the Properties in "good faith." The US Trustee suggests that such finding cannot be granted given Suffern's "apparently knowing participation in a sale of estate property without" Court approval. *See* ECF No. 145 ("UST Objection"), pp. 1-2. Yehuda Salamon's objection goes even further, claiming that the

---
[2] Objections also were filed by "Romaro LLC," Beauty Braggs," "El City," and "Ell City LLC," each of which purport to be a creditor herein. *See* ECF Nos. 150, 151, 152, 153. However, none of those objections actually assert any factual or legal basis for challenging the Chapter 7 Trustee's motion. *See id.*

2

"integrity" of the Court is at stake given purported violations of the Bankruptcy Code § 362 stay, in addition to the § 363 sale approval requirements. *See* ECF No. 154 ("Levine Objection"), ¶¶ 33-49. But the stipulation provides for a § 363(m) finding in favor of RS Old Mills RD, LLC, through which Suffern was a good faith taker, and it is the very integrity of this Court that actually **requires** a § 363(m) finding in favor of Suffern.

4. First, Debtor's own counsel expressly opined **prior to** the transaction that Court approval would not be required. *See* Ex. A. Indeed, Michael Levine, Esq., who has signed Mr. Salamon's objection now claiming the transfer cannot be approved *nunc pro tunc* because Debtor's own conduct was not in the "ordinary course," specifically offered additional language to an email drafted by Douglas Pick, Esq., for sending to Suffern's title insurer, that the transaction was in the ordinary course and "**Bankruptcy Court approval for these transactions is, therefor[e], not required under the Bankruptcy Code.**" *Compare* Ex. A *with* Levine Objection, p. 8 n. 7 ("Clearly, the sale of the entirety of a Debtor's assets is a transaction outside of the ordinary course of business."). The documentary evidence is uncontroverted and demonstrates that Debtor's own counsel induced both Suffern and its title insurer, Old Republic National Title Insurance Company ("Old Republic"), to accept that Court approval was not required for RS Old Mills RD, LLC to receive transfer of the Properties from the Debtor, or for Suffern to receive such Properties from RS Old Mills RD, LLC. *See* Ex. A. For Mr. Levine and his client Yehuda Salamon to now aver that Suffern engaged in a "carefully calculated and engineered scheme to directly defraud this Court" is the height of hypocrisy and a sanctionable misrepresentation. *See* Levine Objection, ¶ 4.

5. Second, Suffern obtained and relied upon a separate legal opinion of its own attorney, David Fleischmann, Esq., who advised that Bankruptcy Court approval was not

required.  *See* Ex. B, ¶ 5.  Notably, the deed from RS Old Mills RD, LLC to Suffern also was executed by Mr. Salamon's brother-in-law, Avroham Kaufman, confirming that Yehuda Salamon was aware of and effectuated a willful transfer of the Properties by and through RS Old Mills RD, LLC to Suffern as the ultimate title holder.  *See* Ex C.  Further thereto, Suffern received and relied upon a $30 million title insurance policy from Old Republic as further confirmation that Suffern was receiving marketable title to the Properties after transfer through RS Old Mills RD, LLC, and that Bankruptcy Court approval was not required.  *See* Ex. D.

6. Third, Suffern actually paid real and substantial value for the Properties. Specifically, Suffern took on a $33 million debt to CPIF Lending, LLC ("CPIF"), which included the requirement that Suffern provide additional collateral comprised of real property in Brooklyn that was worth millions of dollars.  *See* Ex. E.  Suffern's then-principal, Goldie Reisman, also provided a personal guarantee for the $33 million obligation.  *See* Ex. F.  These obligations only continue to grow, as the Properties require approximately $1 million a month in debt and servicing obligations, all of which Suffern has been incurring as the record title-holder of the Properties since September 2017.  *See* Ex. G, ¶ 4.

