UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:                                                                    Case No.: 17-22218 (RDD)

RS OLD MILL, LLC,                                                         Chapter 7

        Debtor.
------------------------------------------------------------------x

**AFFIRMATION IN SUPPORT OF CHAPTER 7 TRUSTEE'S
OBJECTION TO CLAIMS 24-1, 25-1, AND 26-1
FILED BY RIVERSTONE USA LLC, YEHUDA
SALAMON, AND RS OLD MILLS RD LLC**

        Before the Court are the motions of Marianne T. O'Toole, solely in her capacity as Chapter 7 Trustee ("Trustee") of the Estate of RS Old Mill, LLC ("Debtor"), objecting, *inter alia*, to claim number 24-1 filed by Riverstone USA LLC, claim number 25-1 filed by Yehuda Salamon, and claim number 26-1 filed by RS Old Mills RD LLC. Pursuant to Rule 3007 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and 11 U.S.C. §§ 105(a) and 503(b) ("Bankruptcy Code"), the Trustee seeks an Order disallowing these claims.

        Old Republic National Title Insurance Company ("ORT"), by its undersigned counsel, submits this affirmation in support of the Trustee's motions ("Affirmation in Support").

## BACKGROUND

        1.    On February 13, 2017, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor sought to protect its right to purchase property located in Rockland County and known as 25 Old Mill Road, Suffern, New York 11901, 19 Hermion Road, Montebello, New York 10901, and Route 59, Suffern, New York 10901 (collectively, the "Novartis Premises") from Novartis Corporation ("Novartis") pursuant to a purchase contract and a $2.5 million deposit to bind the purchase contract. The $2.5 million deposit were loan proceeds fraudulently obtained by Yehuda Salamon at an August 30, 2016 closing wherein 4921 12th

Page **1** of **12**

Avenue, LLC ("12th Avenue LLC"),[1] borrowed $6.5 million from Galster Funding, LLC ("Galster"). In exchange for the loan and in order to secure re-payment, 12th Avenue LLC granted a mortgage to Galster in the amount of $6.5 million ("Galster Mortgage") to be secured against the real property located at 4917-4921 12th Avenue, Brooklyn, New York ("Brooklyn Premises").[2] A copy of the mortgage is annexed as Exhibit A.

2. At the time of the closing, there were two (2) mortgages of record held by Beis, Chasidei & Gorlitz, Inc. ("Gorlitz") against the Brooklyn Premises: (1) one in the principal amount of $1.2 million, and (2) the other in the principal amount of $1.3 million (collectively, "Gorlitz Mortgages"). Prior to the closing, Daniel Muller, Esq., Yehuda Salamon's attorney, prepared two (2) satisfactions of the Gorlitz Mortgages. Yehuda Salamon changed the draft satisfactions, and then forged the mortgagee (Gorlitz)'s signatures on both satisfactions. Yehuda Salamon then used the mail to transmit the forged satisfactions back to Mr. Muller.[3] In order to induce Galster to disburse the Galster Mortgage proceeds, Yehuda Salamon and 12th Avenue LLC

---

[1] 12th Avenue LLC is owned and controlled by Yehuda Salamon.

[2] 12th Avenue LLC is the record owner of the Brooklyn Premises.

[3] Mr. Muller testified that he represented Yehuda Salamon, that he prepared the two satisfactions for the Gorlitz Mortgages, and that he sent them to "Marty" Salamon for signature on August 24, 2016. *See* Exhibit B, p. 123-124. He also testified that the satisfactions he sent only had one signature line for Gorlitz to sign as mortgagee. (Exhibit C, p. 17). Copies of these draft satisfactions prepared by Mr. Muller are annexed as Exhibit D.

Yehuda Salamon testified that he (on behalf of the borrower) signed his signature on the second signature lines on both of the satisfactions, before a notary public (Schner Grossberger). Yehuda Salamon's relevant testimony is annexed as Exhibit E.