7. Fourth, as Mr. Salamon's own objection confirms, Suffern's purchase of the Properties was actually the best and only viable offer after a competitive bidding process, which included large publicly-traded companies like Merlin Entertainments (the builder of Legoland theme parks) and international manufacturers like Intercos (a leading global supplier of makeup and skincare components).  *See* ECF No. 149 ("Giuliano Objection"), Appraisal, p. 2.  Any suggestion that the Properties have a value of $115 million or more,

and could have realized substantially more value to the estate, is belied by Yehuda Salamon's own submission. *See id.*

8. Because these facts are not disputable, the objections argue that Debtor's transfer of the Properties was void *ab initio* or is otherwise now voidable, and that Court approval cannot be granted on a *nunc pro tunc* basis as a matter of law. *See* Levine Objection, ¶ 16 n. 7; UST Objection, p. 9. However, applicable statutory and case authority demonstrates that the settlement's requested *nunc pro tunc* approval is permissible and appropriate, and Bankruptcy Courts routinely grant relief on a *nunc pro tunc* basis. *See, e.g.,* 11 U.S.C. § 105(a) (authorizing Court "to issue any order, process, or judgment that is necessary or appropriate"); *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 455 (1940) ("A bankruptcy court is a court of equity, and is guided by equitable doctrines and principles."); *In re Valid Value Props., LLC*, No. 16-13299, 2017 Bankr. LEXIS 27 (Bankr. S.D.N.Y. Jan. 5, 2017) (approving *nunc pro tunc* modification of automatic stay to permit sale of debtor's property, given principal's failure to fulfill basic fiduciary obligations to the estate); *In re Brown*, No. 07 B 22631, 2007 Bankr. LEXIS 4194 (Bankr. S.D.N.Y. Nov. 29, 2007) (approving *nunc pro tunc* relief from § 362 automatic stay to approve and ratify creditor's foreclosure sale of debtor's assets); *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 813 (Bankr. N.D.N.Y. 1989) (noting that court approved a sale of the debtor's assets *nunc pro tunc*, after the debtor sold the assets without having sought Court approval).

9. A *nunc pro tunc* approval is particularly appropriate in this instance, where the transaction occurred on an emergency basis because the Court-ordered deadline for Debtor to close on purchase of the Properties from Novartis had already expired, and Debtor thus risked an outright forfeiture of its $2.5 million deposit. *See* ECF Nos. 53, 60.

10. Moreover, a Debtor's sale of property can be approved through a Rule 9019 application, as the compromise of a claim is one and the same as a § 363 sale. *See In re Cooper*, 592 B.R. 469, 480 (S.D.N.Y. 2018) (stating that transfer of asset approved by Rule 9019 settlement "constitute[d] a 'sale' for the purposes of section 363(m)"); *see also In re Mickey Thompson Entm't Group, Inc.*, 292 B.R. 415, 421 (9th Cir. 2003) ("the disposition by way of 'compromise' … is the equivalent of a sale …, which transaction simultaneously implicates the 'sale' provisions under section 363"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (settlement agreement "compromised an asset of the debtors' estate" that "ventured beyond the … ordinary course of business prior …, thereby implicating Section 363"); *In re Dow Corning Corp.*, 198 B.R. 214, 222 n.7 (E.D. Mich. Bankr. 1996) ("settlements are the same as … a sale of the Debtor's assets pursuant to § 363");

11. Courts also routinely hold that § 363(m) can apply even if a sale takes place privately, without public bidding. *See, e.g., In re Berkeley Del. Court, LLC*, 834 F.3d 1036, 1041 (9th Cir. 2016) ("Where … a bankruptcy court invokes § 363 for a sale of claims pursuant to a settlement agreement, all parties are bound by § 363(m)'s requirement to seek a stay regardless of whether an outside party makes a bid on the sale"); *Cooper*, 592 B.R. at 480 ("Whether the transfer is effectuated pursuant to a settlement agreement, a public auction, or a private sale is largely immaterial to the section 363(m) analysis."); *In re Pritam Realty, Inc.*, 233 B.R. 619, 624 (D.P.R. 1999) (finding § 363(m) applicable to private sale of debtor's property); *In re Wieboldt Stores, Inc.*, 92 B.R. 309, 312 (N.D. Ill. 1988) ("The fact that the transfer did not result of competitive bidding is also not dispositive. Section 363(b) is not limited to sales involving competitive bidding."); *In re Pisces Lending Corp.*, 66 B.R. 671,

673 (E.D.N.Y. 1986) (noting transfer of property pursuant to a settlement agreement was a "sale" and invoking § 363(m) to dismiss as moot an appeal of order approving settlement).