Notably, Mr. Muller denied in his testimony that the satisfactions he prepared and sent to Yehuda "Marty" Salamon contained a signature line for the borrower, Yehuda Salamon (Exhibit C, p. 17). Yehuda Salamon altered the draft satisfactions to add a superfluous signature line for himself. After his signature was acknowledged before a notary public (Schner Grossberger), Yehuda Salamon then forged the signature of Gorlitz onto both satisfactions, to make it appear as though Gorlitz's signature had also been acknowledged by Schner Grossberger.

represented that the two Gorlitz Mortgages were satisfied and presented the two (2) forged satisfactions of these mortgages at the Galster Mortgage closing in Manhattan.[4]

3. In reliance on the two forged satisfactions of the Gorlitz Mortgages and the representations that the Gorlitz Mortgages had been paid off, Galster disbursed $6.5 million in loan proceeds at the direction of 12th Avenue LLC.[5]

## GALSTER MORTGAGE PROCEEDS

4. At the direction of Yehuda Salamon, $2.5 million of the Galster Mortgage net loan proceeds were ultimately transferred to Commonwealth Land Title Insurance Company, and served as the deposit that bound the purchase contract between Novartis and Debtor. The funds were transferred as follows:

- a. August 30, 2016:
    - i. Net proceeds of the Galster Mortgage in the amount of $6,095,068.80 were disbursed, at Yehuda Salamon's direction, to the account of Yidel's Shopping Cart ("Yidel's")[6] at Signature Bank[7]

- b. October 26, 2016 for no consideration:
    - i. Yidel's transferred $2.5 million of the Galster Mortgage proceeds from its Signature Bank account to its attorney Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, which was to represent Debtor on the purchase of the Novartis Premises. *See* Exhibit H, p. 22.

- c. On November 10, 2016 for no consideration:
    - i. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC transferred $2.5 million of the Galster Mortgage proceeds to

---

[4] Mr. Muller also testified he brought the original, fully executed satisfactions (with the forged Gorlitz signature) to the Galster Mortgage closing without knowing the Gorlitz signatures were forged.

[5] A copy of the loan disbursement approval form signed by Yehuda Salamon as sole member of 12th Avenue LLC is annexed as Exhibit F.

[6] Yidel's is an entity also wholly owned by Yehuda Salamon.

[7] A copy of the wire remittance is annexed as Exhibit G. A copy of the Signature Bank statement showing receipt of those proceeds on August 30, 2016, by Yidel's, is attached as Exhibit H, p. 13.

        the Bank of America account for "Yidel's Shopping Cart, Inc. DBA Riverstone Group."[8]

    d. On November 25, 2016 for no consideration:
        i. "Yidel's Shopping Cart, Inc. DBA Riverstone Group" wired $2.5 million of the Galster Mortgage proceeds into two (2) separate accounts that Riverstone USA, LLC ("Riverstone USA")[9] held at Bank of America. [10]

    e. On November 25 and 28, 2016, for no consideration:
        i. Riverstone USA by David Salamon wired into the Commonwealth Land Title Insurance Company account for the benefit of RS Old Mill, LLC:
            a. $1 million of the Galster Mortgage proceeds by two (2) wire transactions on November 25, 2016 from a Bank of America account held by Riverstone USA; and
            b. $1.5 million of the Galster Mortgage proceeds by a wire transaction on November 28, 2016 from a separate Bank of America held by Riverstone USA.[11]

5. On September 1, 2017, the Debtor closed on the purchase of the Novartis Premises and the $2.5 million of the Galster Mortgage proceeds (from its loan on the Brooklynn Premise) were paid by Commonwealth to Novartis, on account of the $18 million purchase monies to acquire the Novartis Premises.[12]

---

[8] Attached as Exhibit I is the Bank of America statement for this account documenting its receipt of the $2.5 million on November 10, 2016. *See* Exhibit J. Yehuda Salamon's son is the sole member of Riverstone Group.