12. Notably, Mr. Salamon and the US Trustee both were previously of the view that Debtor's transfer of the Properties was not to be voided, and thus they cannot now fairly assert otherwise. *See, e.g., Young v. Department of Justice,* 882 F.2d 633, 639 (2d Cir. 1989) (recognizing doctrine of estoppel "protect[s] judicial integrity by preventing litigants from playing 'fast and loose' with courts, thereby avoiding unfair results"); *Official Comm. of Unsecured Creditors of Maxwell Newspapers v. Macmillan, Inc. (In re Maxwell Newspapers)*, 189 B.R. 282, 289 (Bankr. S.D.N.Y. 1995) ("Judicial estoppel prevents a party who benefits from the assertion of a certain position from subsequently adopting a contrary one."). As noted, the Debtor and its counsel took the position even before the transaction occurred that Court approval was not required. *See* Ex. A. The US Trustee, in contrast, was made aware shortly after the transaction that Debtor had transferred the Properties without Court approval, before then sanctioning the transaction. Indeed, contemporaneous documentation confirms that the US Trustee's office notified this Court by email of the concern, and then subsequently signed off on the Debtor's requested stipulation to dismiss the Chapter 11 proceeding. *See* Exs. H, I.

13. In sum, Suffern received the Properties in good faith by and through RS Old Mills RD, LLC in September 2017, and both Yehuda Salamon and the US Trustee were contemporaneously aware of the transactions and pursued no objections thereto. There is no documentary or testimonial support for the US Trustee's assumptions that Suffern participated in any "fraud" or "collusion" with the Debtor, or that Suffern somehow "induced" the Debtor not to seek Court approval of its transfer to RS Old Mills RD, LLC.

*See* UST Objection, p. 9. Suffern was an arm's-length purchaser, who secured a loan from an arms-length lender, and obtained title insurance from an arms-length insurance carrier. Suffern took every conceivable action to ensure that its receipt of the Properties from RS Old Mills RD, LLC was proper and permissible, and relied upon **the Debtor's position** that Bankruptcy Court approval was not needed. Accordingly, the proposed settlement's required § 363(m) finding in favor of RS Old Mills RD, LLC is appropriate.

### B. Yehuda Salamon's Improper Conduct Requires That Suffern Be Granted the Protections Afforded by Bankruptcy Code § 363(m)

14. While the facts and Suffern's conduct, alone, support a Bankruptcy Code § 363(m) "good faith" finding in favor of RS Old Mills RD, LLC, such a finding is absolutely **necessary** in this instance given Yehuda Salamon's conduct. *See, e.g., In re Lifschultz Estate Mgmt., LLC*, No. 18 CV 1962, 2019 U.S. Dist. LEXIS 49507, at *5-6 (S.D.N.Y. Mar. 25, 2019) ("[t]he good-faith analysis is focused on the purchaser's conduct"). Such "good faith" finding is the only available prophylactic against Yehuda Salamon's further misuse of the Bankruptcy Court process to advance his personal claims concerning an alleged equity interest in Suffern.

15. Yehuda Salamon has now admitted under oath that his unauthorized Adversary Proceeding is wholly frivolous, as it does not in any way concern an asset or dispute involving the Debtor. Mr. Salamon expressly testified during the 341 Meeting of Creditors that (a) Suffern is the proper title holder of the Properties, and (b) the Adversary Proceeding actually concerns his personal claim to ownership of an alleged 65% equity interest in Suffern, a non-debtor entity:

> Q. [Ms. O'Toole:] … there's a dispute about your ownership in the [] property. Is that correct?
> A. [Yehuda Salamon:] Yes.

8

<blockquote>

***

Q. And the dispute is, really, who owns the equity in the entity that now owns the [] property, correct?

A. [Yehuda Salamon:] Correct.

***

Q. [W]hat is the entity that owns the [] property … ?

A. Suffern Partners.

***

Q. So there was a dispute as to who owned … the interest in Suffern Partners?

A. Right.

Q. … and then there was an attempt … to reconcile the 65 percent versus 35 percent ownership in Suffern [Partners], right?

A. Right.

Q. … And that's really what this is all about, right?

A. Right.

</blockquote>

*See* Ex. J, pp. 24:1-22, 48:21-49:8.

16. Numerous contemporaneous documents further confirm that the unauthorized Adversary Proceeding reflects a baseless and unsupportable claim that has **absolutely nothing to do with the Debtor**. For example, as detailed in the Chapter 7 Trustee's reply submission, a draft August 31, 2017 Agreement outlines the mechanism by which Yehuda Salamon could have secured an equity interest in Suffern. *See* ECF No 156, p. 3, Ex. C. Indeed, after Suffern purchased the Properties, Mr. Levine represented Mr. Salamon in a "contractual" dispute concerning that very draft Agreement and his alleged right to 65% of Suffern's equity. *See* Ex. K, at Ex. 8 (October 2, 2017 Email from Michael Levine), Ex. 9 (October 3-4, 2017 Emails from Michael Levine and David Fleischmann), and Ex. 10 (November 20, 2017 Email from Michael Levine).