[9] Riverstone USA is owned and/or controlled by Yehuda Salamon and/or David Salamon.

[10] Attached as Exhibit K are the two Bank of America statements for the accounts of "Riverstone USA LLC" showing the receipt of $1.5 million and $1 million on November 25, 2016 from the account of "Yidel's Shopping Cart, Inc. DBA Riverstone Group."

[11] *See* Exhibit K, showing two wires in the amount of $500,000.00 on November 25, 2016 and one wire in the amount of $1.5 million on November 28, 2016 to Commonwealth Land Title for the Novartis Premises' $2,500,868 deposit. Yehuda Salamon is the sole member of RS Old Mill, LLC.

[12] Galster claims these funds were disbursed in violation of a preliminary injunction that remained in effect from a state court action. *See* Exhibit L.

## ORT'S PURCHASE AND ASSIGNMENT

6. In connection with the closing of the Galster Mortgage, ORT insured the Galster Mortgage as a first lien against the Brooklyn Premises.

7. On or about November 3, 2016, Gorlitz commenced an action in Supreme Court, Kings County, designated as Beis Chasidei Gorlitz v. 4921 12th Avenue LLC, et. al., Kings County Supreme Court, Index No. 519469/2016 ("Gorlitz Action"). Essentially, Gorlitz alleged that the satisfactions of its two prior mortgages delivered at the Galster Mortgage closing were forged and fraudulent. Gorlitz sought to declare those satisfactions void and asserted that its prior mortgages remain valid prior liens against the Brooklyn Premises.[13]

8. Gorlitz moved for summary judgment based upon the forged satisfactions of the Gorlitz Mortgages. Gorlitz was granted summary judgment in the Gorlitz Action and the Gorlitz Mortgages were reinstated. A copy of the decision and order is annexed as Exhibit O. A copy of the subsequent judgment reinstating the Gorlitz Mortgages is annexed as Exhibit P. This decision and order were appealed by Yehuda Salamon to the Appellate Division, Second Department. That appeal has not been perfected and the time to perfect that appeal has lapsed. As a result, the Galster Mortgage was relegated to a third lien position against the Brooklyn Premise and was essentially left unsecured.

9. In order to resolve the title claim of its insured and re-establish the Galster Mortgage as a first lien against the Brooklyn Premises, ORT purchased the Gorlitz Mortgages and underlying notes from Gorlitz.[14] ORT subordinated the Gorlitz Mortgages to the Galster Mortgage

---

[13] A copy of the complaint in the Gorlitz Action is annexed as Exhibit M. A copy of the affidavit of the alleged notary on the satisfactions of the Gorlitz Mortgages, attesting he never notarized the signature of Gorlitz on the satisfactions, is annexed as Exhibit N.

[14] The Gorlitz Mortgages were assigned to ORT by assignments dated November 5, 2018 and recorded against the Brooklyn Premises on November 21, 2018 at CRFN 2018000385764 and CRFN 2018000385765 respectively.

by subordination agreement recorded on November 21, 2018 at CRFN 2018000385766, thereby slotting the Galster Mortgage into the first lien position it was supposed to have been granted by 12th Avenue LLC.[15]

10. Accordingly, it cannot be disputed that the specific $2.5 million deposit used to purchase the Novartis Premises was criminally and fraudulently obtained by Debtor's principal, Yehuda Salamon, from the Galster Mortgage's closing – which closed, funded, and was insured by ORT in reliance on the two forged satisfactions presented by Yehuda Salamon. As demonstrated above, the Galster Mortgage proceeds in the amount of $2.5 million are directly traceable to the Debtor's $2.5 million deposit and purchase of the Novartis Premises. The Debtor by its sole principal, Yehuda Salamon, received the $2.5 million with actual knowledge of his fraud and criminal conduct.

11. Pursuant to the notice of claim filed on October 23, 2019 by ORT as claim 21-1 ("Claim 21"), ORT has a claim based on the Debtor holding the $2.5 million in a constructive trust for ORT, which it obtained from the fraud orchestrated against ORT and Galster.