17. Yehuda Salamon well knows that Suffern has and will continue to incur approximately $1 million a month in debt and servicing costs to maintain the Properties as

9

long as a cloud on its title persists: Mr. Salamon actually threatened Suffern's principal that the Adversary Proceeding would be filed absent capitulation to his demand for an equity interest in Suffern. *See* Ex. K, ¶ 5. Mr. Salamon has knowingly and intentionally misused the Bankruptcy Court process and seeks to continue doing so, as confirmed by his testimony at the 341 Meeting of Creditors which was riddled with faulty recollections, failures to answer even the simplest questions, reluctant acknowledgments that many scheduled "creditors" were not legitimate and offered no value or service to the Debtor, and a refusal to provide the details of his discussions with a strawman representative of other purported "creditors." *See generally* Ex. J. Such conduct requires the protections of § 363(m).

18. "Section 363(m) codifies Congress's strong preference for finality and efficiency." *In re Rare Earth Minerals*, 445 F.3d 359, 363 (4th Cir. 2006); *see In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997) ("recogniz[ing] the value of finality in judicial sales" as a way to promote investment in property that would otherwise be "laden with the risk of endless litigation as to who has rights to estate property"). The statute provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) prevents a court from reversing or modifying a "judicially-authorized sale if the entity that purchased or leased the property did so in good faith and if no stay was granted." *Licensing by Paolo, Inc. v. Sinatra*, 105 F.3d 837, 840 (2d Cir. 1997). The provision thus "limits appellate jurisdiction over an unstayed sale order issued by a bankruptcy court to the narrow issue of whether the property was sold to a good

faith purchaser." *In re Motors Liquidation Co.*, 428 B.R. 43, 53 (S.D.N.Y. Bankr. 2010). Without the protection afforded by a § 363(m) finding, purchasers can "be dragged into endless rounds of litigation to determine who has what rights in the property." *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986).

19. That is precisely the result that Yehuda Salamon seeks to achieve – and no doubt will continue to pursue in the absence of a § 363(m) finding. Debtor itself – by Yehuda Salamon – transferred the Properties to RS Old Mills RD, LLC and induced Suffern to take on a $33 million debt obligation. *See* Exs. C, E-G. Debtor itself – by Yehuda Salamon – then filed the unauthorized Adversary Proceeding and related *lis pendens* that are depriving Suffern of any ability to develop, refinance, lease, or otherwise enjoy the benefits of those Properties for which it has a $33 million debt obligation. *See* Exs. E; K, ¶¶ 4-5; L. And Debtor itself – by Yehuda Salamon – has now admitted under oath that the Adversary Proceeding concerns a dispute over his alleged equity interest in Suffern, and not any rights of the Debtor. *See* Ex. J. The damning record of Yehuda Salamon's misconduct and improper use of the bankruptcy process compels a § 363(m) finding to protect Suffern, as the ultimate taker by and through RS Old Mills RD, LLC.

20. Absent such finding, Yehuda Salamon will be able to continue misusing the bankruptcy process to damage Suffern by the simple filing of an appeal to continue the baseless cloud on Suffern's title to the Properties. That is the very issue Suffern has paid $2.5 million to rectify, so that it can stop the unsustainable bleed imposed by Yehuda Salamon's manufactured cloud on title. *See* Exs. G, ¶ 5; K, ¶ 4.

21. Critically, all of Yehuda Salamon's rights to pursue any alleged equity interest in Suffern are fully preserved under the settlement's terms. That was a requirement imposed

by the Chapter 7 Trustee, who rightly recognized that any such dispute concerning Yehuda Salamon's interest in a non-debtor entity has absolutely no impact or concern to the estate and its creditors, and should thus be pursued in a different forum such as the New York State Courts. *See, e.g., Smart World Techs., LLC v. Juno Online Servs.*, 423 F.3d 166, 175 (2d Cir. 2005) (discussing fundamental purpose of bankruptcy proceedings to protect debtors and "maximize the value of the estate" for its creditors and constituents).