## **ORT CLAIM – CLAIM 21**

12. ORT has a valid and legitimate claim with respect to the $2.5 million used for Debtor's deposit to purchase the Novartis Premises. ORT, having insured title, was required to remedy the fraud perpetrated by Yehuda Salamon's forged satisfactions, rendering a payment to acquire the Gorlitz first lien position and then subordinating that position to place the Galster Mortgage in the first lien position it had purportedly received and which induced it to lend money with respect to 12th Avenue LLC.

---

[15] A copy of ORT's Proof of Claim filed in the Chapter 11 proceeding of 4921 12th Avenue LLC (1-18-47256-cec), which contains the Gorlitz Mortgages and notes endorsed to ORT and assignments of the Gorlitz Mortgages to ORT giving rise to the claim, are annexed as Exhibit Q.

13. As consequence of this activity, the party actually damaged by Yehuda Salamon's conduct is ORT, which was forced to make payment under a title insurance policy. Yehuda Salamon and Riverstone were not damaged and have no claim as to the $2.5 million, as those funds were obtained from another source (*i.e.*, Galster).

14. For these reasons, ORT timely filed a notice of claim on October 23, 2019 as claim 21-1 ("Claim 21"), asserting that as to the $2.5 million used for the Novartis Premises down payment, those monies are being held in a constructive trust for the benefit of ORT. See, e.g., In re Koreag, Controle et Revision S.A., 961 F.2d 341, 352 (2d Cir. 1992) ("A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.") (quoting references omitted); In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 895 (Bankr. S.D.N.Y. 1993) ("federal courts applying New York law[] construe the elements of a constructive trust with considerable flexibility, and it is generally held that the doctrine may be invoked to prevent unjust enrichment in a wide range of circumstances."); In re Ling Wang, 556 B.R. 27, 33 (Bankr. N.D.N.Y. 2016) (recognizing funds may be held in constructive trust for benefit of another party where the holder's receipt was unjust); Latham v. Father Divine, 299 N.Y. 22, 27 (1949) (holding that applicability of a constructive trust is "limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them").

## RIVERSTONE CLAIM – CLAIM 24

15. Riverstone was not scheduled as a creditor of the Debtor on its Schedule E/F or Amended Schedule E/F. *See* Dkt. Nos. 3, 64. On October 24, 2019, Riverstone filed Claim 24 against the Debtor's estate as a pre-petition claim in the amount of $2.5 million which was designated as claim number 24-1 ("Claim 24"). A copy of Claim 24 is annexed as Exhibit R. David Salamon executed Claim 24 under penalty of perjury. David Salamon is the son of Yehuda Salamon, the Debtor's 100% owner. There are no agreements or other supporting documents annexed to Claim 24 to support any such claim. According to the docket sheet and claims register, Claim 24 has not been transferred or amended as of the date of this Affirmation.

16. According to the New York State Department of State, Riverstone's address for service of process is the Brooklyn Premises, which is owned by 12th Avenue LLC – an entity solely owed by Yehuda Salamon. *See* Bankr. E.D.N.Y. Case No. 18-47256-CEC, Dkt. No. 1 (voluntary petition in pending Chapter 11 case evidencing that Yehuda Salamon is secretary and sole member). The Galster Mortgage was to be a first lien on the Brooklyn Premises.

17. Without question, Riverstone does not have a valid claim against the Debtor's Estate and Claim 24 must be disallowed. To permit Riverstone's claim would result in a windfall and unjustly enrich Riverstone and Yehuda Salamon, to the detriment of ORT. See In re Trinsum Grp., Inc., 460 B.R. 379, 395 (Bankr. S.D.N.Y. 2011) (discussing circumstances wherein a party may be unjustly enriched); Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP, 623 F. Supp. 2d 504, 513-514 (S.D.N.Y. 2009) (noting that unjust enrichment includes consideration of whether "equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover"); *see also* In re Residential Capital, LLC, 518 B.R. 720, 737 (Bankr. S.D.N.Y. 2014) (unjust enrichment and a constructive trust occur where there is

property belonging to plaintiff, and defendant has received that property "by fraud, accident, mistake, undue influence or other wrongful act").