22. The protections of § 363(m) in favor of RS Old Mills RD, LLC requested by the Chapter 7 Trustee's proposed settlement, and which was an absolute requirement of Suffern in agreeing to pay the $2.5 million Claim Fund, is proper and should be approved. *See, e.g., Cooper*, 592 B.R. at 480-81 (finding § 363(m) protection can be invoked in connection with sale approved by compromise pursuant to Rule 9019); *Wieboldt Stores*, 92 B.R. at 312 ("[T]he fact that the trustee transferred [debtor's] assets in the context of a settlement of claims does not place the transfer outside the scope of Section 363. Applying 363(m) to transfers made as part of settlements will further the purpose underlying 363(m), *i.e.*, to give finality to sales of a bankrupt's assets.").

23. For the foregoing reasons, the proposed settlement requiring a § 363(m) finding should be granted.

## II.

**THE ADDITIONAL OBJECTIONS ARE WITHOUT BASIS, AND THE CONTINUING HARM TO SUFFERN DEMANDS IMMEDIATE APPROVAL OF THE SETTLEMENT AND SALE**

24. The additional objections that the US Trustee and Yehuda Salamon assert are factually unsubstantiated, legally deficient, and otherwise without basis. The Chapter 7 Trustee's motion should be granted.

25. First, the record demonstrates that the proposed settlement is fair, reasonable, and in the best interests of the estate, as the Chapter 7 Trustee determined after a robust and comprehensive investigation. *See* ECF No. 156, p. 5 (detailing the Chapter 7 Trustee's comprehensive investigative efforts). To this point, the Chapter 7 Trustee has made clear that "[w]hile other aspects of [her] investigation are ongoing," her investigation and analysis as to "the Debtor's transfer of title to the Properties to RS Old Mills RD LLC" and that entity's "subsequent transfer of title to the Properties to Suffern" is completed. *See id.* Indeed, "[t]here is nothing in [either Yehuda Salamon's or the US Trustee's] Objections that causes the [Chapter 7] Trustee to alter her business judgment" determination that the settlement is fair, in the best interests of the Debtor's estate, and falls well above the lowest point in the range of reasonableness. *See id.*, pp. 5-6.

26. Second, there is no basis for awaiting the outside bar date of October 24, 2019 before approving the settlement. *See* Giuliano Objection, ¶¶ 16-17; UST Objection, p. 1. Suffern sought emergency relief and an expedited hearing on its motion to dismiss the unauthorized Adversary Proceeding in April 2019, more than **five months ago**. *See* ECF Nos. 86, 86-1, 86-2. This Court recognized the exigent circumstances at the initial hearing, directing the "prompt" appointment of a Chapter 7 Trustee to complete an independent investigation "very quickly" given that "time is of the essence." *See* Ex. M, pp. 28:16-29:4. Ms. O'Toole immediately undertook and expended the extraordinary efforts detailed in her motion papers to conduct and complete the directed investigation. *See* ECF No. 156, p. 5. Notably, because this case was converted from a Chapter 11 matter, all pre-petition claims were previously required to be submitted before the Chapter 11 case's bar date of April 14, 2017. *See* ECF No. 8. The bar date for administrative claims arising during the pendency of

that Chapter 11 proceeding was August 31, 2019. *See* ECF No. 126. Accordingly, the suggestion that it is "impossible to know at this juncture the total amount of claims against the Estate" is simply inaccurate. *See* Giuliano Objection, ¶ 16. The universe of viable claims is already known, and moreover, most if not all of the "claims" appear to be unsubstantiated, unsustainable, and subject to objection, as both the Chapter 7 Trustee and CPIF detail in their respective responsive submissions. *See* ECF No. 156, p. 6 n. 4; ECF No. 158, pp. 11-15.[3] Tellingly, even Yehuda Salamon acknowledges that there are virtually no outstanding creditors, recognizing that the Debtor was a single-purpose entity formed to acquire the Properties, the Debtor immediately sold the Properties, and that he fully expects Suffern will receive back most if not all of the $2.5 million paid for the Claim Fund. *See* Giuliano Objection, ¶ 22; Levine Objection, ¶ 48.