## **YEHUDA SALAMON CLAIM – CLAIM 25**

18. On October 24, 2019, Yehuda Salamon filed Claim 25 against the Debtor's Estate as a pre-petition claim in an unknown amount, which was designated as claim number 25-1 ("Claim 25"). A copy of Claim 25 is annexed as Exhibit S. According to the docket sheet and claims register, Claim 25 has not been transferred or amended as of the date of this Affirmation.

19. Neither the Debtor's original nor amended schedules that were filed with the Court at Yehuda Salamon's direction, listed Yehuda Salamon as a creditor. *See* Dkt. Nos. 3, 64. Likewise, there are no documents annexed to Claim 25 to support any such claim.

20. As the 100% owner of the Debtor, Yehuda Salamon was responsible for the Debtor as a debtor-in-possession. Yehuda Salamon was intimately involved with the transactions surrounding the Debtor's acquisition and immediate transfer of the Novartis Premises. Yehuda Salamon, among other things, executed the Bargain and Sale Deed transferring title to those properties from the Debtor to RS Old Mills RD LLC and the corresponding RP-5217 form that was filed with Rockland County. See Dkt. No. 156-2. Yehuda Salamon was the person who orchestrated the criminal fraud on Galster and ORT. Any loan proceeds in his possession are to be held in constructive trust for Old Republic and not paid to Yehuda Salamon.

21. Without question, Yehuda Salamon does not have a valid claim against the Debtor's Estate and Claim 25 must be disallowed. Again, Yehuda Salamon seeks a windfall and to be unjustly enriched at the expense of ORT.

## RS OLD MILLS RD LLC CLAIM – CLAIM 26

22. On October 24, 2019, RS Old Mills RD LLC ("RS Old Mills RD") filed Claim 26 against the Debtor's Estate as a pre-petition claim in the amount of $13.5 million, which was designated as claim number 26-1 ("Claim 26"). A copy of Claim 26 is annexed as Exhibit T. There are no documents annexed to Claim 26 to support any such claim. Avrohom Kaufman is the brother-in-law of Yehuda Salamon, the Debtor's 100% owner.

23. RS Old Mills RD was not scheduled as a creditor of the Debtor on its Schedule E/F or Amended Schedule E/F. *See* Dkt. Nos. 3, 64. In fact, RS Old Mills RD was not formed until August 8, 2017, approximately six months after the Petition Date. *See* Exhibit U. According to the docket sheet and claims register, Claim 26 has not been transferred or amended as of the date of this Affirmation. Avrohom Kaufman is the brother-in-law of Yehuda Salamon, the Debtor's 100% owner. Avrohom Kaufman is a knowing participant in the fraud orchestrated by Yehuda Salamon and acting at the behest of Yehuda Salamon, who also filed an unsubstantiated pre-petition proof of claim against the Debtor's Estate.

24. Without question, RS Old Mills RD does not have a valid claim against the Debtor's Estate and Claim 26 must be disallowed.

## YEHUDA SALAMON'S BAD FAITH AND FRAUDULENT CONDUCT

25. Yehuda Salamon defrauded Galster by forging the mortgage satisfactions. He now seeks to use this Bankruptcy Court as a means to further compound his fraud. The claims that Yehuda Salamon orchestrated to be filed – including by himself (Claim 24), Riverstone (Claim 25), and also RS Old Mills RD (Claim 26) – reflect a gross misuse of the Bankruptcy Court process and are direct evidence of Yehuda Salamon's ongoing fraudulent activity.