27. Third, Yehuda Salamon's argument that the proposed settlement improperly excludes the rights of equity to surplus ignores his own testimony. *See* Giuliano Objection, ¶ 19. Mr. Salamon confirmed that he does not challenge Suffern's purchase price or even that Debtor was deprived of any value, but rather, claims to have been deprived of an equity interest in Suffern. *See* Ex. J. The Chapter 7 Trustee confirmed the true nature of Yehuda Salamon's allegations through her investigation, and thus rightfully required as a term of the settlement that Yehuda Salamon's ability to pursue those issues outside this Debtor's bankruptcy proceeding be preserved. *See* Ex. N, ¶ 5. The release provided for by the proposed settlement is thus exceptionally narrow and fully preserves all legitimate rights of the parties.

---

[3] Suffern adopts and incorporates herein by reference all arguments that the Chapter 7 Trustee and CPIF advance in support of the proposed settlement. *See* ECF Nos. 138, 156, 158.

28. Lastly, neither Yehuda Salamon nor the US Trustee addresses the primary and most fundamental basis for approving the settlement: there simply is no ability to unwind the transaction and subject the Properties to further competitive bidding without substantial risk and potentially greater exposure to the estate. The Debtor **never** had sufficient resources to close on purchase of the Properties from Novartis, and there is no indication the Debtor currently has sufficient resources to make Suffern or the mortgage holder CPIF whole for the $33 million debt and additional damages, which include substantial monies Suffern has since invested in the Properties together with the costs incurred as a result of the improper cloud on title. Indeed, Suffern was a bona fide purchaser in good faith and has filed a claim of $33 million plus additional damages against the estate, as a contingency in such event that the settlement is not approved. *See* Ex. O. CPIF, in turn, is a bona fide encumbrancer, having actually lent the monies utilized for Suffern's purchase of the Properties and obtaining a mortgage as consideration. *See* Ex. E. The proposed settlement efficiently resolves what otherwise promises to be a complicated, lengthy, and costly dispute over Suffern's title to the Properties, including the facts that Suffern is a bona fide purchaser and gave substantial value. *See, e.g.,* 11 U.S.C. § 549(c); N.Y. Real Prop. L. § 266 (protecting the title of "a purchaser or incumbrancer for a valuable consideration, unless it appears that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor"). Yehuda Salamon apparently wishes to obtain all the benefits of the Properties without any of the burdens, but the transaction cannot be unwound in that way as Debtor had no ability to close and voiding Suffern's title to the Properties would mean such title would somehow need to be re-vested back in Novartis and Suffern made whole for its substantial losses. It is

precisely these complicated, protracted, and wholly uncertain issues that would need to be litigated, and for which the proposed settlement secures finality in exchange for a $2.5 million Claim Fund. *See, e.g., In re Dewey & Leboeuf L.L.P.*, 478 B.R. 627, 642-43 (Bankr. S.D.N.Y. 2012) (approving settlement principally to provide uncertainty for complex and protracted litigation); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993) ("the court need not conduct a 'mini-trial' to determine the merits of the underlying litigation").

29. The proposed settlement is fair, reasonable, and provides actual and tangible value to the estate. The Claim Fund also will permit an orderly and efficient claims administrative process, so that this proceeding can then be fully concluded. Suffern respectfully submits that the Chapter 7 Trustee's motion should be granted in its entirety, including the contingent requirement of securing a § 363(m) finding, as the settlement is well above the lowest point in the range of reasonableness. *See, e.g., In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) (court must "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness") (quoting reference omitted).[4]

---

[4] The US Trustee also objects to the settlement as "inadequate because it does not compel Suffern to cooperate with the Chapter 7 Trustee as she continues her investigation." *See* UST Objection, p. 10. Suffern has expended a tremendous amount of effort to cooperate in the Chapter 7 Trustee's investigation and will continue to do so as Ms. O'Toole works through the claims administration process. Suffern has every incentive to cooperative, as it seeks to aid a return of any unused portion of the Claim Fund to the largest extent possible.

## CONCLUSION

**WHEREFORE**, Suffern respectfully requests that the Court grant the Chapter 7 Trustee's motion for approval of the settlement with Suffern, together with such other and further relief in favor of Suffern as the Court deems just and proper.

Dated: New York, New York
October 2, 2019

**HAHN & HESSEN LLP**

By:   s/ Stephen J. Grable
      Gilbert Backenroth
      Stephen J. Grable
      Steven R. Aquino

488 Madison Avenue
New York, New York 10022
Tel.: (212) 478-7200
Fax: (212) 478-7400
gbackenroth@hahnhessen.com
sgrable@hahnhessen.com
saquino@hahnhessen.com

*Attorneys for Suffern Partners LLC*