26. Yehuda Salamon's actions in this proceeding violate controlling federal law and are criminally sanctionable. As 18 U.S.C. § 157 states:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> 2. files a document in a proceeding under title 11; or
>
> 3. makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
>
> shall be fined under this title, imprisoned not more than 5 years, or both.

27. Courts have applied the "bankruptcy fraud" statutes equally with respect to Chapter 7 and Chapter 11 proceedings. Here, where the Debtor's Chapter 11 filing has been converted to a Chapter 7, § 157 is applicable in all events.

28. It is believed Yehuda Salamon personally orchestrated the filing of his own claim and also those of Riverstone and RS Old Mills RD. Each of these claims reflect an unlawful, false, and fraudulent claim under § 157. Each of these claims was specifically designed to induce the Trustee to misappropriate proceeds for the benefit of Yehuda Salamon, to the detriment of the legitimate creditors that have been defrauded by Yehuda Salamon.

29. This Court should not tolerate such conduct, and the Trustee's objections to disallow Claims 24-1, 25-1, and 26-1 should be granted, with such further investigation into Yehuda Salamon's conduct as the Court may direct to be appropriate.[16] Equity demands that these

---

[16] *See* In re Starbrite Props. Corp., No. 11-40758 (CEC), 2012 Bankr. LEXIS 2599, at *28 (Bankr. E.D.N.Y. June 5, 2012) ("there exist reasonable grounds to believe that an investigation should be had as to whether [Debtor's sole shareholder] . . . engaged in conduct that constitutes a violation of any of the provisions of Chapter 9 of Title 18. . . . Accordingly, pursuant to section 3057 of Title 18 of the United States Code, this Decision and the . . . Objection will be transmitted to the U.S. Attorney."); In re Hill, 377 B.R. 8, 27 (Bankr. D. Conn. 2007) ("The aforementioned Debtors' false statements and representations intended to prejudice creditors, implemented through [Debtor's attorney] and compounded by his behavior at the 341 Meeting, the Initial Hearing, and the Hearing, constitute conduct

claims be disallowed. *See* <u>SEC v. United States Realty & Improvement Co.</u>, 310 U.S. 434, 455 (1940) ("A bankruptcy court is a court of equity, and is guided by equitable doctrines and principles.") (citation omitted).

**WHEREFORE**, ORT respectfully requests the entry of an Order disallowing Claims 24-1, 25-1, and 26-1 and for such other, further and different relief as this Court deems just and proper.

Dated: New York, New York
November 20, 2019

                                      **BUTLER, FITZGERALD, FIVESON & McCARTHY**
A Professional Corporation
*Attorneys for Old Republic National Title Insurance Company*

By: */s/ David K. Fiveson*
       David K. Fiveson, Esq.
A Principal of the Firm
9 East 45th Street, Ninth Floor
New York, New York 10017
(212) 615-2200

---

'entirely without color' and 'motivated by improper purposes.' The totality of this conduct prejudiced creditors, the Trustee, [and] the United States Trustee.").

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                          Case No.: 17-22218 (RDD)

RS OLD MILL, LLC,                               Chapter 7

        Debtor.
-----------------------------------------------------------------x

# CERTIFICATE OF SERVICE

      I, David K. Fiveson, Esq., hereby certify that on November 20, 2019, the foregoing **AFFIRMATION IN SUPPORT OF CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIMS 24-1, 25-1, AND 26-1 FILED BY RIVERSTONE USA LLC, YEHUDA SALAMON, AND RS OLD MILLS RD LLC** was filed and served on all counsel of record by this Court's CM/ECF system.

Dated: New York, New York
       November 20, 2019

                                   **BUTLER, FITZGERALD, FIVESON**
                                     **& McCARTHY**
                                   A Professional Corporation
                                   *Attorneys for Old Republic National Title*
                                   *Insurance Company*


                             By:   */s/ David K. Fiveson*
                                   David K. Fiveson, Esq.
                               A Principal of the Firm
                               9 East 45th Street, Ninth Floor
                               New York, New York 10017
                               (212) 615-2200